

## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | |
|---|---|
| **GORDON ROY PARKER,** a/k/a "Ray Gordon," d/b/a Snodgrass Publishing Group,<br><br>Plaintiff,<br><br>v.<br><br>**PAYPAL, INC.,** a Delaware corporation, **AMAZON, INC.,** a Delaware corporation d/b/a **AMAZON WEB SERVICES, INC.,** a Delaware corporation, **SHANNON SOFIELD,** a Pennsylvania resident, **PAYLOADZ, INC.,** a Pennsylvania corporation, **C2S, LLC,** d/b/a **Click2Sell.eu,** a Delaware corporation, **HOSTGATOR.COM, LLC,** a Texas corporation, **PUA MEDIA LIBRARY, INC.,** an unregistered California corporation d/b/a **pualib.com, CUSTOM CD, Inc.,** a Delaware corporation and wholly-owned subsidiary of **RIMAGE, Inc.,** a Minnesota corporation and wholly-owned subsidiary of **EQUUS HOLDINGS, Inc.,** a Minnesota corporation, **QUMU CORPORATION,** a Minnesota corporation, **loki.net@gmail.com,** a/k/a "Sally Longer" a/k/a "Vladymyr Oleynyk," a/k/a **loki.net@gmail.com,** a/k/a **luckypua777@gmail.com,** and Does 1-1043,<br><br>Defendants | Case No:  **16        4786**<br><br>**Complaint for Copyright Infringement, Unjust Enrichment, Racketeering, And Civil Conspiracy** |

## COMPLAINT

**Plaintiff** Gordon Roy Parker, in the above-styled action, sets forth the following:

## THE PARTIES

1.   Plaintiff **Gordon Roy Parker,** a/k/a "**Ray Gordon,**" d/b/a **Snodgrass Publishing Group,** is an adult male domiciled and residing in the Commonwealth of Pennsylvania. Plaintiff does business as Snodgrass Publishing Group, a Pennsylvania sole proprietorship, and is currently a pre-law sophomore and "straight-A" college student.

2.   Defendant **PayPal, Inc.** is a Delaware Corporation, headquartered in at 2221 North First Street San Jose, CA 95131, who may be served through its registered agent in Delaware.

3.   Defendant **Amazon Web Services, Inc.** is a wholly-owned subsidiary of Defendant **Amazon, Inc.**; both are Delaware corporations who may be served through their registered agent, Corporation Service Company, 2711 Centerville Boulevard, Wilmington, DE 19808.

4.   Defendant **Payloadz, Inc.**, is a Pennsylvania corporation wholly owned by Defendant **Shannon Sofield**, who resides at Three Richards Road, Newtown Square, PA 19073.

5.   Defendant **C2S, LLC**, d/b/a **Click2Sell.eu**, is a Lithuanian-based corporation whose United States headquarters is 625 Barksdale Road, Suite 113, Newark, DE 19711.

6.   Defendant **Hostgator.com, LLC** is a Texas corporation headquartered at 5005 Mitchelldale, Suite #100, Houston, TX 77092.  Their primary business is webhosting.

7.   Defendant **PUA Media Library, Inc.** is an unregistered (nonexistent) "California corporation" who does business as Defendant **pualib.com**.

8.   Defendant **John Doe #1**, a/k/a loki.net@gmail.com ("Loki"), a/k/a "Sally Longer," a/k/a "Vladymyr Olynyk," two names later proven to be aliases, likely for Defendant Sofield, is the owner of the PayPal account which accepted payments for the pirated works.[1]

9.   Defendant **Custom CD, Inc.** is a Delaware corporation and wholly-owned subsidiary of Defendant **Rimage, Inc.**, a wholly-owned subsidiary of Defendant **Equus Holdings**, Inc., and may be served through their registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington DE 19808.  Defendant Rimage may be served at 7725 Washington

---

[1] Initially, "Vladymyr Oleynyk" was listed as the PayPal contact for the *loki.net@gmail.com* account which processed the transactions.  Subsequently, however, this contact name was changed to "Sally Longer," also the administrator of the pualib.com website.  Since these names are clearly aliases, and since the PayPal account also called itself *The Payloadz Store*, the preponderance of the evidence clearly indicates that the account belongs to Defendant Sofield, whose claim of innocence is belied by his company's imprint on the PayPal store.

Avenue South Minneapolis, Minnesota 55439, while Defendant Equus Holdings, Inc. may be served at 5801 Clearwater Drive, Minnetonka, MN, 55343.

10.   Defendant **Qumu Corporation** (QUMU:Nasdaq) is a publicly traded Minnesota corporation who, was a subsidiary of Defendants Rimage, and the owner of Defendant Custom CD, Inc., their subsidiary.  Qumu exists today as a standalone company after Defendants Rimage and Custom CD, Inc. were sold to Defendants Equus Holdings in 2014.  They are headquartered and may be served at 510 1st Avenue North, Suite 305, Minneapolis, MN 55403.

11.   Defendants **Does 1-1,043** include, but are not limited to, the authors of the infringed works other than the three pirated copies of *Foxes* who gave explicit or tacit license for piracy.

## NATURE OF ACTION

12.   This is an action for numerous causes, including but not limited to copyright infringement and RICO, stemming from the commercial piracy of Plaintiff's work, ***Outfoxing The Foxes***, published in 1998.  Plaintiff's work has been, and continues to be, packaged and sold as part of ***The Pickup Artist's Library***, a collection of 1,044 pirated "PUA related e-books."[2]

## STATEMENT OF JURISDICTION AND VENUE

13.   This Court has subject-matter jurisdiction under 28 USC §1331 (federal questions), 28 USC §1332 (diversity), 18 USC §1965(b) (RICO's national service of process), and supplemental jurisdiction over all state-law claims.

14.   This Court has personal jurisdiction over all Defendants because a) they regularly conduct business within this District, and b) are subject to long-arm jurisdiction under 1) 42 P.S.

---

[2] The actual number of ***books*** is much smaller than the 822 that is billed.  Many are simple articles, USENET postings, or local nightlife guides referred to as "e-books," but which do not have registered copyrights (or whose copyrights had expired), or which were distributed freely.  By contrast, Plaintiff's ***Outfoxing The Foxes*** was a full-length, registered work (a true "book"), and appears ***three*** times in the list, including two cases where his work was pirated by others, and then pirated ***again*** by the PUA Library.  The same title (***Foxhunting: The Art Of Dating And Seduction***) was also attributed to ***C Kellogg***, and to pualib.com itself under the name "Hunting Fox."

§5322 and 2) The Copyright Act.  Venue is proper because Plaintiff is domiciled in the District.

<u>**THE INFRINGEMENT**</u>

15.   Plaintiff incorporates by reference, as if stated verbatim, all previous paragraphs.

16.   On October 29, 1998, just prior to putting it on sale for $29.95, Plaintiff registered his

landmark ***Outfoxing The Foxes: How To Seduce The Women Of Your Dreams*** ("Foxes"):



17.   On October 26, 2015, Plaintiff discovered the pualib.com website:



http://pualib.com/packages/The-Complete-PUA-Books-Collection.html

18.   Also on October 26, 2015, and for evidentiary purposes only, Plaintiff purchased a

copy of the digital download from Defendant ***Loki.net@gmail.com***:





19. As paragraph 18 above indicates, as of October 26, 2015, Defendant "Loki" (actually Defendant Sofield) was listed as "Oleynyk Vladymyr," a *verified* PayPal user. On December 11, 2015, however – after Plaintiff had reported the piracy, and pualib.com began using Defendant C2S, LLC from Payloadz, the name on the PayPal account had changed to "Sally Longer":



https://www.click2sell.eu/securepayment/checkout.do?xpk=
514c4d76394142476830677441723771636639657566c7841676254636d36592b48632f6b656e79622b553d
(Retrieved 12/11/2015 12:10 am EST).

### Notification Of Copyright Infringement (And Defamation) To Defendants

20.   In a world where SOPA was deemed necessary to curb industry-destroying piracy, Plaintiff simply could not *fathom* any response other than immediate cessation of the *felonious* conduct by the numerous Defendants, who could easily have escaped liability by feigning innocence.  Instead, Plaintiff received the shock of his life, one which has him wondering, even now, if he has somehow been transported to a world resembling the alternate 1985 from *Back To The Future: Part II*.

### Defendants PUA Media Library et al.

21.   Pursuant to the DMCA, which clearly does not apply in this case, Plaintiff first notified the PUA Media Library, who immediately removed what Plaintiff thought was the only copy of *Foxes* on the site from the digital download.  Though this would subsequently prove not

to be the case – three copies of Plaintiff's work remained = this proper legal step had removed

his standing to file DMCA complaints, since he is not authorized under the DMCA to bring

third-party complaints, his implied-license evidence against the Does notwithstanding:

| This PC  ›  Boot Disk (C:)  ›  Users  ›  newme  ›  Downloads  ›  TheCompletePUABooksCollectionFromPualibCom | | | | | |
|---|---|---|---|---|---|
| Name | Type | Compressed size | Password | Size | Ratio |
| Geoff - Real Social Dynamics | PDF File | 144 KB | No | 135 KB | 7% |
| Geoff - Real Social Dynamics RSD 1... | PDF File | 155 KB | No | 175 KB | 12% |
| Geoffrey Miller - The Mating Mind | PDF File | 1,990 KB | No | 2,134 KB | 7% |
| George Anderson - Dynamite Ment... | PDF File | 821 KB | No | 867 KB | 6% |
| Giacomo Casanova - Quotes And I... | PDF File | 641 KB | No | 650 KB | 2% |
| Giacomo Casanova - The Complet... | PDF File | 4,268 KB | No | 4,772 KB | 11% |
| Giuseppe Notte - All About Wome... | PDF File | 1,169 KB | No | 1,241 KB | 6% |
| Glad - Marriage Tips And Traps | PDF File | 63 KB | No | 76 KB | 17% |
| Gordon Ray Parker - Fox Hunting T... | PDF File | 579 KB | No | 610 KB | 5% |

Screenshot of Partial File List of Digital Download of Pirated Works from Amazon AWS Retrieved 10/26/2015

22.   In addition to the copyright infringement, pualib.com contained a defamatory

"biography" of Plaintiff which appears to be the source MATERIAL for similar "hate" websites,

all of which are part of a *Kafka*-esque campaign to destroy Plaintiff's reputation while

simultaneously pirating his work (and misappropriating his likeness):



23.   On the page describing what Plaintiff thought was the only pirated copy of his work

on pualib.com,[3] his name and the cover of *Foxes* were changed, but not the book's **Foreword**:



## Hostgator

24.   Beginning on October 26, 2015, Plaintiff then notified Hostgator that pualib.com was

a criminal piracy website, to which Hostgator responded that they would respond only to a

proper DMCA complaint.  Subsequent requests have proven futile, as the site is still hosted there,

but are also moot in this case, since *awareness* of the piracy is the legal standard on their end.

## Amazon And Amazon AWS

25.   In all the excitement surrounding the previous paragraphs, Plaintiff is not sure if he

has properly pled the involvement of five or six defendants, the sixth being Defendants Amazon

and Amazon AWS, who hosted the infringing works on their "cloud" server.  Amazingly, upon

---

[3] Plaintiff would learn, only recently, that not only was *Foxes* still being shipped with the pirated download and
DVD files, but that it appeared twice more, under the fictitious authors "C Kellogg" and "Hunting Fox."

subsequent notification to these two Defendants that they were ***brazenly committing a felony***, their response was to do absolutely nothing, their DMCA sword artistically wielded.

## PayPal

26.   Shortly after Defendant PayPal processed the illegal transaction on October 26, 2015, Plaintiff notified them that they were moving money for a criminal piracy ring, to which Defendant PayPal, in a long series of e-mails, cited Plaintiff's lack of standing under the DMCA.

27.   Notwithstanding the above paragraph, PayPal ***appeared*** to have terminated Defendant ***Loki.net@gmail.com***'s ability to process payments from pualib.com, but only for a short period of time.  Within weeks, the payments had resumed, only to be terminated again, and then only to rise from the dead like a Phoenix once more, as the payments through PayPal have continued to be processed up to and including the present.

## Click2Sell

28.   Defendant C2S, LLC (Click2Sell) did not enter the equation until it replaced Defendant Payloadz as the merchant software gateway, sometime prior to December 11, 2015:



https://www.click2sell.eu/securepayment/checkout.do?xpk=
514c4d76394142476830677441723771636639657566c78416762546360d36592b48632f6b656e79622b553d
(Retrieved 12/11/2015 12:10 am EST).

### CustomCD, Inc.

29.   Defendant CustomCD, Inc., shipped the pirated DVDs, in April, 2016, after Plaintiff

had ordered an evidentiary copy (obtaining a second after the first was delayed in the mail),

### Defendant Payloadz And Sofield's Motion To Dismiss

30.   Prior to Plaintiff's Rule 41 motion in Parker v. PayPal, Sofield and Payloadz were the

only defendants to move for dismissal (and to strike the Complaint).   Their position was

foreshadowed on October 26, 2015, when, in response to notice that he was hosting the pirated

content, Defendant Sofield replied to Plaintiff (as *@Whisability*) with this tweet:



https://twitter.com/sprfrkr/status/658684101143207937.

31.   "That which can be asserted without evidence can be dismissed without evidence."

(C. Hitchens.) Defendants Sofield and Payloadz's motion to dismiss (filed 12/08/15) is as chock

full of *ad-hominem* attacks as it is completely lacking in evidentiary support.[4]  Not only is this

completely irrelevant to Plaintiff's copyright, but it raises the questions of why anyone would

pirate such advice, or why Defendants would participate in its mass-distribution.

32.   In the motion itself, Defendant states the following, addressed individually:

---

[4]Assuming, *en arguendo,* Plaintiff the moral equivalent of Charles Manson (himself the coyprightholder of his song *Garbage Dump*), his standing remains valid.  In multiple litigation, Defense counsel has sought adjudication without a shred of evidentiary support from his clients.

a.   "Movants do not get involved with the content of the merchants' websites, or what is offered for sale by the online merchants since those are things not visible to it because it processes numbers and financial data only." (Motion, p. 2, ¶ 2).

Even at face value, Defendants have admitted to ***willful blindness***, while offering no evidentiary support for its claim of innocence, a claim easily refuted by its ***marketing*** materials and procedures, which involve extensive involvement with the client in setting up the electronic "store." This, of course, is further rendered moot, because, as the preponderance of the evidence already shows, Defendant Sofield is the sole owner and operator of <u>pualib.com</u>.

b.   Moreover, the Complaint acknowledges that Movants "have a long history of collaborating with" PayPal and that Sofield is a member of PayPal's Developer Advisory Board and works with software developers to integrate their customers' websites with the PayPal payment system; and Sofield himself, as a software developer, fixed a security leak in the PayPal interface. (Motion, p. 2, ¶3).

Defendant has admitted to having the necessary ***means*** and ***opportunity***.

c.   "Not only does the Complaint establish and recognize that Movants are associated with PayPal as an honored, legitimate business, the Complaint goes further and alleges that PayPal investigates and monitors all of the transactions going through its system, and PayPal as a former division of the public company eBay, a standalone public company since July 2005, was subject to constant scrutiny under the Securities Laws, SEC regulations, audited financial reporting, and constant monitoring by the millions of public shareholders that included hedge funds, banks and pension fund managers, to name a few. This further makes the wild allegations in the Complaint discussed below beyond being pure fiction, if not the product of some ***derangement***." (Motion, p.2, ¶ 4).

Accusations of criminal piracy and wire fraud are not exactly the ***Good Housekeeping*** seal of approval; using Wall Street as a character reference speaks for itself. As for PayPal monitoring customer activity, this just-released ***Fortune*** article says it all:



http://fortune.com/2016/06/21/paypal-cloud-seafile/

    d.    As we shall demonstrate, the Complaint's irrelevant, fantastic and *hallucinatory* themes and accusations spanning from 1994 through 2015, involve the secret, behind the scenes world of people who were involved in the free and for-profit endeavor of using web sites and ebooks to exploit socially challenged men by proposing to give, or sell them advice on how to "pick up" females who otherwise would resist their sexual advances. (Motion, p. 3, ¶ 5).

While continuing his attempted character-assassination of Plaintiff, Counselor Green

fails to cite any authority which would invalidate the copyright for "PUA" material, nor does he

reconcile his own clients' participation in the mass distribution of this purported *evil* teaching.

    e.    In page after page of the Complaint, Plaintiff ("Parker") bemoans irrelevantly, and seemingly for no purpose, that in the 1990s he had considered himself to be an expert in devising schemes for exploiting the gullibility of these socially challenged men before a group of newcomers expelled Parker from the ranks of the exploiters. According to Parker, *these newcomers swiped his best techniques, and then formed a monopoly that excluded him,* which Parker contends still operates today. [5] (Motion, p. 3, ¶ 6).

With *Foxes* included thrice in the pirated works, Plaintiff was far from alone in

considering himself an expert, while the piracy cartel he alleges is the basis for this action.  The

"official ASF FAQ" (1999) specifically cited Plaintiff as the reason the community "needed" to

begin, due to his ideas – the ones pirated thrice – creating the need for website-based censorship.

33.    Counselor Green eventually gets around to addressing Plaintiff's allegations:

    The needle in the haystack of the Complaint appears to be based on Parker's discovery that Vladymyr Oleynynk, *a man in Russia,* had combined 874 separate, digitally stored "e-books" about how to be a pick-up-artist into one mammoth (1.7 GB condensed zip

---

[5] Though completely irrelevant, Counselor Green seems to want to turn this into a USENET-styled "flame war" between the various dating-advice camps, while asserting a presumption that *his* world view is inherently superior, amounting to a claim that these exploited men would be following *his* advice.  In such a "flame war," Counselor Green would be subject to a cross-examination as brutal as what he is attempting to inflict upon Plaintiff.

file) anthology ("Oleynyk's Anthology") that buried within it, contained an e-book Parker claims he wrote; and Parker contends that his e-book was included in the 1.7 gb file of other e-books without his permission in violation of the copyright laws. (Id, ¶ 7).

34.   Putting aside for the moment, Defendants' nonchalance regarding its client engaging in *criminal piracy* and sending the proceeds to *Russia,* As of December 11, 2015, *three days* after the above was filed with the court, the "lone wolf from Russia" claim was refuted:

      a.   The above-referenced "Vladymyr Oleynyk" (the name of a relatively famous Russian political activist) *does not exist*.  Plaintiff's attempt to serve Mr. Oleynyk by international certified mail confirmed this.  PayPal policy clearly forbids the use of an alias.

      b.   As set forth in paragraph 19, the PayPal account tied to the loki.net@gmail.com e-mail address began listing "Sally Longer," another alias for Defendant Sofield, as the seller.

      c.   The DVD for the PUA Media Library was shipped via the US Mail, by Defendant Custom CD, Inc., using Permit No. 447, from Portland, Oregon.[6]

35.   The Russian alias with the "*verified* non-US account," allows *all* money that moves through PayPal to escape detection due to the lack of IRS 1099-k reporting requirements.  Once in "Russia," the money can be moved anywhere, tax-free, as gifts to friends and family, or to purchase items which themselves may be resold (a key profit center for Defendant Amazon). Counselor Green offers no evidentiary support from his clients, instead making their words his own, asserting them as absolute truth which should not face challenge or cross-examination.

36.   Counselor Green again uses slanted language and his personal opinion of Plaintiff's work to ridicule his copyright standing:

> However, to show how utterly ludicrous this entire case is, the retail price for Oleynyk's Anthology that Vladymyr Oleynynk charged, and the price included the ENTIRE 1.7 gb file containing 74 separate, digitally stored "e-books" about how to be a pick-up-artist (including in the heap, Parker's e-book that was self-published in 1998 (See, Complaint at ¶15), was....FIVE CENTS per download! (Motion, p. 3, ¶ 8).

---

[6] A copy of the DVD product, replete with USPS meter and permit information, is attached hereto as Exhibit A.

> Putting aside the issue of damages for copyright infringement under 17 U.S. Code § 504, which are not relevant at this stage, what Parker's five cents shows is that he has a greatly exalted view of the vibrancy and profitability in the area of advice to men who think they need help picking up females for sex; and the gist of his allegations cannot be taken seriously or as even approaching the plausibility test. (Motion, p. 3, ¶ 9).

37.    Putting aside the issues that 1) piracy is a *felony*, 2) over a thousand other works were pirated, 3) *Foxes* continued to sell steadily on Defendant Amazon's "Kindle" store, both as a standalone ($2.99) and as one of six parts of Plaintiff's "PUA Library," ($9.99), until pulled by Plaintiff (due to the piracy), Counselor Green is mistaken in his assumption that there is no money to be made in this genre:[7]

   a.    The pirates did not have to concern themselves with actually writing the books.

   b.    In a lawsuit, it was revealed that Mystery Method made $3.2 million in 2005, while internet marketer David DeAngelo, whose own works appear numerous times in the pirated-works collection, has claimed to have made tens of millions of dollars with his *Double Your Dating* line of products, services, and seminars.

   c.    Neil Strauss's *The Game*, which the piracy caused the author to neglect properly crediting Plaintiff, was a *New York Times* Bestseller, and has led to ongoing income for Strauss.

## Where Are They Now? Life After Rule 41

38.    Since December 10, 2015, when Plaintiff withdrew the first lawsuit under Federal Rule 41, much has transpired, calling into question many averments by Counselor Green.

---

[7] Counselor Green's smug dismissal of Plaintiff's imputed value of both his work and the PUA-related internet traffic belies the purpose of both the piracy ring and the larger seduction syndicate of monopolizing the online market for male-centric dating-advice.  To Plaintiff, the e-book market was the extent of his reach, but to the syndicate, e-books were superfluous content used to attract "whale" customers who spend several thousand dollars on live instruction, either one-on-one, or through weekend "bootcamps" by a single PUA instructor, to a half-dozen or so students, netting tens of thousands of dollars a week.  Through piracy, the syndicate could starve Plaintiff of what should have been substantial e-book revenue while *upselling* live-instruction products.

**Defendants Sofield/Payloadz**

39.   Defendant Sofield, apparently thinking Plaintiff had "turned tail and run" with his

Rule 41 motion, declared victory:



**Defendant Loki.net@gmail.com**

40.   On December 14, 2015, Defendant "Loki" – unaware that the lawsuit had already been

pulled – e-mailed Plaintiff to complain that Plaintiff's *takedown* efforts had harmed his income,

while now offering "membership" in the "seduction syndicate" disclaimed by Counselor Green:



41.   Plaintiff construed this highly threatening e-mail as an attempt to coerce his silence

through intimidation, noting in line two of the mail that he was "angered" by Plaintiff's conduct.

As the preponderance of the evidence now clearly proves, Defendant "Loki" was not anyone

from Russia, but likely Sofield himself.  By the time this mail was sent, the name on the

supposedly *verified* PayPal account had already been changed to the "Sally Longer" alias.

42.   As a direct and proximate result of this e-mail, Plaintiff "laid off" Defendant, literally fearing for his physical safety, given Sofield's verbal aggression, and his clear lack of preparation for any negative outcome to this suit.[8]  In the meantime, he continued his diligence, as existing evidence was uncovered, and new evidence continued to steadily accrue.

43.   Once Plaintiff successfully cut off the sales revenue from pualib.com, Defendant "Loki" (Sofield) attempted to turn to advertising revenue to monetize his site's considerable traffic of thousands of hits per day (as noted by former Defendant Richard LaRuina), until each advertiser pulled its sponsorship once put on notice (the reason they aren't being sued).

### Defendants Amazon And Amazon AWS

44.   Amazon, whose *Kindle* e-book store used to offer Plaintiff's works, including *Foxes* (he has since pulled them), once notified Plaintiff that he had to remove from his website a stray copy of *Foxes*, which they had found as part of their ongoing effort to *monitor customer files*, at least when they want to.  It was this diligence which inspired Plaintiff to notify Defendant Amazon AWS that it was hosting pirated content:



---

[8] As should be clear from this case and Parker v. Goldhagen (15-cv-3304), Counselor Green's "secret sauce" in his self-professed "Rambo" litigation style is to bypass the use of affidavits as evidentiary support.

45.    The e-mail to Amazon AWS included direct-link URL proof of infringement for

downloading a pirated copy of Anthony Robbins's ***Unlimited Power Home Study Course***.

Amazon, now clearly on notice of the piracy did not reply, except with intransigence.

46.    On May 27, 2016, Plaintiff  put CEO Jeff Bezos directly on notice of the piracy:



47.    Amazon replied, citing the ***inapplicable*** DMCA and a need to ***protect its customers.***



## Defendant PayPal

48.   On December 11, 2015, in response to a report that the criminal infringement was

ongoing, PayPal replied with another e-mail to Plaintiff by disclaiming any need to act:[9]



49.   Because Plaintiff had mistakenly thought ***Foxes*** was no longer being pirated, he

framed his infringement claim by noting that Mr. Harvey's work had to have been pirated,

because consent to pualib.com for his work equates to consent to the piracy of Plaintiff's.  Once

again, PayPal chose ***willful blindness*** by refusing to "see" any piracy absent a DMCA notice.[10]

## Defendant C2S, LLC (Click2Sell)

50.   On December 10, 2015, Plaintiff notified Click2Sell of the piracy via e-mail, in which

he included a copy of the first lawsuit, along with screenshots of the purchase link, and of the

page devoted to Steve Harvey.  In response, Click2Sell forwarded the e-mail to Defendant

---

[9] As noted in paragraphs 26-27 above, PayPal had apparently ceased allowing Defendant "Loki" (Sofield) to accept payments, but this was not the case, as it was the Payloadz gateway which had caused the conduct to cease. Once pualib.com began using Click2Sell, the payments resumed, to the same loki.net@gmail.com address used before.
[10] Criminal copyright infringement, of course, may be prosecuted without DMCA notification from anyone.

"Loki," this time as "Sally Longer," at the e-mail address of Luckypua777@gmail.com, treating

the matter as if they had no duty to get involved:



51.    Nevertheless, pualib.com did stop taking payments via the Click2Sell gateway on or

before December 16, 2016, leading to Defendant Loki's (Sofield's) "angry" e-mail to Plaintiff.

### The Second Purchase Of The Pirated Works (DVD)

52.    Despite his having taken every possible step to stop the piracy, which was still illegal,

and still harming his own revenue, even if *Foxes* were still not part of the collection, by the

spring of 2016, sales of the pirated-works collection as a download or DVD had once again

resumed.  The "silver lining" was that Plaintiff now had the opportunity to source the DVD and

decisively refute Counselor Green's "Russian lone-wolf" claim.

53.    To determine from where in the United States the pirated-works DVD collection was

being shipped, in April 2016, Plaintiff spent $99.00 (up from $39.90, the new price for the digital

download) on an evidentiary copy of the pirated-works collection on DVD, which he ordered on

April 6, 2016.  Following are the order page, receipt and mailing envelope:

SECURE CHECKOUT FORM

Secured Purchase Page For:
The Complete PUA Books Collection (on DVD)

CLICK2SELL MARKETPLACE

**Your Purchase Summary**

| | |
|---|---|
| Product Name | The Complete PUA Books Collection (on DVD) |
| Product Type | Material |
| Seller | Sally Longer |
| Total Amount | $ 99.90 |

**I will pay with**

PayPal

MoneyBookers

VISA

by Skrill

**Enter Your Information**

First Name

Last Name

City

ZIP Code

Your Email

Your Address

State: Select a State

Country: United States

Phone

Your order summary

| Descriptions | Amount |
|---|---|
| The Complete PUA Books Collection (...The Complete PUA Books Collection (on DVD)<br>Item number:<br>Item price: $99.90<br>Quantity: 1 | $99.90 |
| Item total | $99.90 |

Total $99.90 USD

PO Box 83209
Portland OR 97283
USA

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
PORTLAND, OR
PERMIT NO. 447

801010760383670

**Former Defendants LoveSystems And PUATraining**

54.   To the surprise of many in the PUA community, former Defendants Love Systems (Benedict) and PUA Training (La Ruina), have either closed, intend to close, or have been sold to new owners, so the previous owners could "spend more time with family."

**COUNT ONE: COPYRIGHT INFRINGEMENT (ALL DEFENDANTS)**

55.   Plaintiff incorporates by reference, as if set forth fully verbatim herein, the entire contents of all previous paragraphs.

56.   Each Defendant not only engaged in the massive, *criminal* copyright infringement set forth hereinabove, but all except previous-owner Defendant Qumu Corporation did so even *after* being repeatedly put on notice of the infringement, relying on a level of technicality which would cause even the most biased, bench-legislating juror to blush.  As the highlight reel shows:

   a.   Defendant loki.net@gmail.com (likely Sofield), even after being put on notice of mass criminal piracy, committed direct copyright infringement against Plaintiff's copyright on numerous and ongoing instances, with the infringement continuing to the present.

   b.   Defendant Hostgator, even after being put on notice of mass criminal piracy, committed direct and/or contributory copyright infringement by hosting and continuing to host pualib.com, up to and including in the present.

   c.   Defendants Amazon and Amazon Web Services, even after being put on notice of the criminal piracy, committed direct and/or contributory copyright infringement by hosting the actual three pirated copies of *Foxes*.

   d.   Defendant C2S, LLC (as Click2Sell) committed direct and/or contributory copyright infringement by processing and continuing to process payments for the pirated-works collection, after having been put on notice of the piracy, up to and including in the present.

e.      Defendants Payloadz and Sofield committed direct and/or contributory copyright infringement by processing, and continuing to process, payments for the for the pirated-works collection.  Notice under the DMCA was not required, due to the commercial nature of the piracy, and the willful blindness of Defendants, literally the "backbone" for the "money trail."

f.      Defendant PayPal committed direct and/or contributory copyright infringement by processing and continuing to process payments for the pirated-works collection, after having been put on notice of the piracy, up to and including in the present.

g.      Defendants Qumu corporation, Rimage Corporation, Equus Holdings, and Custom CD, Inc. are wholly and separately liable for direct and/or contributory copyright infringement by producing, and/or continuing to produce, the pirated-works collection on DVD.

h.      Defendants John Does 2-1,043 are liable for contributory copyright infringement, by giving an implied license to pualib.com to have their works included in a derivative work which infringed on Plaintiff's copyright for *Foxes*.

57.    Plaintiff avers that all acts set forth in paragraph 56 above constitute violations of 17 USC §106-122, for which Plaintiff has standing to sue under 17 USC §501(a), and states this claim for relief on that basis.

58.    From all named Defendants (unless otherwise specified), Plaintiff is entitled to

a)      injunctive relief under 17 USC §502(a);

b)      impounding and disposition of the infringing articles under 17 USC §503(a), and their destruction under 17 USC §503(b);

c)      statutory damages of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00 US) under 17 USC §504(c)(2), or, alternatively, actual damages and profits under 17 USC §504(c)(1); for Defendant loki.net@gmail.com, it is a *rebuttable presumption* under 17

USC §504(c)(3)(A) that the infringement was willful and wanton, due to the false contact information provided to the pualib.com domain registrar;

      e.    costs of suit, and reasonable attorney fees under 17 USC §505(c)(1); and

      f.    such other relief this court deems just and proper to make Plaintiff whole.

## COUNT TWO: UNJUST ENRICHMENT (ALL DEFENDANTS)

59.   Plaintiff incorporates by reference, as if set forth fully verbatim herein, the entire contents of all previous paragraphs.

60.   To the extent that any named defendant is not liable for copyright infringement, any other means by which they profited from the infringement (such as merchant fees, hosting fees, or "cloud" fees), constitute a violation of the state-law tort of unjust enrichment; Plaintiff states this claim for relief on that basis.

61.   Plaintiff is entitled to the aforementioned enrichment, specifically the proceeds from aiding and abetting the sale of stolen property, in such a manner where copyright law does not apply, such as for the merchant, webhosting, and affiliate fees, in a substantial amount to be determined at trial.

62.   Plaintiff is further entitled to injunctive relief, costs of suit, and such other and further relief this court deems necessary to make Plaintiff whole.

## COUNTS THREE AND FOUR: RACKETEERING AND CIVIL CONSPIRACY

63.   Plaintiff incorporates by reference, as if set forth fully verbatim herein, the entire contents of all previous paragraphs.

64.   If statutory damages for the copyright infringement are restricted to $150,000.00 for all parties, we have a RICO conspiracy, whose predicate acts, engaged in by all named defendants, are a) mail fraud; b) wire fraud; c) criminal copyright infringement; and d) money

laundering.  We also have a state-law civil conspiracy.  Plaintiff states separate and alternative claims for relief on these bases.

65.   The structure of the RICO enterprise is as follows:

a.   Defendants Sofield and Payloadz (as "Loki" and "Sally Longer") are its kingpin(s), in violation of 18 USC 1962(b).

b.   All other Defendants are subordinates, each having committed two predicate acts, in violation of 18 USC 1961(1), which, as a violation of 18 USC 1962(a) (money laundering), and 1962(c) (furtherance of the piracy ring).

c.   pualib.com is the RICO enterprise.

66.   For the conduct set forth hereinabove, Plaintiff has standing to file suit under 18 USC 1964(c), "civil RICO."

67.   If we use RICO to treble the statutory copyright damages, Plaintiff is entitled to FOUR HUNDRED FIFTY THOUSAND DOLLARS ($450,000.00 US).

68.   Alternatively, Plaintiff is entitled to a) compensatory and punitive damages, b) injunctive relief sufficient to terminate the actionable conduct, c) costs of suit, including reasonable attorney fees, and d) such other and further relief as this court deems just and proper, to make Plaintiff whole.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1.   For counts one, three, and four, or for any of these three counts, Statutory damages of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00 US), trebled under RICO, or amplified under state-law civil conspiracy;

2.   For count two, the enrichment, in an amount to be determined at trial;

3.   An accounting for and disgorgement of all profits;

4.   Destruction and disposition of all piracy;

5.   Injunctive relief sufficient to terminate the *criminal* conduct; and

6.   Such other and further relief as this court deems just and proper, in order to make

Plaintiff whole.

This the 6th day of September, 2016.

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 423-1405
SnodgrassPublish@aol.com
**PLAINTIFF**