**THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER** | : | |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | **CIVIL ACTION NO. 16-4786** |
| | : | |
| **v.** | : | |
| | : | |
| **PAYPAL INC., et al.** | : | |
| Defendants | : | |

---

**DEFENDANTS SHANNON SOFIELD AND PAYLOADZ, INC.'S RULE 11 MOTION
FOR SANCTIONS**

---

Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)/
(215) 574-0310 (fax)
**Attorneys for Defendants Shannon
Sofield and PayLoadz, Inc.**

Dated: January 27, 2017

**THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GORDON ROY PARKER** | : | |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | **CIVIL ACTION NO. 16-4786** |
| **v.** | : | |
| | : | |
| **PAYPAL INC., et al.** | : | |
| Defendants | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2017, upon consideration of the

Rule 11 Motion for Sanctions filed by Defendants Shannon Sofield and PayLoadz, Inc

("Movants"), and after reviewing the matter presented by the interested parties as well as a

review of Plaintiff's pro se filings in other cases in this Eastern District Court it is hereby

ORDERED that:

    (1)    Plaintiff shall pay into Court the amount set by the Court for Movants' attorneys' fees, costs, and expenses associated with defending this action and prosecuting this Motion.

    (2)    Counsel for Movants shall file a petition within 60 days of the entry of this Order setting forth the basis for the amount Movants seek as attorneys' fees, costs, and expenses

    (3)    Pursuant to Fed.R.Civ.P 11(c) 4, to deter repetition of the conduct that violated Rule 11, Plaintiff shall not file any new pro se civil action in the Eastern District without first requesting, and receiving approval from a judge of this Court.

**BY THE COURT:**

_____

**NITZA I. QUIÑONES ALEJANDRO, J.**

**THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|                          |   |                          |
|--------------------------|---|--------------------------|
| **GORDON ROY PARKER**    | : |                          |
| a/k/a "Ray Gordon"       | : |                          |
| Plaintiff                | : | **CIVIL ACTION NO. 16-4786** |
|                          | : |                          |
| **v.**                   | : |                          |
|                          | : |                          |
| **PAYPAL INC., et al.**  | : |                          |
| Defendants               | : |                          |
|                          | : |                          |

---

**DEFENDANTS SHANNON SOFIELD AND PAYLOADZ, INC.'S RULE 11 MOTION
FOR SANCTIONS**

**<u>Introduction</u>**

Defendants Shannon Sofield and Payloadz, Inc. ("Movants"), by their undersigned

counsel, respectfully move under Fed. R. Civ. P. 11 for an Order granting them relief against

Plaintiff, Gordon Roy Parker ("Parker"), that includes reimbursement of attorneys' fees, costs

and expenses incurred, *inter alia*, in defense of Parker's four Complaints (that were filed,

voluntarily dismissed, filed again, and Amended twice).[1]

---

[1]  On November 15, 2015, Parker filed his first Complaint, Case No. 15-6065 (E.D. Pa. 2015), ("Original
Complaint") against Movants alleging twelve claims, five of which are the same in the current Complaint: copyright
infringement, unfair competition, tortious interference, breach of contract, and misappropriation of likeness.

On December 8, 2015, Movants filed a Motion to Dismiss Parker's Original Complaint, but instead of defending the
Original Complaint, on December 10, 2015, Parker voluntarily dismissed it under Fed.R.Civ.P. 41.

On September 19, 2016 Parker filed his initial Complaint under the docket number of this case (First Complaint),
but subsequently withdrew it after Movants filed their Motion to Dismiss on November 3, 2016. This caused
Movants to spend additional sums which greatly strained their limited resources. (see, Affidavit of Sofield, attached
hereto as Exhibit "A" and incorporated herein by reference)

After Movants filed a Motion to Dismiss, Parker amended the Complaint ("Amended Complaint"). On December
13, 2016, Parker filed his fourth Complaint in this case ("Corrected Amended Complaint").

This fourth Complaint was stricken on December 15, 2016 since Parker did not have permission from the parties, or
leave from the Court to file a new amended Complaint. Moreover, the stricken Corrected Amended Complaint
asserts essentially the same causes of action Parker pled in the three earlier Complaints, albeit he added additional,
<center>Footnote continued on next page</center>

Movants rely on the following and the attached brief as grounds for relief.

1.      Parker sued Movants and others for an alleged violation of his copyright of an Electronic Book that was included in an anthology and uploaded to a commercial cloud service Movants offered to sellers of books, videos, music and other content that could be downloaded from the Internet and paid for through the use of PayPal.

2.      In response to first Complaint Parker filed in 2015, Movants filed a Motion to Dismiss and asserted, inter alia, immunity under laws that protect Internet hosts that do not have involvement with the content to copyrighted material. The Motion to Dismiss prompted Parker to voluntarily dismiss his action.

3.      Almost a year later, Parker's case returned to the Eastern District when he filed a new Complaint against essentially the same Defendants, and alleged the same causes of action, but in the new Complaint, Parker manufactured a completely false scenario that posited the totally implausible allegation that Movant Sofield used fake identities, that he was the person who pirated Parker's copyrighted electronic book, and that Movant Sofield owned or maintained a website that catered to those in the "Pick-Up-Artist" community to which Plaintiff contended he was a prominent member.

4.      Parker committed violations of Rule 11 because he signed and filed the four versions of the Complaint knowing that his allegations against Movants were false, and that Movant Sofield had not used false identities, and had not had any involvement with the Pick-Up-Artist or any web site that catered to it. (Movants incorporate their Motions to Dismiss by

---

fake and implausible allegations of skullduggery such as parties using false identities, and engaging in cloak and dagger activities.

In addition, Parker filed and signed, two responses to Motions to Dismiss that Movants had filed that repeat and amplify the wrongful matter that plagues Parkers Complaints. Parker's filings, when discussed as a group, are referred to as "Plaintiff's Papers"

reference where the background of the case was discussed at length along with the nature of the defenses Movants have to the Complaints.)

5.      Parker's false allegations in Plaintiff's Papers were artifices, designed deceitfully to create a fiction about Movant Sofield's role that would, at the pleading stage, make inappropriate the statutory defenses available to Movants if Parker's allegations were no on their face recognized by the Court as being implausible. Indeed, in response to Movants' Motion to Dismiss, Parker asserted that the Court had to accept his allegations as true and could not dismiss his Complaint.

6.      Parker fabricated supposed-facts about Movants that he knew were false, or that he had no reasonable basis to think were true including, *inter alia*, allegations asserting that Movant Sofield used aliases, and that he had an interest in "Pick-Up-Artists" and websites frequented by those who did have such an interest.

7.      Nonetheless, Parker all but admitted he has no evidence of who, if anyone, offered to sell his copyrighted e-book, Outfoxing the Foxes ("OTF") using the email address loki.net@gmail.com.[2]

8.      Parker, fearing an early demise to his case from Rule 12 motions to dismiss, pled false scenarios in an effort to give undeserved vitality to his case in the hope of forcing Movants to litigate until discovery was completed and they ultimately could ask of Summary Judgment.[3]

---

[2] At ¶27 of the Amended Complaint, Parker avers "that either a) Defendant Loki is Carter Ajadir, and lives in Los Angeles, California, or b) Defendant Loki is Defendant Sofield." The seller could also be a company, or Parker himself, since he may have fabricated the incident to enjoy his hobby of filing complaints in Federal Court.

[3] Parker violated Rule 11(b)(2) by alleging in Count One that Movants committed copyright infringement by hosting his copyrighted materials on the PayLoadz website. (Compl. at ¶¶68-78). However, Parker chose to ignore the fact that §512(a) of the Digital Millennium Copyright Act ("DMCA") holds that a service provider cannot be liable for monetary relief if it does not have knowledge that material on its server is infringing, or if there is such knowledge, acts expeditiously to remove, or disable access to the material. Once Sofield learned from Parker about the alleged copyrighted book, Sofield immediately removed it from PayLoadz and banned the seller.

Footnote continued on next page

9.     As can be gleaned from the Amended Complaint and Parker's Motion for Expedited Discovery (served on Movants on November 21, 2017), Parker actually had no proof of even a single fact reasonably suggesting the two Movants committed any wrongdoing. Parker's discovery motion leaves no doubt that Parker knew Movants had not engaged in the wild schemes and behavior that Parker alleged; and his allegations and innuendo in the Complaint concerning Movants were likely the product of willful and malicious fraud on the Court by Parker to keep the case from being dismissed.[4]

10.     Parker himself exposed his scheme to prop up the Complaint with false allegations as seen in his Motion for Expedited Discovery where Parker admits his lack of knowledge of the identity of the individuals who allegedly re-sold OTF. Parker's discovery motion proves that when he filed his Complaints, Parker had no valid reason to accuse Movants.[5]

11.     Parker violated Rule 11 in an intentional and cynical effort to avoid dismissal of his Complaints *via* Fed. R. Civ. P. 12 since the statutory immunity would become a contested issue *if* the Court accepted as *plausible* the allegations that Sofield had hidden behind the false identities, and committed the intentional acts of conspiring and scheming to steal Parker's copyrighted book, as Parker alleged.

---

Additionally, Defendants are registered as designated agents with the U.S. Copyright Office, granting them safe harbor as provided by §512(a). *See* Amended Interim Designation of Agent to Receive Notification of Claimed Infringement attached hereto as Exhibit "B".

[4] Parker's attempt to transform Sofield into the alter ego of first Sally Longer, and then Loki or perhaps someone named Aljadir in California, is self-contradictory, and evinces how confused Parker is about what level of certainty he must have before dragging others into court as defendants and making allegations that cost them money to defend. (Compl. at ¶¶ 25-26). The Amended Complaint is reminiscent of the board game "Clue" and it would be no less absurd than the allegations that are actually pled if Parker added allegations revealing the culprit to be Col. Mustard, in the library, with a candelabra.

[5] *See*, Sofield Affidavit containing the Interrogatories propounded by Parker and the Movants' Answers which prove there is no merit to Parker's allegations that Sofield played any role in this case other than an owner of a corporation that operated a web hosting and download center for sellers of product that was uploaded and processed with no human intervention or review by Sofield.

12.    Parker's allegations were, on their face, false, ludicrous and implausible and they would have been easily proven as false by any reasonable investigation. Parker could not have undertaken any reasonable investigation because if he had, he would have manufactured a more believable scenario to keep his case alive. *See* Sofield's Affidavit.

13.    Plaintiff's Papers asserted matter that was neither based on the best of Parker's knowledge, information, and as evinced by Sofield's Affidavit, Plaintiff's assertions in his signed papers could not have been based on an inquiry reasonable under the circumstances.

14.    Parker's purposes for filing the papers that violated Rule 11 were improper, not only because he wrote in them false allegations in an *effort* to extend the life beyond a dismissal under Rule 12, and postponing the day of reckoning summary judgment motions could be filed after discovery was completed, but also because Parker intended to use the federal court proceedings for the improper purpose of influencing people Parker imagined were following his self-reporting on the Internet of events in his life.

15.    Parker has already attempted to use the filing of this case as a tool to burnish or repair his reputation amongst a real community (or one Parker just imagines exists) of people who read Parker's on-line posters and videos. Moreover, on many web sites that Parker visits, there is brutal criticism of him by many posters going back decades, Parker has used the pendency of these proceedings (and his other pro se cases) to threaten his detractors with bullying lawsuits, boasting that he knows how to use the federal courts to get revenge against those who criticize him, or otherwise displease him on line. If this case were dismissed, Parker would lose, rather than gain the credibility he seeks in the eyes of the Internet crowd he imagines are waiting to read his posts about the case. There is a reason beyond Parker's ego for wanting his reputation repaired and that is he has used this case, as well as his numerous other *pro* se

lawsuits as a means of gaining notoriety on the Internet in the hopes of getting new customers for his pickup artistry business.[6]

16.    The proof that Parker filed this action primarily to achieve a purpose on the Internet, and not a ruling is found in Parker's own words. For example, on November 5, 2015, prior to filing the Original Complaint, Parker breathlessly described this litigation to those he perceived to be his audience of on-line followers on the Internet at http://sluthate.com/viewtopic.php?f=11&t=1004656&start=0:

> "Yes, this is Ray Gordon. Yes, I'm about to sue half of the "seduction cartel" in two days, and bring them all down…
>
> *    *    *    *
>
> Just about all the crap you've ever read about me was put there for the purpose of destroying my career as a PUA teacher. I was forced to stop producing new content in 2001 because anytime I did, they would plagiarize it and profit from it. Instead, I waited until they exhausted the existing theory, and became desperate for new ideas, or had to rely on their own "genius" instead of mine. Please remember I learned from my cousin, who FUCKED DIANE LANE. When you're 14 and you see that, no matter how good you are, you feel inferior like I did, always working to improve. By 18 I was an PUA, and by 28 I was so off the charts none of you would believe it if I told you.
>
> *    *    *    *
>
> Even if I don't win in court, though I almost certainly will, the world will soon know what I have known all along: that my work was SO GOOD that it, and me, had to be silenced through defamation, piracy, and plagiarism.
>
> *    *    *    *

---

[6] In response to Parker's November 5, 2015 post, Parker received the following comments (which are a small sample of the thousands of comments made by individuals against Parker over the years):

"Holy sh*t OP you are a massive fa**ot. Your books are garbage, you look like that fat computer dude from South Park, and no one, from PUA Land to Sluthate, gives a flying f*ck about you or your mentally laughable scribblings."

"i don't have a problem with you. i just think you should keep your lithium tablet intake steady. and also, it's a bit ridiculous that you look like that, yet you're talking about picking up 15 year olds. it sounds highly improbable. but bipolar disorder is like that. i makes you think you're invincible."

Parker's Response: Hey ElliotLoser, Learn to read the source properly. I was 21 at the time and didn't see her outside of her work until she was 16, when SHE followed ME down Chestnut Street. This site seems to be something other than what it presents itself as. Likely put up by a certain PUA I'm about to sue. If not, I'll find that out too since people want to defame me here. Those lies can cost millions.

http://sluthate.com/viewtopic.php?f=11&t=1004656&start=0

> My haters were so vicious that they convinced a court of law in a discrimination
> case that I was mentally ill and unemployable, which enabled me to retire on
> disability at 48. I've always been disabled (bipolar), but had previously been able
> to overcome it by earning enough. Those who tried to starve me have given me
> the money to fight them in court, and literally destroy the criminals.

(S*ee* Exhibit "C", attached hereto)

17.    Parker further disclosed his extra-judicial motives for the Defendants named in

the First and subsequent Complaints in an Internet posting on November 9, 2015. In his posting,

Parker acknowledged his goal of using litigation in the Eastern District for the ulterior purpose of

enabling him to obtain discovery to learn the identities of his enemies in the "seduction cartel'

and the names of all of the other people who posted nasty things about him on the Internet. Then,

according to Parker's statement, he would sue all of his enemies in a new lawsuit. Parker thus

wrote on slutehate.com,

> On Tuesday, I'll be suing the "PUA cartel" for similar defamation, but this is done in
> furtherance of a RICO conspiracy. Obviously this site doesn't mind giving up the names
> of the people who own and run it (they will be Defendants now), and one very simple
> subpoena gets me the name of the poster as well. This isn't difficult, since I'm already
> filing the suit. It's just a matter of adding one defendant. The thing about conspiracy law
> is this: even ONE act in furtherance of the conspiracy makes the actor responsible for the
> ENTIRE conspiracy, which in this case includes:
>> Criminal copyright infringement (five years in Club Fed)
>> Money Laundering (twenty years in club fed)
>> And a host of other crimes that will be outlined in the complaint.

(*See* http://sluthate.com/viewtopic.php?f=11&t=1004688, see also, Exhibit C).

19.    Parker's multiple, illegitimate purposes to misuse this litigation thus included

threats of revenge against parties who have nothing to do with this case.

20.    Another improper purpose was Parker's design to upload copies of his Complaints

for his imagined audience on the Internet to read his threat that they should not risk insulting

him, and using this action as an example of the annoyance and burdens Parker could cause

someone he sued. This purpose can be observed in Parker's six-minute, YouTube video of

himself lecturing and boasting about the instant lawsuit on September 7, 2016. (*See,* Transcript of Parker's YouTube Video attached hereto as Exhibit "D".[7]

21.    In addition to attempting to bolstering his pickup artistry business, Parker is using pleadings in this case to threaten expressly, people he sued previously in unrelated cases with new litigation. For example, in the Amended Complaint, Parker wrote about Jacqui Holland (*nee* "Goldhagen"), a client the undersigned law firm represented when Parker filed a frivolous lawsuit against her:

> 31. On October 25, 2015, while researching his intended refiling of Parker v. Goldhagen (15-cv-3304), Plaintiff "Googled" the name of Tad James, who trained Ms. Goldhagen (a/k/a "Jacqui Holland") as a hypnotherapist. He did this specifically to explore Ms. Holland's apparent ties to the "pickup artist community" ("PUA community" or "Community") with which Plaintiff's work has been associated since 1998.[8]

22.    Parker withdrew his lawsuit in *Parker v. Goldhagen*, Nonetheless, it seems his diagnosed bipolar disorder[9] has made him unable to distinguish fact from fiction, even alleging that the pickup artistry "Syndicate", which Parker believes to have been conspiring against him for decades, was in cahoots with Ms. Holland.[10]

---

[7] After Parker was served with Movants motion to dismiss the original Complaint filed here, Parker rushed to quickly remove his videos from YouTube, possibly thinking he could obliterate the evidence. However, in anticipation of that precise behavior, Movants' counsel made a copy of the video titled "PUA Ray Gordon sues Amazon, Paypal for Mass Piracy" as well as other videos with titles such as "Story Time Finding That NICE GUY! (Advice for teen girls) and "Olivia Cara, Please Retract your LIES About Me".

[8] On June 12, 2015, Parker filed a lawsuit against Jacqui Holland, which he subsequently withdrew without prejudice on September 15, 2015.

[9] Parker admitted in his pro se case, *Parker v. Social Security Administration, et al.*, 2:15-cv-03453-PBT (E.D. Pa. 2015) (known herein as "*Parker v. SSA"* a copy of which is attached hereto as Exhibit "E") that he is afflicted with mental illness, and suffers from bipolar disorder that is severe enough to qualify him for full Social Security disability. In ¶ 30, Parker alleges categorically, and without exception, "Simply put, no one likes Parker and no one will hire him…due to his attitude and mental illness."

[10] In his Original Complaint, Parker wrote at footnote 7 "See <u>Parker v. Goldhagen</u> for a very clear example of how successful the Syndicate has been in repelling anyone from wanting to be associated with the Plaintiff."

Footnote continued on next page

23.     Parker's incessant references to the *Goldhagen* case demonstrate the danger of allowing Parker to continue to file his multitudinous *pro se* cases without Court supervision since each case burdens the people he names as Defendant. Here, Movants, who have zero relationship with Jacqui Holland, have to spend money while Parker imports into the instant case, a fight from a phantom war against Ms. Holland. Rule 11 was designed to quell this type of unwarranted annoyance.[11]

24.     Parker violated Rule 11(b)(2) by alleging that Movants unfairly competed with Parker in violation of the Lanham Act when there was no evidence at all that Movants used a false designation of origin in interstate commerce that was likely to cause confusion as to the approval of Parker's goods by another person, and that Movants use of such false designation injured Plaintiff. This was another effort by Parker to delay the termination of his suit by deceitfully creating roadblocks to a Rule 12 dismissal.

25.     Parker further violated Rule 11(b)(2) by filing claims for misappropriation of likeness, breach of contract, and tortious interference. First, Parker's state law claims are barred by the Communications Decency Act 47 U.S.C.A. § 230 because this section bars state law claims against interactive computer services for publishing content obtained from another information content provider. *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 293 (D.N.H. 2008). Second, none of these claims are warranted by existing law, and Parker failed to allege any facts that come close to demonstrating violations of these laws. Instead, Parker used

---

[11] According to the Opinions written by judges in the Eastern District and the Third Circuit, Parker is also a "serial" filer of many *pro se* complaints in this federal district court where his actions have been dismissed universally because Parker repeatedly sued parties who had no ties to Pennsylvania and were not subject to personal jurisdiction; violated the rules governing pleading; made frivolous and unsubstantiated claims; and failed to allege any cause of action for which relief could be granted. Similarly, all of Parker's *pro se* appeals to the Third Circuit have likewise resulted in the rejection of his suits.

the smoke of pleading things he knew where not real causes of action to delay an Order terminating his case.

27.    Plaintiff's Papers were filed by Parker for the additional improper purpose of harassing Movants in retaliation for filing a Motion to Dismiss Movant's first Complaint, to avenge some imagined grudge Parker has against counsel for Movants stemming from a case with which Movants had no connection, and to require Movants to pay the needless increase in the cost of litigation to induce them to pay a settlement.

28.    In summary, the allegations and other supposed factual contentions in Plaintiff's Papers have no evidentiary support; and no amount of discovery or investigation will ever adduce any evidentiary support; and Parker's claims, and other legal contentions are not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. On the contrary, Parker has conceded that there is binding authority against him.

29.    As a result of Parker's refusal to dismiss Movants as Defendants in this case, Movants are forced to incur fees to retain counsel at a time when PayLoadz and its owner are in bad economic straits, and Payloadz may shortly shut down due to decreasing sales, while Movant Sofield has become financially responsible for his parents, who are experiencing foreclosure on their home. *See* Sofield Declaration at ¶ 16.

30.    In addition to the ordinary Rule 11 sanctions, given Parker's serial filing of *pro se* cases that all have been dismissed by judges of the Eastern District and the Third Circuit, as well as his history of retaliating and suing lawyers who represented his original lawsuit victims, Movants seek relief in the form of an Order  under Fed.R.Civ.P 11(c) 4, to deter repetition of the conduct that violated  Rule 11, that would bar Parker from prosecuting any new pro se cases

without first obtaining judicial approval.  This relief finds support under 28 U.S.C. § 1651(a) , and the relief is needed because of:

a.    Parker's history of litigation and in particular his habitual vexatious, harassing nature;

b.    Parker demonstrated here that he does not care whether he has an objective good faith expectation of prevailing;

c.    Parker's cases are always filed on a *pro se* basis because no responsible attorney would risk the sanctions that would be likely if a lawyer filed the frivolous and vexatious cases he has filed;

d.    Parker's numerous frivolous and vexatious lawsuits have forced Movants as well as individuals in faraway states to incur the expense and hardship of paying for counsel here, and his cases, all of which were dismissed, have caused needless expense to other parties and has posed an unnecessary burden on the courts and their personnel; and

e.    No other sanctions would be adequate to protect the courts and other parties given that Parker claims to be a pauper and an award of money sanctions probably would go uncollected.

31.    The lack of plausibility in all of the iterations of Parker's Complaints, and Parker's disregard of the requirements of Rule 11 are manifest, and his history of filing in the Eastern District, numerous retaliatory and harassing *pro se* lawsuits in other cases further warrants an Order that Parker must obtain court approval before filing new pro se cases.[12]

---

[12] The Third Circuit and the Eastern District have recognized the authority to enter injunctions under 28 U.S.C. § 1651(a) to protect against the abuses of serial *pro se* filers of vexatious cases. *See Matter of Packer Ave. Associates,* 884 F.2d 745, 746-48 (3d Cir. 1989); *Brow v. Farrelly,* 994 F.2d 1027, 1038 (3d Cir. 1993); and *Danihel v. Office of the President,* No. CIV.A. 14-6880, 2015 WL 1954269, at *2 (E.D. Pa. Apr. 29, 2015).

32. In further support of this Motion, Movants incorporate herein the accompanying Memorandum of Law.

Wherefore, for all of the reasons presented in this Motion, Movants request that the Court impose sanctions, pursuant to Rule 11, against Parker for the filing, initiation and maintenance of this improvident and improper Plaintiff's Papers, and provide whatever relief is just and appropriate under the circumstances.

Respectfully submitted,

_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)

Dated: <u>January 27, 2017</u>                    **Attorney for Defendants Shannon Sofield and PayLoadz, Inc.**

12

## THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER** | : | |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | **CIVIL ACTION NO. 16-4786** |
| | : | |
| **v.** | : | |
| | : | |
| **PAYPAL INC., et al.** | : | |
| Defendants | : | |
| | : | |

---

## DEFENDANTS', SHANNON SOFIELD AND PAYLOADZ, INC.,'S, MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SHANNON SOFIELD AND PAYLOADZ, INC.'S RULE 11 MOTION FOR SANCTIONS

---

Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)/
(215) 574-0310 (fax)
Dated: <u>January 27, 2017</u>    **Attorneys for Defendants**

1

# TABLE OF CONTENTS

**Page**

Table of Citations ................................................................................................ii

I.      Why Plaintiff's Rule 11 Violation Need Early Scrutiny In
        This Case ...............................................................................................1

II.     Parker Has Followed in This Case, His *Modus Operandi* of Filing
        Digressive And Vexations *Pro Se* Complaints in Violation of the
        Standards in Rule 11 ..............................................................................2

III.    Plaintiff Violated Rule 11(b)(1) By Filing His Complaint For
        Improper Purposes ................................................................................5

IV.     Parker Pleaded No Cognizable Copyright Claim Against Movants ....................7

V.      Parker Pleaded No Cognizable Unfair Competition Claim Against
        Movants ................................................................................................10

VI.     Parker Pleaded No Cognizable Breach Of Contract Claim Against
        Movants ................................................................................................11

VII.    Parker Pleaded No Other Cognizable Claim Against Movants ...........................11

VIII.   Conclusion ............................................................................................11

# TABLE OF CITATIONS

**Page**

*Kay Berry, Inc. v. Taylor Gifts, Inc.,*
    421 F.3d 199 (3d Cir. 2005)......................................................................................11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005)....................................................................................................11

*Parker v. Google, Inc.,*
    422 F. Supp. 2d 492 (E.D. Pa. 2006)
    aff'd, 242 F. App'x 833 (3d Cir. 2007) ..............................................................4,5,8

*Parker v. Kelly Services, Inc. and Independence Blue Cross,*
    2:15-cv-03337-PBT (E.D. Pa. 2015) ....................................................................4,5

*Parker v. Learn Skills Corp.,*
    530 F. Supp. 2d 661 (D. Del. 2008)........................................................................3

*Parker v. Learn the Skill Corp.,*
    2006 WL 759693, *4 (E.D. Pa. March 23, 2006)..............................................1,4

*Parker v. Learn the Skills Corp.,*
    2004 WL 2384993, at *2 n. 4 (E.D. Pa. Oct. 25, 2004)......................................4

*Parker v. Social Security Administration, et al.,*
    2:15-cv-03453-PBT (E.D. Pa. 2015) ....................................................................4,5

*Parker v. Viacom Int'l, Inc.,*
    605 F. Supp. 2d 659 (E.D. Pa. 2009) ................................................................4,15

*Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.,*
    559 Pa. 56, 739 A.2d 133 (1999) ..........................................................................15

Federal Rule of Civil Procedure 11 ("Rule 11") protects the legal process and litigating parties, in part, by requiring that pleadings and other court filings be: (1) not for improper purposes (i.e. to harass or increase costs of litigation); (2) warranted under the existing law or are not frivolous; and (3) based on facts supported by evidence. Fed. R. Civ. P. 11(b). Sanctions are appropriate for violations of Rule 11(b). As will be described below, Plaintiff Gordon Roy Parker ("Parker") has violated Rule 11, and the Court should impose sanctions.

## I.    Why Plaintiff's Rule 11 Violations Need Early Scrutiny In This Case

Courts often defer ruling on Rule 11 motions for sanctions, but this case presents a compelling reason for a prompt ruling. Parker has, and is likely to continue to file frivolous, vexatious, and expensive motions and discovery requests in this case, and is likely to file new pro se litigation that is frivolous and a nuisance to the parties he sues until he is ordered to stop. Parker is clearly what one judge in this District Court called a serial litigant plaintiff.[1]

In the instant case, Parker wrote and filed a *pro se* Complaint that is vexatious, intentionally pestiferous, and devoid of valid content. This is not surprising though because Plaintiff's Complaint was really filed for the purpose of enjoying an extra-judicial exploitation of his Complaint. Parker has a history of aggrandizing himself online as the person who will use his pro se litigation to force the online Pickup Artist community to recognize him as a force to be reckoned with. *See* blog posts at Exhibit "C" attached to Motion. Plaintiff's goal in filing the Complaints in this case was to fabricate legitimacy for Plaintiff's online persona, and his diatribes, hoping to feed into the public's perception that cases filed in federal court probably

---

[1] *See Parker v. Learn the Skill Corp.*, 2006 WL 759693, *4 (E.D. Pa. March 23, 2006) ("Further, we are persuaded that it would be inappropriate to allow this serial litigant plaintiff 'to conduct a fishing expedition to construct a basis for jurisdiction.'").

have merit. While there may be a proper dual motive when a party files suit, the party may not disregard Rule 11.

Plaintiff's frivolous lawsuit and vexatious Complaints have unreasonably burdened Movants. They have been obliged to spend significant sums in defending Parker's suits that included unsubstantiated and patently absurd allegations that were pled by Parker to avoid a quick dismissal under Rule 12.[2]

## II.    Parker Has Followed in This Case, His *Modus Operandi* of Filing Digressive And Vexatious *Pro Se* Complaints in Violation of the Standards in Rule 11

Lawyers are officers of the Court, bound by the Rules of Professional Responsibility, and subject to liability for malpractice. Professionalism, reputation, and self-preservation therefore restrain lawyers from violating the Rules of Civil Procedure, and especially, Rule 11. By contrast, Plaintiff has filed <u>many</u> cases in the Eastern District of Pennsylvania, acting always *in propria persona,* but he has evinced no similar restraint.  Plaintiff's complaints often share the common characteristic of flaunting the Rules; and by extension, because Plaintiff's deficiencies are habitual, it may be inferred from the violations of the Rules present in his complaints that Plaintiff intentionally ignores the obligations imposed by Rule 11, and the signature of Gordon Roy Parker cannot be accepted as a bona fide Rule 11 certification.[3]

---

[2] Despite his convoluted attempts to connect Movant Sofield with the individual(s) who really stole OTF, Parker failed to demonstrate any facts that prove Movants were involved in a scheme to illegally sell Parker's e-book. Parker's allegation that Movant Sofield goes by the alias of Sally Longer (an individual Parker credits with distributing illegal copies of OTF), is defeated by his own allegations that loki.net@gmail.com, which was used by Sally Longer, is either a) Carter Aljadir, and lives in Los Angeles, California, or b) Defendant Sofield. ¶ 28.

Parker filed these complaints knowing they were meritless, not based on facts supported by the evidence, and would harass Movants and force them to pay exorbitant legal fees.

[3]  Plaintiff's numerous other *pro se* complaints were all dismissed. More than once, the dismissals were on grounds repetitive of the rulings by different judges in Parker's earlier cases. From this record, Plaintiff is shown to be a recidivist who is indifferent to wasting resources of the Court, or imposing needless financial burdens on his targets. Parker's complaints were found to have repeatedly violated Rules that include, *inter alia*, lack of  personal jurisdiction under Rule 12(b)(2); improper venue under Rule 12(b)(3);  failing to allege a valid claim under Rule 12(b)(6); and violating the "short and plain statement" requirement of  Rule 8(a)(2).

Defendants have located many, but not all of the cases that Plaintiff filed *pro se* in this Eastern District, and they include: *Parker v. Social Security Administration* (Chief Judge Petrese B. Tucker)*; Parker v. Kelly Services, Inc. and Independence Blue Cross* (Chief Judge Petrese B. Tucker); *Parker v. Sloan Et Al* (Honorable J. Curtis Joyner); *Parker v. Learn The Skills Corp. Et Al* (Honorable Harvey Bartle, III) (appealed to the 3rd Circuit); *Parker v. Viacom International, Inc. Et Al* (Honorable Eduardo C. Robreno); *Parker v. Learn The Skills Corp. Et Al* (Honorable Sue L. Robinson) (appealed to the 3rd Circuit); *Parker v. Doe*: (Honorable James Mcgirr Kelly); *Parker v.. Yahoo!, Inc. Et A*l (Honorable Mary A. McLaughlin); *Parker v. University Of Penn* (Honorable Anita B. Brody) (appealed to the 3rd Circuit); *Parker v. Comcast High-Speed Internet Et Al* (Honorable Harvey Bartle, III); *Parker v. Trustees Of The University Of Pennsylvania* (Chief Judge Petrese B. Tucker); *Parker v. Google, Inc. Et Al* (Honorable R. Barclay Surrick) (appealed to the 3rd Circuit); and *Parker v. Learn The Skills Corp. Et Al* (Honorable James Mcgirr Kelly). As noted, each case that reached the Answer stage was dismissed, and every dismissal Plaintiff appealed to the Third Circuit was affirmed.

The appellation, "serial litigant plaintiff" is apt, as noted by Judge Bartle in *Parker v. Learn the Skill Corp. supra* at footnote 5, because Plaintiff has an extensive history of filing similarly frivolous lawsuits where the courts have not let his cases survive a motion to dismiss. *Parker v. Viacom Int'l, Inc.*, 605 F. Supp. 2d 659 (E.D. Pa. 2009); *Parker v. Yahoo!*, 2008 WL 4410095 (E.D. Pa. Sept. 25, 2008); *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661 (D. Del. 2008); *Parker v. Learn the Skills Corp.*, 2006 WL 759693 (E.D. Pa. Mar. 23, 2006); *Parker v.*

---

Nonetheless, each of these Eastern District judges has been overly generous and hospitable to Plaintiff, and in light of his *pro se* status, have painstakingly attempted to explain and teach to Plaintiff why each of his Complaints ran afoul of the law. But Plaintiff has consciously and intentionally ignored the cogent advice of the judges of Court (and the similarly generous and gentle rulings of the Third Circuit which likewise has universally ruled against Plaintiff in the many appeals he filed, but provided him clear explanations for the rulings).

*Learn the Skills Corp.*, 2004 WL 2384993, at *2 n. 4 (E.D. Pa. Oct. 25, 2004); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006) *aff'd*, 242 F. App'x 833 (3d Cir. 2007). Recently, Parker filed two new *pro se* case. *See Parker v. Social Security Administration*, *et al.*, 2:15-cv-03453-PBT (E.D. Pa. 2015) and *Parker v. Kelly Services, Inc. and Independence Blue Cross*, 2:15-cv-03337-PBT (E.D. Pa. 2015).

Prior to the case *sub judice*, a fair reading of the cases revealed that Parker apparently believed paying the Clerk the modest filing fee for his complaints was a bargain because each complaint yielded Parker an opportunity to engage in what seems to be a hobby, while the defendants in his cases were obliged to pay attorneys and had to deal with the implications of being sued in federal court  where a haywire proceeding could have monumental consequences; after all, even judges err occasionally.  Now, Parker has been granted *in forma pauperis* status, allowing him to file complaints without suffering any financial repercussions. If the past is prologue, Parker's *in forma paperis* status will be likely to result in many additional, new frivolous lawsuits against defendants that did not deserve to be dragged into court by a "serial" plaintiff who seems to relish using the Eastern District Court as his personal playground.

It is a violation of Rule 11 to launch an unmeritorious lawsuit in federal court to enhance an outside business. Yet, Parker's mass publication of hyperlinks and references to his lawsuits on websites, Twitter accounts, Internet discussion boards and chat rooms, on Facebook, and other places online, draws attention to Parker and he has expressed the hope that his cases will generate customers for his publishing and advice businesses.[4]

---

[4] Plaintiff hopes to charge $100,000 per client in the future. *See* Exhibit "C".  While Parker's pro se case may be good for his pick-up-artist business, his predatory and malicious habit of first suing individuals and tiny companies like Movants, and then disseminating links and references to his suits on websites terrorizes and bullies those innocent victims.

Parker has deployed in this case his familiar *modus operandi,* much of which was evident in the other cases he filed in the Eastern District.  He writes his *pro se* complaints with a stream of consciousness style that indulgently recounts his personal life story instead of pleading causes of action. In the Amended Complaint Parker filed here, the digressive and grandiose elaboration about his other lawsuits, and battles in the world of fellow pickup artists, marks a sharp contrast when juxtaposed next to the Amended Complaint's scant attention to anything related to Defendants; and the Amended Complaint all but relegates Parker 's transactions with Defendants to the status of an unimportant footnote to Parker 's rambling exegesis on his history with people who are totally immaterial and irrelevant to Movants.

This abusive pleading typifies what is present in every complaint Parker has filed. While Parker may have escaped being sanctioned in the other cases he filed, it probably was because the other victims of his litigation viewed him as a Typhoid Mary they were glad to just be rid of, and the generous attitude of federal judges toward unrepresented citizens who occasionally find the need to proceed pro se as the last resort in defending themselves or exercising their rights to use the courts.  However, Parker is nothing like the ordinary unrepresented citizen. To him, the court system provides a barrel of extra-judicial benefits the ordinary citizen would never even dream of as the reason for filing a pro se case. Therefore, like a prankster who disrupt a serious meeting for the fun of it, Parker must be curbed, and he should not escape Rule 11 accountability here.

## III.    Plaintiff Violated Rule 11(b)(1) By Filing His Complaint For Improper Purposes

Rule 11(b)(1) is violated when a Complaint is filed "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Plaintiff has abused his right to sue in federal court by filing an irrelevant screed instead of a proper pleading,

and he filed it to achieve improper purposes. Parker has no *legal* dispute with Movants, as his allegations against Movants are baseless, and his complaints were only filed to harass Movants and increase their costs of litigation. His real goal and purpose in filing the Amended Complaint was to obtain *extra-judicial* benefits. In the Motion, we discussed the various improper purposes, and here we will examine in greater detail only a few of them.

Parker fancies himself an expert "Pickup Artist," and has advertised himself widely online as a *Guru* and "dating-advice expert". ¶86-88). Parker's Amended Complaint was designed to be, and was deployed by Parker as an online, *marketing tool* for his Pickup Artist customers to read—so Parker drafted the Original Complaint, not with a judge in mind as the audience, but rather, his *Pick-Up Artist-wanabe* customers; and that explains why Parker flooded the websites they frequented with news about, and hyperlinks to the Original Complaint. On November 8, 2015, two days before filing his Original Complaint, Parker wrote on a website called sluthate.com:

> "As for payment, I'm going to set up a Patreon account for the masses, while charging $100,000 a year for "elite" one on one ongoing coaching for very wealthy men who will now know who the true ALPHA guru is: ME.
>
> I know some Elliot-Rodger types, or some rivals who are about to be sued, will trash me, but trust me folks, this game is over, and almost seventeen years to the day after I registered this incredible work, I have finally won, at least where truth is concerned. Their money is cut off, and I'm about to claim the millions that should have been mine all along. Oh, and even without this, I was on track to get rich in a few years anyway, in one of three ways I have developed since I was waiting for justice in the PUA community. Think of it as a financial "Streisand effect."
>
> My haters were so vicious that they convinced a court of law in a discrimination case that I was mentally ill and unemployable, which enabled me to retire on disability at 48. I've always been disabled (bipolar), but had previously been able to overcome it by earning enough. Those who tried to starve me have given me the money to fight them in court, and literally destroy the criminals."
>
> *See* November 8, 2015 blog post attached hereto as Exhibit "C": ThePUAMole a/k/a Ray Gordon a/k/a Gordon Roy Parker

In short, Parker filed the Complaint for the improper purpose of having an official-looking pleading that he could widely publicize on the Internet, and Twitter that he believed would convince his readers that he was taming the bosses of the Pickup Artist community against whom Parker harbored a deep grudge.

**IV.    Parker Pleaded No Cognizable Copyright Claim Against Movants**

In a very similar case brought by Parker against Google, this Court held that internet service providers' (like Movant PayLoadz) activities do not constitute direct infringement of copyright law because the Copyright Act "requires conduct by a person who causes in some meaningful way an infringement." *Parker v. Google, Inc*., 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) aff'd, 242 F. App'x 833 (3d Cir. 2007) citing (*Costar Group, Inc. v. LoopNet, Inc*., 373 F.3d 544, 549 (4th Cir. 2004)). This Court held that Google did not violate the Copyright Act because its system catching activities that cached Plaintiff's e-book was protected under the safe harbor system of the Digital Millennium Copyright Act ("DMCA"). *Id.*

In the instant case, Movant PayLoadz has no involvement with the digital files that are placed on its cloud-based servers by sellers who contract to rent storage from PayLoadz.com. Movant PayLoadz does not review, or even know what is being stored on its server until and unless there is a problem that is called to its attention – such as when Parker contacted Movant Sofield by Twitter and claimed the *Oleynyk's Anthology* contained his copyrighted e-book. *See* Sofield's Affidavit at Exhibit "A". Immediately upon receiving that information from Parker, Sofield acted and removed the *Oleynyk's Anthology* from Movant PayLoadz' server, and that ended any relationship Movant PayLoadz had with *Oleynyk's Anthology* or Parker. Because Movant PayLoadz does nothing with the content of the files uploaded to its server, it, and its

owner, Movant Sofield, are immune from liability for copyright infringement. This is because,

temporarily hosting copyrighted material is an activity protected by DMCA § 512 which states:

> (c) Information Residing on Systems or Networks at Direction of Users. —
>
>> (1) In general—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—
>>
>>> (A)
>>>
>>>> (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>>>> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>>>> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>>>
>>> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
>>>
>>> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

As is evident from the allegations in the Amended Complaint, Vladymyr Oleynyk

entered into an agreement to upload files on the PayLoadz server. The uploading was done by

Oleynyk *via* an automated process, and Movant PayLoadz had no information about what was

contained in the files that were uploaded. Moreover, in this case, the *Oleynyk's Anthology* was a

"zipped" file meaning it was compressed and unreadable unless, and until it was 'unzipped".

Therefore, the role played by Movant PayLoadz fit the definitions in DMCA § 512 (c)(1)(A)(i)

and (ii). Similarly, when Movant Sofield immediately removed *Oleynyk's Anthology* from the

PayLoadz server upon receipt of Parker's Twitter message informing Movant Sofield of Parker's

claim that he believed his copyright was infringed, Movants satisfied subsection (iii). Moreover,

because Movant PayLoadz sold storage space and facilitated downloads, it could not control the content. Since it charged a flat monthly fee and a set download charge regardless of the content (as evinced by *www.payloadz.com*) it satisfied also the test of not receiving a financial benefit directly attributable to the infringing activity. Therefore, subsection (B) applies to Movant PayLoadz' role. Finally, as noted, the immediate removal of *Oleynyk's Anthology* after Parker's Twitter message shows that Movant PayLoadz likewise satisfies subsection (C) of the DMCA, quoted above ("…upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access.")  Consequently, Movants are entitled to the immunity from suit provided by law.

The DMCA gives Movants additional protections from Parker's suit because "service providers" have <u>immunity</u> from suits like the Amended Complaint. DMCA § 512(k) defines service providers as "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received and/or a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A)."  Movant PayLoadz is clearly a "service provider," as defined above, and enjoys the protections from suit the law offers service providers. Further, Defendants are registered as designated agents with the U.S. Copyright Office, granting them safe harbor as provided by §512(a). *See* Exhibit "B".

On the other hand, even if we assume *arguendo* that Movants were not protected by the DMCA, Parker still has not alleged in the Amended Complaint sufficient matter to charge Movants with having infringed on his copyright. "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of

original elements of the plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc*., 421 F.3d 199, 203 (3d Cir. 2005) citing (*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc*., 307 F.3d 197, 206 (3d Cir.2002)). An exhaustive reading of the Amended Complaint will not uncover any allegations that Movants did anything to infringe Parker's copyright. "One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise the right to stop or limit it. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 (2005) (citations omitted). Parker has simply not alleged any actions on the part of Movants that support an inference that Movants intentionally infringed on Plaintiff's copyrighted work. Indeed, until Parker sent his Twitter message to Sofield, Movants did not know that Parker's e-book existed or that it was bundled into a zip file that Vladymyr Oleynyk had included in files he stored on PayLoadz Inc.'s cloud based server.

Parker knows that Movants are not liable for copyright infringement, yet he still maliciously dragged them into court. Plaintiff's copyright infringement claim is therefore evidence of his *willful* violation of Rule 11(b)(2).

## V.    Parker Pleaded No Cognizable Unfair Competition Claim Against Movants

Parker alleged a false unfair competition claim. Parker drafted a story he knew was fictional since Parker knew Movants had no affiliation with the other parties he described:

> Defendant PUA Media Library's use of Foxes to promote the fictitious "PUA author" that was "C. Kellogg." Specifically, Foxes was passed off as if written by "Kellogg," when in fact Plaintiff had written, published, and registered it in 1998, well aware of the need to defend his work against internet piracy.

> and

> The advertising on pualib.com of the works mentioned in the previous two paragraphs constitutes a false-advertising violation of the unfair-competition provision of the

10

Lanham Act, 15 USC §1125(a)(l). All Defendants are liable for this count directly, including but not limited, or for aiding and abetting.

(Compl. at ¶¶80, 84.)

Parker intended to deceive the Court by pretending Movants were, in some unidentified way, connected to the other Defendants sufficiently to make them liable.

## VI.    Parker Pleaded No Cognizable Breach Of Contract Claim Against Movants

In Count Four of the Complaint, Parker's allegation that Movants are vicariously liable for other Defendants' breach of contract (Amended Compl. at ¶ 93) is contrary to the law as there is no concept in Pennsylvania law that would allow Parker to bring a breach of contract claim against any person or entity who is not a party to the alleged contract.  As Defendants were not contractually obligated to do anything, as they had never formed an agreement with Plaintiff in the past, they cannot be held liable for breach of contract.  *See Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 62–63, 739 A.2d 133, 136 (1999).

Additionally, there is no rule of law in this county that allows Parker to sue third parties vicariously for one Defendant's breach of contract (if there was a contract). Before October 26, 2015, Defendants had never spoken to, let alone formed a contract with, Plaintiff.

## VII.    Parker Pleaded No Other Cognizable Claim Against Movants

Without any legal theory behind it, and without alleging any pertinent facts, the Amended Complaint nakedly asserts that Movants are liable under various other theories. These were discussed in the pending Motion to Dismiss and will not be rehashed here.

## VIII.    CONCLUSION

Parker's pleadings are unhinged and he even insulted this Court when he wrote, "A decade ago, this Court's smug dismissal of Plaintiff's **Seduction Mafia** and **Seduction Cartel** lawsuits have put it 'on the wrong side of history,' on part with <u>Plessy v. Ferguson</u> […]". (2015

11

Compl. at ¶ 45). Without the boundaries observed in pleading by bona fide members of the bar,

Parker has no qualms about spewing false allegations against innocent defendants to forestall the

dismissal of his Complaint.  Parker's violations of Rule 11 were many, and serious.  Defendants

respectfully request that this Court sanction Parker pursuant to Rule 11

<div style="margin-left: 50%;">

Respectfully submitted,

 /s/ Gary Green                
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)/
(215) 574-0310 (fax)
**Attorneys for Defendants Shannon
 Sofield and PayLoadz, Inc.**

</div>

Dated: January 27, 2017

12

## RULE 11(c)(2) CERTIFICATION

Pursuant to the safe harbor provisions of Fed. R. Civ. P. 11(c), the instant motion was served on Plaintiff on January 6, 2017 *See* attached as Exhibit "F". Plaintiff has failed, within 21 days, to withdraw the challenged allegations and claims, and has failed to dismiss the Amended Complaint against Defendants.

Respectfully submitted,

_/s/ Gary Green_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)

Dated: January 27, 2017        **Attorneys for Defendants Shannon Sofield and PayLoadz, Inc.**

# EXHIBIT A

**THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

_____        :
                                           :
**GORDON ROY PARKER**                      :
a/k/a "Ray Gordon"                         :
                Plaintiff        :        **CIVIL ACTION NO. 16-4786-NIQA**
                                           :
      **v.**                              :
                                           :
**PAYPAL INC., et al.**                    :
                Defendants       :
_____:

## DECLARATION OF SHANNON SOFIELD

I, Shannon Sofield, hereby declare and say:

      1.      I am a Defendant in the above case along with PayLoadz, Inc. This Declaration is submitted in support of the Rule 11 Motion of Defendants Sofield and PayLoadz, Inc.

      2.      I am a resident of Newtown Square, Pennsylvania, and am currently the owner and sole full-time employee of PayLoadz, Inc.

      3.      Defendant PayLoadz, Inc. ("Payloadz") operates *payloadz.com,* and related websites where for a storage fee, sellers of digital files (e.g., music, videos, eBooks, treatises, artwork, games, photographs, etc.) can upload their digital files on to a "cloud" storage site where they can be easily downloaded by customers of the sellers.[1] The *payloadz.com* system allows the sellers to advertise the digital products they are offering for sale on a website of their choice with the ability to link a customer's purchase to the PayLoadz download site and to PayPal for payment of the purchase price.  PayLoadz has no control over, and does not even know, the content of the compressed files it is paid to store on the cloud.

_____

[1] PayLoadz rents bulk space from Amazon which sells cloud storage on its massive banks of computers to other businesses. Amazon has been named as a Defendant here also.

4.    Prior to October 26, 2015 I had never spoken to, met with, or conducted business with Plaintiff Gordon Roy Parker ("Plaintiff").

5.    My first interaction with Plaintiff occurred on October 26, 2015 when Plaintiff messaged me on my personal Twitter account accusing me and PayLoadz of criminal copyright infringement (which has since been deleted by Plaintiff). I then received a voicemail message from Plaintiff.

6.    In the voicemail message, Plaintiff informed me that PayLoadz was hosting an illegally pirated copy of his e-book. Plaintiff also reiterated his accusation of criminal copyright infringement and told me to preserve all documents.

7.    I explained to Plaintiff on Twitter that pursuant to PayLoadz' Copyright Policy, Plaintiff could submit a Takedown Notice to remove the content from the website. However, Plaintiff replied that this was beyond a typical DMCA Request. I then gave Plaintiff the PayLoadz support email for more direct help.

8.    Although Plaintiff failed to submit a Takedown Notice, I personally searched for the document mentioned by Plaintiff and removed it from PayLoadz' website, as well as banning the seller from making future sales.

9.    I did not hear from Plaintiff again until November 10, 2015 when I was served with Plaintiff's First Complaint.

10.    On December 10, 2015, Plaintiff dismissed the Complaint without prejudice.

11.    On October 10, 2016 I was served with Plaintiff's Second Complaint, which re-alleges many of the same facts.

12.    On November 9, 2016, I was served with Plaintiff's Amended Complaint, which again re-alleged many of the same facts.

13.    I have never heard of the Pickup Artist community, let alone joined in a conspiracy as alleged in the Complaint.

14.    Plaintiff's allegations in his Complaint are patently false:

a.    According to Plaintiff, individuals using the names Vladymyr Oleynyk and Sally Longer were connected to the loki.net@gmail.com account that sold Plaintiff's copyrighted e-book. (Compl. at ¶20).

b.    According to Plaintiff, Sally Longer is an alias I use, because he discovered an individual by the name of Sally Longer on Facebook who originally lived in Mount Holly, New Jersey, which is approximately 45 minutes from Rider College, where I went to college. (Compl. at ¶ 21).

c.    I have never used either Sally Longer or Vladymyr Oleynek as an alias, and never heard of them prior to reading the First and Second Complaints. Further, I have never had the loki.net@gmail.com email address.

d.    I am not the sole owner and operator of pualib.com. (Compl. at ¶32(a)). I had never heard of pualib.com prior to reading the First and Second Complaints.

e.    Plaintiff further alleges that because I am Sally Longer, and Sally Longer is the name used by the owner of pualib.com, I am also the owner of pualib.com. (Compl. at ¶29).

f.    I am not the owner of pualib.com, nor had I ever heard of it prior to Plaintiff's filing the first Complaint.

g.    PayLoadz' income comes from over a 1 million products, with around a hundred thousand downloads per month. The compilation containing Plaintiff's e-book was only one of the one million products for sale at the time. After I received notice from Plaintiff about the alleged copyrighted material being sold on PayLoadz, I deleted the seller's account and content.

3

     h.  As can be seen from Plaintiff's Amended Complaint, the alleged copyrighted

material was then sold by a different third-party cloud-based hosting site called Click2Sell, with

which I have no affiliation. (Compl. at ¶22).

     15.     On November 21, 2016, Plaintiff filed a Motion to Conduct Expedited Discovery,

which contained five Interrogatory questions, and my answers to each are set forth below:

1. **State, your full legal name and address. If a corporation or other business, state the full, legal name of the business, the state or country in which it is incorporated, its business entity number or equivalent, and the address of its headquarters.**

   **ANSWER**:
   Shannon Sofield
   Three Richards Road
   Newtown Square, PA 19073

   PayLoadz, Inc.
   Business Entity Number: 4095395
   Incorporated in Delaware
   130 N Second St
   Unit 4B5
   Philadelphia PA 19106

2. **Describe, in detail, any business or other dealings you have had with the website <u>pualib.com</u>, since January 1, 2002, and its officers, agents, employees, or other representatives, including the name(s) of these individual(s).**

   **ANSWER**: Neither I nor PayLoadz has had any business dealings with pualib.com since January 1, 2002 (or ever).

3. **Describe, in detail, your knowledge of the identity of the individual(s) who use the internet e-mail addresses Loki.net@gmail.com and Luckypua777@gmail.com. This includes, but is not limited to a) the nature of the relationship, b) its length, c) the amount of money which changed hands, accounted for annually, and d) which product(s) and services were involved.**

   **ANSWER**: Neither I nor PayLoadz know the identity of any individual nor individuals who use the email addresses loki.net@gmail.com and Luckypua777@gmail.com.

   The listed Business Name on the Luckypua777@gmail.com (Username) account was "Resell Rights".

The user Luckypua777@gmail.com signed up for an account on 04-16-2010. Their account was closed once we were notified on their potential infringement in 10-26-2015. The seller signed up for the generic digital good ecommerce services provided at the PayLoadz.com website. Their first sale on our service was on 01-24-2014. In 2014, they paid PayLoadz service fees of $143.50. In 2015, they paid PayLoadz service fees of $256.52. All of this was done by an automated process. I did not review or notice these transactions until I was notified by Plaintiff about his claim.

**4. Describe, in detail, your relationship with a man who calls himself "Sally Longer," who claims to run pualib.com, and whose name appeared in PayPal as the owner of the e-mail account Loki.net@gmail.com, from December 2015 through at least April, 2016. Further describe how this man proved his identify to you for business purposes.**

ANSWER: Neither I nor PayLoadz have had any relationship with an individual named Sally Longer. There was no business between Defendants and Sally Longer. In fact, Defendants have no idea who Sally Longer might be, or if there is a Sally Longer. Other than in allegations made by Plaintiff, the name Sally Longer was not ever known by Defendants.

**5. Describe, in detail, your relationship with a man who calls himself "Vladymyr Olynyk," who claims to run <u>pualib.com</u> and whose name appeared in PayPal as the owner of the e-mail account <u>Loki.net@gmail.com</u>, until November, 2015. Further describe how this man proved his identity to you for business purposes.**

ANSWER: Neither I nor PayLoadz have had any relationship with an individual named Vladymyr Olynyk. No personal information or details of any kind whatsoever is needed to sign up for and to use a PayLoadz account (other than a working email address). There is no need or effort made for any user to "prove his identity for business purposes, and the "man" did not prove his identiy to Defendants. The only identifying information provided for this account was the account email username of Luckypua777@gmail.com, the PayPal Email Address of loki.net@gmail.com, and the "Business Name" profile field set to "Resell Rights". All of the information supplied to PayLoadz is automated, with no human contact unless it is initiated specially. None was initiated by anyone with regard to Vladymyr Olynyk. Therefore, until the Complaints were filed, I had no need to research the information, and had zero knowledge of the nature of the use made by Vladymyr Olynyk, what he listed, or even what he paid (since payments are not reported in a way that would cause me to determine what the payment was for.

16.     Plaintiff's refusal to dismiss me and PayLoadz from his lawsuit is stretching my

already limited financial resources. PayLoadz is experiencing steadily decreasing revenues and

may only be in existence for another 10-14 months. Additionally, I am financially supporting my parents, who were just served with a foreclosure notice.

17.    The wild and completely false allegations about me and my company are distressing. Plaintiff posted information about this case on the Internet, and exposed me to having my good name ruined. Until Plaintiff sued me, I never knew there was such a thing as people who call themselves "pick-up artists" or that there were publications, websites and apparently a society of such people. I consider what I have learned about pick-up artists to be disgusting, misogynistic, and exploitive of insecure men who lack social skills and are desperately lonely or are sexual predator wannabes. Plaintiff has slimed my good name by stating the lie that I had or would even have anything to do with a website that caters to the pick-up artist community.

18.    Because of the defamatory and serious lies Plaintiff has published about me in his Complaints, I have no choice but to defend myself and my company vigorously, and to seek the earliest termination of this malicious lawsuit. While this case costs Plaintiff nothing, and even if I eventually prevailed in a Dragonetti action, I would have no hope of any recovery of even the substantial attorney fees. Moreover, because Plaintiff persists in filing Complaints (four so far) and makes changes in each of them (but has never stated truthful allegations about me) Plaintiff has caused me to spend large sums and to become a debtor just to defend myself.

19.    The fact that Plaintiff files pro se complaints has prejudiced me because Plaintiff has neither the ethical restraints nor penalties lawyers would have for filing the kind of baseless things Plaintiff filed, and despite the long record of Plaintiff filing ungrounded, nuisance suits, the judges let him get away with abusing the people and companies he sues without any accountability for the harm the Plaintiff causes.

6

20.    In my case, I will paying off the debt I incurred to defend myself for many years in the future as my business is a small, one person (me) business that has low profits, and a declining future due to competition from much bigger companies that recently entered the same field of cloud based storage and services on the Internet. By contrast, Plaintiff gets to toy with me without fear of any consequences since he filed a petition, and does not even have to pay costs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ____January 3, 2017____                    _____
                                                        Shannon Sofield

# EXHIBIT B

# Amended Interim Designation of Agent to Receive Notification of Claimed Infringement

**Full Legal Name of Service Provider**: PayLoadz, Inc

**Alternative Name(s) of Service Provider (including all names under which the service provider is doing business)**: PayLoadz.com,   PayLoadz.com, Inc,   PayLoadz

Address of Service Provider: 3 Richards Rdg, Newtown Square, PA 19073

**Name of Agent Designated to Receive Notification of Claimed Infringement**: Shannon Sofield

**Full Address of Designated Agent to which Notification Should be Sent** (a P.O. Box or similar designation is not acceptable except where it is the only address that can be used in the geographic location):
Shannon Sofield, 3 Richards Rdg, Newtown Square, PA 19073

**Telephone Number of Designated Agent**: 646-201-4019

**Facsimile Number of Designated Agent**: 866-727-8544

**Email Address of Designated Agent**: support@payloadz.com

Identify the Interim Designation to be Amended, by Service Provider Name and Filing Date, so that it may be Readily Located in the Directory Maintained by the Copyright Office: PayLoadz.com 4-21-2009

[redacted] Designating Service Provider:
Date: 11-1-2015

Typed or Printed Name and Title: Shannon Sofield, CEO

**Scanned**

**DEC 1 6 2015**

Note: This Amended Interim Designation Must be Accompanied by a Filing Fee* Made Payable to the Register of Copyrights.
*Note: Current and adjusted fees are available on the Copyright website at www.copyright.gov/docs/fees.html

Mail the form to:
**U.S. Copyright Office, Designated Agents**
**P.O. Box 71537**
**Washington, DC 20024-1537**

**Received**

**NOV 0 9 2015**

Copyright Office

# EXHIBIT C



[LoserFanboy](#)

       Posts: 1374
       Joined: Thu Jan 29, 2015 10:12 pm

[Top](#)

---

## Re: Tribute/history of the most underrated pua of all time

▢by [Icecutter101](#) » Mon Nov 09, 2015 12:52 am

Gunwhich

/thread



[Icecutter101](#)

       Posts: 1891
       Joined: Wed Mar 18, 2015 5:06 pm

[Top](#)

---

## Re: Tribute/history of the most underrated pua of all time

▢by [ThePUAMole](#) » Mon Nov 09, 2015 5:16 am

Ah, I see I need to rebut that federal crime someone committed by linking to that website.

Ask Jacqueline Faye Goldhagen, a/k/a "Jacqui Holland," if she's glad she linked to it, since that simple act has "depleted her life savings" on attorney fees, according to her pleadings, and I'm about to refile the case from square one after voluntarily pulling it (no penalty to do it once):

[http://www.toosmarttofail.com/jacqpot.html](http://www.toosmarttofail.com/jacqpot.html)

On Tuesday, I'll be suing the "PUA cartel" for similar defamation, but this is done in furtherance of a RICO conspiracy.

Obviously this site doesn't mind giving up the names of the people who own and run it (they will be

Defendants now), and one very simple subpoena gets me the name of the poster as well. This isn't difficult, since I'm already filing the suit. It's just a matter of adding one defendant.

The thing about conspiracy law is this: even ONE act in furtherance of the conspiracy makes the actor responsible for the ENTIRE conspiracy, which in this case includes:

Criminal copyright infringement (five years in Club Fed)
Money Laundering (twenty years in club fed)

And a host of other crimes that will be outlined in the complaint.

I do admire anyone who is willing to risk literally everything they own (judgments like this can't be bankrupted), and their freedom, just to spit out one link in one post on a message board.

BTW, that site made it so no one would hire me, and combined with its imputation of mental illness, is the primary reason I am now *retired* on Social Security disability, which, with other benefits, gives me the same amount of value as if I were working a fulltime job paying $26,000 a year, except I don't have to work at all.

Now considering that this site is the heir-apparent to PUAHate, and the feds would LOVE a reason to throw any and all PUAs into prison, you just gave them that reason, if they decide they wish to prosecute you and this website for aiding and abetting a RICO conspiracy that has ties to the Russian Mafia btw (the money-laundering goes through Russia).

I've already schooled the feds on how there are thousands of "ticking time bombs" on sites like this, so don't be surprised if they won't wait for the next Elliot Rodger to do what they can, legally, to put a stop to any PUA/hater they can.

Once your names are revealed by subpoena, YOUR internet history and Google results will include your link to a site that contains lies put there by child sex traffickers, on a site which claims the "Jews did 9/11," and which is a huge red flag for anyone willing to link to that pack of lies.

You guys are like drunks in a bar who just *HAVE* to try the bouncer, but all you do is give him the legal protection of self-defense to go along with his superior strength.

You had your moment, and, not long from now, I will have mine. Hope you've prepared for the possibility that you miscalculated the legal consequences. Looks like I'll be seeing you in court.

ThePUAMole

> Posts: 110
> Joined: Sun Nov 01, 2015 6:23 am

Top

---

This post by ThePUAMole was deleted by ThePUAMole on Mon Nov 09, 2015 5:23 am.
Top

---

## Re: Tribute/history of the most underrated pua of all time

No it doesn't. Do you think any judge will bother to read that shit: "In 2009 Puahate.com was created..."

LOLOLOL



Anal prolapse

Posts: 5194
Joined: Sat Apr 18, 2015 4:34 pm

Top

## Re: Parker sues Paypal, PUAs, Payloads, Plimus et al.

by ThePUAMole » Thu Nov 12, 2015 10:15 pm

> Anal prolapse wrote:
>> ThePUAMole wrote:
>> The complaint speaks for itself:
>>
>> http://www.toosmarttofail.com/paypal/complaint.pdf
>
> No it doesn't. Do you think any judge will bother to read that shit: "In 2009 Puahate.com was created..."
>
> LOLOLOL


Did you play "Spaz" in Meatballs?

I assume you have legal qualifiecations to judge a complex civil litigation complaint. I'm a high-level paralegal who has worked for attorneys in three states, multiple areas of practice, for multiple firms.

ThePUAMole

Posts: 110
Joined: Sun Nov 01, 2015 6:23 am

Top

11/19/2015    SH/QA - Outfoxing The Foxes! (landmark PUA book) / Bash the Scene

Case 2:16-cv-04786-NSR Document 50 Filed 04/27/17 Page 45 of 130

- hall of shimansky (115)
- This happened (111)
- indians= worst facial bones and skin on the planet (75)
- not a gay thread at all (66)
- Tyger rates (61)
- bbc takeover (60)
- still superior to niggers (48)
- social delusion (46)
- gymcel detected (44)
- the FBI is monitoring this thread (39)
- stormfront.sluthate.com (27)
- AUTISM SPEAKS (27)
- More tales from the basement (24)
- Pleo's Aspie Diary (24)
- Jewish (22)
- dr. mike mew (22)
- Just kill yourself bro (22)
- AUTISM OVERLOAD (19)

- Chat
- Health

Board index ‹ Main ‹ Bash the Scene ‹ "Steal" Outfoxing The Foxes! (landmark PUA book)

# "Steal" Outfoxing The Foxes! (landmark PUA book)

Post a reply

[Search this topic…]  [Search]

31 posts • Page 1 of 2 • 1, 2

## "Steal" Outfoxing The Foxes! (landmark PUA book)

by **ThePUAMole** » Sun Nov 08, 2015 6:34 pm

Yes, this is Ray Gordon.

Yes, I'm about to sue half of the "seduction cartel" in two days, and bring them all down.

Two weeks ago, I purchased a copy of "Outfoxing The Foxes" from someone who was not authorized to be selling it. This led to a digital paper trail that unraveled the entire "seduction cartel" that's been running the "community" in one form or another since 1998, long before almost all of you showed up. You don't realize that the information you've been receiving has been carefully controlled by a very small group of people, who have been relying on some very illegal "marketing" tactics (mass piracy is one of them). Their crimes run deep, their money has already been cut off, and the feds are definitely hot on their trail now.

Just about all the crap you've ever read about me was put there for the purpose of destroying my career as a PUA teacher. I was forced to stop producing new content in 2001 because anytime I did, they would plagiarize it and profit from it. Instead, I waited until they exhausted the existing theory, and became

desperate for new ideas, or had to rely on their own "genius" instead of mine. Please remember I learned from my cousin, who FUCKED DIANE LANE. When you're 14 and you see that, no matter how good you are, you feel inferior like I did, always working to improve. By 18 I was an mPUA, and by 28 I was so off the charts none of you would believe it if I told you.

Not only did this "cartel" STEAL my work, they changed the title to "Foxhunting: The Art of Dating And Seduction," changed the author's name to a slight misspelling of my birth name, and put a hideous cover on my work, which, if you read it, you will see is the basic blueprint for all the PUA advice which would follow, particularly after "Game Over" (mainstreaming), since Foxhunting was designed to survive that card-counting styled Armageddon. By then, of course, a lot of people had their economics tied to sustaining the cartel, but with the "haters" rising, the revenue started drying up, which is when alternative revenue streams (more expensive teaching and training) began to fill the gap.

This is CRIMINAL copyright infringement, with money moving through Russia. Fortunately for me, they moved their money through a PHILADELPHIA-based company, meaning I have jurisdiction over all of them, and I have smoking-gun evidence as well. Where it really gets interesting is the payment processors, without whom this wouldn't be possible. There's a good chance I'm going to be able to hold them liable for infringement as well, and if not that, at least claim the processing fees on about $150 million in transactions, or about $4.5 million alone, from very deep-pocketed companies who profited from illegal transactions (to get that I won't have to prove intent, as it's like possessing counterfeit money).

A number of top companies will be named, but a few who should be, won't, simply for judicial economy. My estimate is that my book has been pirated tens of thousands of times for sale, and potentially millions of times for free, with statutory damages at $150,000 per copy, for a total of....a fucking lot of money. With governments all over, including here, wanting to "take down PUA," I am gift-wrapping them the means to put many major PUA gurus in prison for a very long time. With the RIAA and MPAA wanting any piracy stopped, the courts are not likely to be very sympathetic.

Even if I don't win in court, though I almost certainly will, the world will soon know what I have known all along: that my work was SO GOOD that it, and me, had to be silenced through defamation, piracy, and plagiarism. As time wore on, and Foxhunting was all that worked, they continued to steal it. Look in the book for yourselves, and remember it was registered on October 29, 1998, specifically because I knew that one day I would have to prove authorship. I never dreamed anyone would be so stupid as to give me such an easy win in court.

Since Foxes has been pirated and plagiarized so much, I have written a second edition: "Foxhunting II: MGTOW is the new PUA," in which a screenshot of each page of Foxes appears on each page of II, shrunk slightly to provide room for additional commentary at the bottom of each page, and extended commentary after each chapter. I think you'll like the format for the second edition.

As for payment, I'm going to set up a Patreon account for the masses, while charging $100,000 a year for "elite" one-on-one ongoing coaching for very wealthy men who will now know who the true ALPHA guru is: ME.

I know some Elliot-Rodger types, or some rivals who are about to be sued, will trash me, but trust me folks, this game is over, and almost seventeen years to the day after I registered this incredible work, I have finally won, at least where truth is concerned. Their money is cut off, and I'm about to claim the millions that should have been mine all along. Oh, and even without this, I was on track to get rich in a few years anyway, in one of three ways I have developed since I was waiting for justice in the PUA

community. Think of it as a financial "Streisand effect."

My haters were so vicious that they convinced a court of law in a discrimination case that I was mentally ill and unemployable, which enabled me to retire on disability at 48. I've always been disabled (bipolar), but had previously been able to overcome it by earning enough. Those who tried to starve me have given me the money to fight them in court, and literally destroy the criminals.

Here's a link to Foxes II: Please "steal" your copy only from my website, and enjoy it. Don't worry about me, because I'll be more than fine, as I always have been, since I've never been out to con anyone:

http://www.toosmarttofail.com

Thanks
Gordon "Ray" Parker,
a/k/a Ray Gordon

ThePUAMole

> Posts: 110
> Joined: Sun Nov 01, 2015 6:23 am

Top

---

## Re: "Steal" Outfoxing The Foxes! (landmark PUA book)

by chimai » Sun Nov 08, 2015 6:46 pm

points and laughs

chimai

> Posts: 678
> Joined: Sat Oct 17, 2015 4:31 pm

Top

---

## Re: "Steal" Outfoxing The Foxes! (landmark PUA book)

by ThePUAMole » Sun Nov 08, 2015 6:46 pm

Oh and for those who have always thought I was bullshitting about my "PUACousin" Rick (he's gone public now so I don't feel the need to hide him anymore), here's a picture he posted to facebook:

https://www.facebook.com/photo.php?fbid ... =3&theater

From the left that is:

Christopher Lambert
Laurie Sanderson

# EXHIBIT D

Hi. I'm Ray Gordon. I'm the author of numerous books on many topics of interest to men, but the relevant books here are on the ones I wrote on pick-up artistry.

Particularly my first book, *Out Foxing the Foxes, How to Seduce the Woman of Your Dreams*. I'm taking a moment from my busy schedule to inform the public that this book has been pirated. Or at least I am alleging that it has been pirated, in a lawsuit that I am filing against Paypal, Amazon and a number of other companies and individuals who were involved in the alleged piracy of my work.

Now the details of this are in the description. You will find more of discussion in the comments, but why am I suing Amazon and Paypal? Simple. I am suing Amazon and Paypal because Amazon stored the copies of the pirated works on its cloud server even after they were notified that these books existed, and Paypal, not once, but twice, processed the transactions for the collection of these pirated works on DVD. All that evidence is also put in the lawsuit.

Now, in a country where my presidential candidates are telling me they are going to find jobs for me, I don't need a job, I just need people to stop stealing my work.

And in a country where I am told that copyright infringement is a horrible crime, two of the largest internet companies have ignored my pleas to stop doing this to my work. And even if they stop doing it to my work, they should stop doing it to work of my competition [unintelligible] themselves in the process.

UM, Amazon of course has been meet recently with numerous articles and other revelations about counterfeit goods being sold on the site and people say that Amazon is as much a victim as anyone else of these foreign fraudsters or what not, or at least they claim immunity under Section 230. Which as we know does not apply to the MCA or copyright law in general. In fact, the MCA does not even apply when it is commercial piracy, which happens to also by the way be a felony.

Now the individual who pirated my work of course is not Amazon or Paypal but had been using their services. Finding that individual, well, should be a matter of paperwork and as more information comes to light I will reveal that, but for now I just want to make the public aware that I am suing Amazon and Paypal over this piracy and anyone interested in these issues or these companies may want to take a look at the link below, which will be a link to the Complaint once I get it back.

So, um, the pick-up artist community gets a lot of flack and people don't realize that what they are attacking is not really the source of its money. They see them advertised on YouTube, they see them list books for sale on Kindle and they don't realize that's mostly for show for most of these guys. The real money they make is on live instruction and on piracy.

This little website that no one has ever heard of is where the person who joins the community which doesn't really exist except in some marketer's brain. When that person comes to the internet looking for information on how to get woman and these famous pick-up artist, he will type it in to a search engine, how to get laid, PUA, or whatever it is and this website will be among the top results returned. When he gets there, he will now be offered the 1000 free books

that he can download individually or purchase as a group for $20 or whatever I think $40 is what they are selling it for now.

So of course, very quietly, these virgin customers, the most valuable of all of the internet, because it is not the same people going from site to site. These customers who don't really interact with any community and just want advice, very quietly, have been going to this site and either getting free copies of my work and other works that are similar in this genre or they buy them and enable someone else to profit while they are denying me my profits.

And then when they do this, they credit people who aren't even me for ideas that they got from me, which has led to more than one pick-up artist explaining to me that I don't know what I am doing and recommending that I use my own methods and sometimes even read my own books. This is another reason I had to file this suit.

Those who don't like pick-up artistry, fine, don't read the books, but if you are downloading them, obviously, you do like them and if you do like them then you should pay for them. At the very least, websites should not host them, Paypal should not process the money for these transactions and Amazon certainly should not store copies of these books on their server when I am trying to sell my works through Kindle, which I no longer do. This is why I am no longer on Kindle. But I see other celebrities and publishers talk about Amazon is such a great place to show their shows or sell their books, I have to wonder, are they saying "I am fine with piracy", because apparently, they are. Would they mind if others pirated their work? I'm sure they would complain even louder than I am and their lawyers would send letters.

So anyway, I'm just one author but I am one author with rights and I am a former paralegal and I know enough about how to draft a lawsuit and file it to defend my rights so we will see how this turns out.

So if you are interested in any of the elements of this lawsuit, either the companies involved, the topic or just lawsuits in general, grab a look and well, you know follow it and see how it goes.

I would like to think that I will get justice, but I have already reported this to the postal inspector, to several levels of federal law enforcement, local law enforcement and guess what, this website is still up. I kind of feel like someone who has gone to a cop and said, "Hey someone is robbing a bank", and the policeman goes, "So". You begin to wonder if maybe the police are the problem. You know. You would think that a mass piracy website would not be enabled and not be allowed to stay up, particularly after I put everybody involved on notice that that was the case.

So, take a look, stay tuned this should get very, very interesting. That's all for now.

# EXHIBIT E



### IN THE UNITED STATES COURT
### FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br>4247 Locust Street, #119<br>Philadelphia, PA 19104<br>(267) 298-1257<br>SnodgrassPublish@aol.com,<br>            Plaintiff,<br><br>v.<br><br>**SOCIAL SECURITY ADMINISTRATION,** 43rd<br>and Chestnut, Philadelphia, PA 19104, and<br><br>**PENSION BENEFIT GUARANTY**<br>**CORPORATION,** 2500 Grubb Road, #21,<br>Wilmington, DE 19810,<br><br>            Defendants | **Case No:**    **15**    **3453**<br><br>**Complaint To "End Social Security As We**<br>**Know It." (constitutional challenge Rule 5.1)** |

### COMPLAINT FOR VIOLATIONS OF THE REHABILITATION ACT OF 1973

Plaintiff **Gordon Roy Parker** sets forth the following:

### THE CAST

1.  Plaintiff is Gordon Roy Parker.  He has been on SSDI since 2014, having been awarded his

back benefits in April, 2015.  His monthly benefit is $867.00 a month, from which his "mandatory"

participation in Medicare will siphon approximately $138.00 a month, leaving him with $729.00 a month

on which to survive.

2.  Defendants are the Social Security Administration ("SSA") and the Pension Benefit Guaranty

Corporation ("PGBC").

### THE PLOT

3.  This is a federal lawsuit, an *as-applied* challenge to the benefits-calculation formula for

retirees, those on SSI, and those receiving pensions insured by PGBC with Plaintiff's hard-earned tax

*dollar* [sic] (approximately his yearly federal tax liability these days).

1

4. According to Defendant SSA's own *Social Security History* website, President Roosevelt made clear that benefits had to be *earned!* Check it out:



how the courts would see this new function of government, the framers of the AAA deliberately placed the tax provisions and the subsidy provisions in separate titles of the act, so they could argue that they were not necessarily connected to each other; that is, so they could argue that the purpose of the tax was not to control production but was merely to raise revenue. This was the same strategy adopted by the framers of the Social Security Act, as can be seen in the separate Titles II and VIII of the original Social Security Act.

The old-age insurance system introduced in the Social Security Act was designed, at a public policy level, to be a contributory social insurance program in which contributions were made by workers to what was called the "old age reserve account," with the clear idea that this account would then be the source of monies to fund the workers' retirement. Actuarial studies were done to determine what the contribution rate would need to be in order to have sufficient reserves in the account to pay anticipated benefits. In the popular understanding of the program, the contributions established an "earned right" to the eventual benefits. President Roosevelt strenuously objected to any attempt to introduce general revenue funding into the program. His famous quote on the importance of the payroll taxes was: "*We put those payroll contributions there so as to give the contributors a legal, moral, and political right to collect their pensions and unemployment benefits. With those taxes in there, no damn politician can ever scrap my social security program.*" [2]

http://www.ssa.gov/history/court.html
Retrieved June 18, 2015 12:58 am

5. Amazing oratory from Roosevelt about the need to tie benefits to wages notwithstanding, this Act, like most of his struck-down *New Deal*, is unconstitutional.

6. Undeterred by the Constitution, Roosevelt figured out a way to make the Act repeal-proof:

> **A President Tries to Pack a Court-**
>
> In early 1937 President Roosevelt made what turned out to be the biggest political blunder of his career, and yet it was a blunder that would have fortuitous, even pivotal, importance for the fate of Social Security.
>
> Federal judges are appointed for life. The Supreme Court of the 1930s was the most elderly in the history of the Republic, with an average age of over 71. President Roosevelt would derisively refer to them as "those nine old men." Actually, he only had four of them in mind. The Court was split down the middle in political terms. On the liberal side were three justices sympathetic to the New Deal programs (Brandeis, Stone and Cardozo); on the conservative side were four justices who voted against everything the Congress and the Administration tried to do (McReynolds, Butler, Van Devanter and Sutherland). In the middle were Chief Justice Charles Evans Hughes and Justice Owen Roberts, who were often "swing votes" on many issues. In the spring of 1935 Justice Roberts joined with the conservatives to invalidate the Railroad Retirement Act. In May, the Court threw out a centerpiece of the New Deal, the National Industrial Recovery Act. In January 1936 a passionately split Court ruled the Agricultural Adjustment Act unconstitutional. In another case from 1936 the Court ruled New York state's minimum wage law unconstitutional. The upshot was that major social and political reforms, including social insurance programs, appeared headed for defeat. This despite the obvious will of the electorate who returned Roosevelt to office in 1936 with the largest landslide in history.

7.    So we have, *in the government's own words,* the sordid legislative history of the Social Security Act of 1937, whereby tying benefits to earnings placated the power-tripping conservatives who cannot stand the idea that a poor person might be able to exist under something other than the threat of poverty, homelessness, starvation, and preventable death inherent in unbridled capitalism.

8.    Not sufficient to trust the judiciary, and in a manner which would make the authors of the PATRIOT ACT blush, Roosevelt then issued a veiled threat to involuntarily retire the judicial nuisance that was the SCOTS monopoly, one generally credited with allowing the Act to survive.

3

 President Roosevelt's response to all of this was stunning and unexpected. On February 5, 1937 he sent a special message to Congress proposing legislation granting the President new powers to add additional judges to all federal courts whenever there were sitting judges age 70 or older who refused to retire. Couching his argument as a reform to help relieve the workload burden on the courts, President Roosevelt's unusually blunt language made it clear what he really had in mind: *"A part of the problem of obtaining a sufficient number of judges to dispose of cases is the capacity of the judges themselves. This brings forward the question of aged or infirm judges—a subject of delicacy and yet one which requires frank discussion. In exceptional cases, of course, judges, like other men, retain to an advanced age full mental and physical vigor. Those not so fortunate are often unable to perceive their own infirmities. . . A lower mental or physical vigor leads men to avoid an examination of complicated and changed conditions. Little by little, new facts become blurred through old glasses fitted, as it were, for the needs of another generation; older men, assuming that the scene is the same as it was in the past, cease to explore or inquire into the present or the future."* [3]

The practical effect of this proposal was that the President would get to appoint six new Justices to the Supreme Court (and 44 judges to lower federal courts) thus instantly tipping the political balance on the Court dramatically in his favor. The debate on this

### Anti-Discrimination Laws And The SSA

9.   Having just gotten around to canonizing the Miranda warning, and clarifying the language of the Second Amendment, and on a planet where the can **opener** was invented a full half-century after the tin can, justices has been delayed and denied to the collateral damage endured by Plaintiff, and those similarly situated.



10. Plaintiff avers, based on watching video the **2015 Academy Awards** and reading it on the internet, that women earn less money than men in their lifetimes. Not surprisingly, the average retirement benefit is **$300.00+ greater for men than for women**.

11. The government, as a matter of public policy, uses presumed discrimination as the constitutional basis for affirmative action, equal pay, and other statutes.

12. Whistleblowers like Plaintiff earn less money in their lifetimes than those who **don't snitch**.

13. (Whistleblowers + anti-poverty) > any other compelling public interest.

14. Whistleblowers > Jerry Sandusky and his $59,000+ pension from the Commonwealth.

### The As-Applied Challenge (General)

15. Plaintiff is **not** appealing the findings of the SSA, as this lawsuit is beyond that scope. He is challenging the constitutionality of the benefits-calculation provision of the SSA, and of private pensions ensured by the PBGC.

16. To quote what Arquette would have said, had her speechwriters thought of it: *why is the government punishing elderly women a second time for discrimination?*

17. Even without civil rights legislation clearly creating a circumstance whereby targets of discrimination are punished under color of law with a reduced retirement (or disability) check, the retirement-benefits calculation violates the Equal Protection provision of the Fourteenth Amendment, with no possible compelling interest offsetting elderly poverty, employment discrimination, or whistleblower-silencing, assuming that was even the consequence of the least restrictive means.

### COUNT ONE:
### TITLE VII AND EQUAL-PROTECTION VIOLATIONS (BOTH DEFENDANTS, GENERAL)

18. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of all previous paragraphs.

19. Plaintiff's lifetime earnings have been reduced by at least one act of provable discrimination. Indeed, he just sued Kelly Services (*"The Kelly GIRL People"*) and Independence Blue Cross ("IBX") under the Rehabilitation Act, for not taking Plaintiff seriously when he said he wishes to work. Should the need to prove more exist, if this Court asks via leave to amend, Plaintiff shall give plenty more on amendment. Given the real retaliation risks of doing so, Plaintiff hopes this Court will simply stipulate that he is a targeted class.

20. Because SSA and private pensions (for which Plaintiff is less likely to qualify due to discrimination), tie retirement (and disability) benefits to wages, they have run afoul of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1991, the Rehabilitation Act of 1973, and The Americans With Disabilities Act of 1990, among other statutes, as well as the Equal Protection Clause.

21. Like Bill Clinton's portrayer said during an SNL skit about his not meeting Megan Fox, who was in the studio at the time: *that's just __wrong__!* It's also been illegal since no later than 1963, which is why Plaintiff states this claim for relief on this basis.

22. Absent discrimination, Plaintiff's monthly SSDI check would approach *two thousand dollars a month*. The same is true for the more sympathetically situated women, minorities, other disabled, felons, and others not named Jerry Sandusky.

23. While Plaintiff is entitled to an SSDI check based on his *imputed income* (the one that would have been used to determine his child support payments) of almost "two dimes a month," he concedes the compelling interest in preserving the system while allowing time for it to phase out its illegal parts. To this extent, Plaintiff concedes a compelling interest except to the extent that his monthly benefit is beneath the federal poverty level of $11,770.00 in annual income for 2015, or $980.83 a month, to which he asserts entitlement based the dual public interests of anti-poverty and anti-discrimination.

24. Plaintiff is entitled to injunctive relief sufficient to terminate the current benefits-calculation formula, replacing it with one which a) is not tied at all to wages, and b) in transition, which does not keep even one benefit recipient in poverty while Jerry Sandusky is collecting his $59,000 a year. He is further entitled to c) his tax *dollar* not being used to fund equally unconstitutional pensions via PBGC.

25. Plaintiff is proposing that a new, legal system be phased in by the year 2070, so that anyone currently in the workforce now retains the option of the current system, while the government offers buyouts to speed up the process.

## COUNT TWO:
### ADA/REHABILITATION AND EQUAL-PROTECTION VIOLATIONS (SSA, DISABILITY)

26. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of all previous paragraphs.

27.    Under the current SSA benefit-calculation formula, Plaintiff could not have been determined to be disabled prior to 2011, not because he was not disabled, but because he was earning too much to qualify for benefits.

28.    Plaintiff has been disabled since his suicide attempt on Sunday, July 8, 1984 at or around 4:20 p.m.  He has bipolar disorder.

29.    Plaintiff has been discriminated against and otherwise had his income reduced due to disability, due to increasing stigmatization, ever since his diagnosis.  Examples of how Plaintiff is perceived include his being called names, in public, without shame from the speaker, like *a\*\*hole, overbearing, psychotic, sociopathic, bitter, whining, crazy, Fr00Tl00P* (on USENET), *batsh\*t crazy*, and *unemployable*, the final one told to this very Court in 2003, by the University of Pennsylvania (who employees thousands of secretaries), with Judge Anita Brody agreeing, saying "[Plaintiff's] employability has always been in question," when she ordered the Rule 35 examination in the course of Plaintiff's Title VII lawsuit.

30.    Simply put, no one likes Plaintiff and no one will hire him, despite his many skills, due to his attitude and mental illness.  It merely took until 2011 for his many skills to no longer allow him to fall over the "cash cliff" of the SSA's income limit.

31.    Unlike workman's compensation, SSDI does not provide a *reduced earnings benefit*, even in an extreme case like Plaintiff's.

32.    Plaintiff's current lawsuit against *The Kelly GIRL People* and IBX stems from an incident in February, 1994, by which both Defendants terminated Plaintiff, explicitly citing his (alleged) "disorientation" as the grounds for termination.

33.    Plaintiff was punished a second time for this incident by Defendant SSA, because he did *not* take the other defendants at face value, did *not* take the easy way out, and did not apply for SSDI. He had no reason to: he could still find work, albeit at the reduced rates of $7.50-9.00 an hour, thus greatly

reducing his benefit check. Plaintiff was at his peak income from 1987-1993, and had lost four years of work credits (1983-1986) due to having been employed in the family business, literally against his will. Indeed, had Plaintiff waited but a year longer, he would be on SSI, and not even allowed to accumulate wealth without sacrificing his benefits. Though he lacks standing, Plaintiff avers that SSI should be abolished and replaced with universal SSDI, imputing at least *minimum wage.*

34.    If this Court truly believes that Plaintiff would ever have blown a single whistle, thus exacerbating his limited options for employment, had he known he would wind up with an "early-retirement" check of $867.00 a month instead of a lifetime SSDI check which would now approach "two dimes," it is mistaken. Is there not a public interest in encouraging whistleblowers? Because stigma is what makes Plaintiff unemployable due to disability, he refers to his benefit as *whisability*.

35.    Plaintiff avers that the only three constitutionally sound classifications for workers are *employed, retired*, and *disabled*, except where a worker has consciously refused offers of employment. "Disability" is a matter of time when one lacks housing, food, and proper medical care, with delays costing not just lives, but a lot of money that would not be necessary were everyone's benefit check at parity with poverty.

36.    Because starvation and suicide are not options, Plaintiff further avers that *poverty itself* a breach of the social contract, simply due to the increased secondary costs to society when its inevitable effects kick in, without the economically mitigating factors of death and starvation to reduce costs. Theft, of course, is illegal, which leaves this lawsuit as the only real option, save for an act of maturity by Congress, for which Plaintiff is not holding his breath. This is not "legislating from the bench," but rather the judiciary's proper role of *judging* legislation from the bench, something the fearful 1937 court could not do, as per the government's own words.

37.    Plaintiff's constitutional harm and damages are simple: the inability to travel, in this case to rebuild his life in privacy, secondary to his having been *cyberstalked* for close to twenty straight years,

including defamatory allegations that he is a pedophile, more imputations of mental illness, and the publication of his address and likeness to incite offline harassment. Regarding 36) above, Plaintiff is not suicidal, for if he were, he would be challenging to apply Oregon's assisted-suicide statute nationally, under equal protection grounds. He asks only that the government stop breaking the law so that his benefits allow him the proper exercise of his citizenship.

38.    Plaintiff is entitled to an order enjoining the SSA from calculating retirement and disability benefits in a manner which runs afoul of the constitution. Specifically, he is entitled to an order requiring the SSA to change its benefit formula for *all* Americans, to where disability is determined solely by medical capability, and income is imputed for those months or years where the disability resulted in reduced income, in this case from $22,000.00+ (in 1993) to $9,000.00+ (since).

39.    Plaintiff seeks no "earthquake" that would double his benefit check, but asserts that he is entitled to $980.83 per month, sufficient to keep him at parity with the poverty level, and that this benefit *not* include any deductions for Medicare.

40.    Plaintiff is also entitled to *not* enroll in Medicare until he is sixty-five, or takes full retirement at seventy, should he live that long (see below).

41.    Plaintiff further asserts an equal-protection violation, on the basis of his SSDI check automatically converting to a retirement check at age sixty-five, rather than allowing Plaintiff to gain the much-needed benefit that comes with retiring at seventy.

## COUNT ONE:
## EQUAL-PROTECTION VIOLATIONS (GEOGRAPHY)

42.    Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of all previous paragraphs.

**Three Retirees Walk Into A Bar In Florida:**
**One from New York City, Iowa, And Kansas**

43.     The retiree from New York is the only one who can afford to drink there, because his check was inflated by his geographically inflated income, in clear violation of the Fourteenth Amendment. Plaintiff states this claim for relief on this basis.

44.     Plaintiff is entitled to have his income imputed based on his having worked in New York City his entire life, as a person not disabled.

45.     Plaintiff is entitled to injunctive relief sufficient to terminate the actionable conduct.

**PRAYER FOR RELIEF**

Plaintiff prays to this Court for the following relief:

1.      An increase in his monthly SSDI benefit to *at least* the poverty level, but also to his imputed-income level, as determined by this court.

2.      An order enjoining the PBGC from insuring privately funded pensions.

3.      That his tax *dollar* no longer be used to punish targets of discrimination in disability and retirement, via a court order to the SSA and PBGC to devise a constitutionally sound benefits-calculation formula.

4.      A declaration that Plaintiff has been disabled for his entire working life, via overwhelming preponderance of the evidence, and the *person-not-living-under-a-rock* standard.

5.      An order requiring the SSA to calculate disability based on medical, not financial, considerations, and to design a system similar to the reduced-earnings benefit for workman's compensation, for both its SSDI benefits, and retirement work-credit formula.

6.      Anything less would be uncivilized, in violation of the social contract, and so prohibitively expensive that the entire system is projected to collapse within two decades if not changed.  Plaintiff is here not to change the system, but to have an illegal system shut down.

**JURY TRIAL DEMANDED**

Plaintiff exercises his right to trial by a jury of his fellow established pillars of the community.

This the 19th day of June, 2015

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

# EXHIBIT F

LAW OFFICES

*Sidkoff, Pincus & Green*

A PROFESSIONAL CORPORATION

2700 ARAMARK TOWER

1101 MARKET STREET • PHILADELPHIA, PA 19107

Telephone (215) 574-0600    Telefax (215) 574-0310

_____

January 6, 2017

<u>VIA FIRST-CLASS MAIL AND EMAIL</u>

Gordon Roy Parker
4247 Locust Street, #119
Philadelphia, PA  19104

      **Re:**   <u>**Parker v. PayPal et al. , Civil Action No. 16-4786**</u>

Dear Mr. Parker,

     Enclosed is Defendants Shannon Sofield and PayLoadz Inc.'s *Motion for Rule 11 Sanctions.* Under the Rules, we must give you an opportunity to cure, which in this case means withdrawing your Complaint with prejudice, before we file the Motion.

                 Very truly yours,

                 Gary Green

GG/brd
Enclosure

THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER** | : | |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | **CIVIL ACTION NO. 16-4786** |
| | : | |
| v. | : | |
| | : | |
| **PAYPAL INC., et al.** | : | |
| Defendants | : | |
| | : | |

---

**DEFENDANTS SHANNON SOFIELD AND PAYLOADZ, INC.'S RULE 11 MOTION
FOR SANCTIONS**

---

Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)/
(215) 574-0310 (fax)

Dated: January 27, 2017    **Attorneys for Defendants Shannon
Sofield and PayLoadz, Inc.**

**THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **GORDON ROY PARKER** | : |
| a/k/a "Ray Gordon" | : |
| Plaintiff | : |
| v. | : |
| **PAYPAL INC., et al.** | : |
| Defendants | : |

CIVIL ACTION NO. 16-4786

## ORDER

AND NOW, this _____ day of _____, 2017, upon consideration of the

Rule 11 Motion for Sanctions filed by Defendants Shannon Sofield and PayLoadz, Inc

("Movants"), and after reviewing the matter presented by the interested parties as well as a

review of Plaintiff's pro se filings in other cases in this Eastern District Court it is hereby

ORDERED that:

(1)   Plaintiff shall pay into Court the amount set by the Court for Movants' attorneys' fees, costs, and expenses associated with defending this action and prosecuting this Motion.

(2)   Counsel for Movants shall file a petition within 60 days of the entry of this Order setting forth the basis for the amount Movants seek as attorneys' fees, costs, and expenses

(3)   Pursuant to Fed.R.Civ.P 11(c) 4, to deter repetition of the conduct that violated Rule 11, Plaintiff shall not file any new pro se civil action in the Eastern District without first requesting, and receiving approval from a judge of this Court.

BY THE COURT:

_____
**NITZA I. QUIÑONES ALEJANDRO, J.**

# THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER** | : | |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | **CIVIL ACTION NO. 16-4786** |
| | : | |
| **v.** | : | |
| | : | |
| **PAYPAL INC., et al.** | : | |
| Defendants | : | |
| | : | |

## DEFENDANTS SHANNON SOFIELD AND PAYLOADZ, INC.'S RULE 11 MOTION FOR SANCTIONS

### Introduction

Defendants Shannon Sofield and Payloadz, Inc. ("Movants"), by their undersigned

counsel, respectfully move under Fed. R. Civ. P. 11 for an Order granting them relief against

Plaintiff, Gordon Roy Parker ("Parker"), that includes reimbursement of attorneys' fees, costs

and expenses incurred, *inter alia*, in defense of Parker's four Complaints (that were filed,

voluntarily dismissed, filed again, and Amended twice).[1]

---

[1]  On November 15, 2015, Parker filed his first Complaint, Case No. 15-6065 (E.D. Pa. 2015), ("Original Complaint") against Movants alleging twelve claims, five of which are the same in the current Complaint: copyright infringement, unfair competition, tortious interference, breach of contract, and misappropriation of likeness.

On December 8, 2015, Movants filed a Motion to Dismiss Parker's Original Complaint, but instead of defending the Original Complaint, on December 10, 2015, Parker voluntarily dismissed it under Fed.R.Civ.P. 41.

On September 19, 2016 Parker filed his initial Complaint under the docket number of this case (First Complaint), but subsequently withdrew it after Movants filed their Motion to Dismiss on November 3, 2016. This caused Movants to spend additional sums which greatly strained their limited resources. (see, Affidavit of Sofield, attached hereto as Exhibit "A" and incorporated herein by reference)

After Movants filed a Motion to Dismiss, Parker amended the Complaint ("Amended Complaint"). On December 13, 2016, Parker filed his fourth Complaint in this case ("Corrected Amended Complaint").

This fourth Complaint was stricken on December 15, 2016 since Parker did not have permission from the parties, or leave from the Court to file a new amended Complaint. Moreover, the stricken Corrected Amended Complaint asserts essentially the same causes of action Parker pled in the three earlier Complaints, albeit he added additional,

Footnote continued on next page

1

Movants rely on the following and the attached brief as grounds for relief.

1.    Parker sued Movants and others for an alleged violation of his copyright of an Electronic Book that was included in an anthology and uploaded to a commercial cloud service Movants offered to sellers of books, videos, music and other content that could be downloaded from the Internet and paid for through the use of PayPal.

2.    In response to first Complaint Parker filed in 2015, Movants filed a Motion to Dismiss and asserted, inter alia, immunity under laws that protect Internet hosts that do not have involvement with the content to copyrighted material. The Motion to Dismiss prompted Parker to voluntarily dismiss his action.

3.    Almost a year later, Parker's case returned to the Eastern District when he filed a new Complaint against essentially the same Defendants, and alleged the same causes of action, but in the new Complaint, Parker manufactured a completely false scenario that posited the totally implausible allegation that Movant Sofield used fake identities, that he was the person who pirated Parker's copyrighted electronic book, and that Movant Sofield owned or maintained a website that catered to those in the "Pick-Up-Artist" community to which Plaintiff contended he was a prominent member.

4.    Parker committed violations of Rule 11 because he signed and filed the four versions of the Complaint knowing that his allegations against Movants were false, and that Movant Sofield had not used false identities, and had not had any involvement with the Pick-Up-Artist or any web site that catered to it. (Movants incorporate their Motions to Dismiss by

---

fake and implausible allegations of skullduggery such as parties using false identities, and engaging in cloak and dagger activities.

In addition, Parker filed and signed, two responses to Motions to Dismiss that Movants had filed that repeat and amplify the wrongful matter that plagues Parkers Complaints. Parker's filings, when discussed as a group, are referred to as "Plaintiff's Papers"

2

reference where the background of the case was discussed at length along with the nature of the defenses Movants have to the Complaints.)

5.    Parker's false allegations in Plaintiff's Papers were artifices, designed deceitfully to create a fiction about Movant Sofield's role that would, at the pleading stage, make inappropriate the statutory defenses available to Movants if Parker's allegations were no on their face recognized by the Court as being implausible. Indeed, in response to Movants' Motion to Dismiss, Parker asserted that the Court had to accept his allegations as true and could not dismiss his Complaint.

6.    Parker fabricated supposed-facts about Movants that he knew were false, or that he had no reasonable basis to think were true including, *inter alia*, allegations asserting that Movant Sofield used aliases, and that he had an interest in "Pick-Up-Artists" and websites frequented by those who did have such an interest.

7.    Nonetheless, Parker all but admitted he has no evidence of who, if anyone, offered to sell his copyrighted e-book, Outfoxing the Foxes ("OTF") using the email address loki.net@gmail.com.[2]

8.    Parker, fearing an early demise to his case from Rule 12 motions to dismiss, pled false scenarios in an effort to give undeserved vitality to his case in the hope of forcing Movants to litigate until discovery was completed and they ultimately could ask of Summary Judgment.[3]

---

[2] At ¶27 of the Amended Complaint, Parker avers "that either a) Defendant Loki is Carter Ajadir, and lives in Los Angeles, California, or b) Defendant Loki is Defendant Sofield." The seller could also be a company, or Parker himself, since he may have fabricated the incident to enjoy his hobby of filing complaints in Federal Court.

[3] Parker violated Rule 11(b)(2) by alleging in Count One that Movants committed copyright infringement by hosting his copyrighted materials on the PayLoadz website. (Compl. at ¶¶68-78). However, Parker chose to ignore the fact that §512(a) of the Digital Millennium Copyright Act ("DMCA") holds that a service provider cannot be liable for monetary relief if it does not have knowledge that material on its server is infringing, or if there is such knowledge, acts expeditiously to remove, or disable access to the material. Once Sofield learned from Parker about the alleged copyrighted book, Sofield immediately removed it from PayLoadz and banned the seller.

Footnote continued on next page

3

9.      As can be gleaned from the Amended Complaint and Parker's Motion for Expedited Discovery (served on Movants on November 21, 2017), Parker actually had no proof of even a single fact reasonably suggesting the two Movants committed any wrongdoing. Parker's discovery motion leaves no doubt that Parker knew Movants had not engaged in the wild schemes and behavior that Parker alleged; and his allegations and innuendo in the Complaint concerning Movants were likely the product of willful and malicious fraud on the Court by Parker to keep the case from being dismissed.[4]

10.     Parker himself exposed his scheme to prop up the Complaint with false allegations as seen in his Motion for Expedited Discovery where Parker admits his lack of knowledge of the identity of the individuals who allegedly re-sold OTF. Parker's discovery motion proves that when he filed his Complaints, Parker had no valid reason to accuse Movants.[5]

11.     Parker violated Rule 11 in an intentional and cynical effort to avoid dismissal of his Complaints *via* Fed. R. Civ. P. 12 since the statutory immunity would become a contested issue *if* the Court accepted as *plausible* the allegations that Sofield had hidden behind the false identities, and committed the intentional acts of conspiring and scheming to steal Parker's copyrighted book, as Parker alleged.

---

Additionally, Defendants are registered as designated agents with the U.S. Copyright Office, granting them safe harbor as provided by §512(a). *See* Amended Interim Designation of Agent to Receive Notification of Claimed Infringement attached hereto as Exhibit "B".

[4] Parker's attempt to transform Sofield into the alter ego of first Sally Longer, and then Loki or perhaps someone named Aljadir in California, is self-contradictory, and evinces how confused Parker is about what level of certainty he must have before dragging others into court as defendants and making allegations that cost them money to defend. (Compl. at ¶¶ 25-26). The Amended Complaint is reminiscent of the board game "Clue" and it would be no less absurd than the allegations that are actually pled if Parker added allegations revealing the culprit to be Col. Mustard, in the library, with a candelabra.

[5] *See*, Sofield Affidavit containing the Interrogatories propounded by Parker and the Movants' Answers which prove there is no merit to Parker's allegations that Sofield played any role in this case other than an owner of a corporation that operated a web hosting and download center for sellers of product that was uploaded and processed with no human intervention or review by Sofield.

4

12.    Parker's allegations were, on their face, false, ludicrous and implausible and they would have been easily proven as false by any reasonable investigation.  Parker could not have undertaken any reasonable investigation because if he had, he would have manufactured a more believable scenario to keep his case alive. *See* Sofield's Affidavit.

13.    Plaintiff's Papers asserted matter that was neither based on the best of Parker's knowledge, information, and as evinced by Sofield's Affidavit, Plaintiff's assertions in his signed papers could not have been based on an inquiry reasonable under the circumstances.

14.    Parker's purposes for filing the papers that violated Rule 11 were improper, not only because he wrote in them false allegations in an *effort* to extend the life beyond a dismissal under Rule 12,  and postponing the day of reckoning summary judgment motions could be filed after discovery was completed,  but also because Parker intended to use the federal court proceedings for the improper purpose of influencing people Parker imagined were following his self-reporting on the Internet of events in his life.

15.    Parker has already attempted to use the filing of this case as a tool to burnish or repair his reputation amongst a real community (or one Parker just imagines exists) of people who read Parker's on-line posters and videos. Moreover, on many web sites that Parker visits, there is brutal criticism of him by many posters going back decades, Parker has used the pendency of these proceedings (and his other pro se cases) to threaten his detractors with bullying lawsuits, boasting that he knows how to use the federal courts to get revenge against those who criticize him, or otherwise displease him on line. If this case were dismissed, Parker would lose, rather than gain the credibility he seeks in the eyes of the Internet crowd he imagines are waiting to read his posts about the case. There is a reason beyond Parker's ego for wanting his reputation repaired and that is he has used this case, as well as his numerous other *pro* se

5

lawsuits as a means of gaining notoriety on the Internet in the hopes of getting new customers for his pickup artistry business.[6]

16.    The proof that Parker filed this action primarily to achieve a purpose on the Internet, and not a ruling is found in Parker's own words. For example, on November 5, 2015, prior to filing the Original Complaint, Parker breathlessly described this litigation to those he perceived to be his audience of on-line followers on the Internet at http://sluthate.com/viewtopic.php?f=11&t=1004656&start=0:

> "Yes, this is Ray Gordon. Yes, I'm about to sue half of the "seduction cartel" in two days, and bring them all down...
>
> *        *        *        *
>
> Just about all the crap you've ever read about me was put there for the purpose of destroying my career as a PUA teacher. I was forced to stop producing new content in 2001 because anytime I did, they would plagiarize it and profit from it. Instead, I waited until they exhausted the existing theory, and became desperate for new ideas, or had to rely on their own "genius" instead of mine. Please remember I learned from my cousin, who FUCKED DIANE LANE. When you're 14 and you see that, no matter how good you are, you feel inferior like I did, always working to improve. By 18 I was an PUA, and by 28 I was so off the charts none of you would believe it if I told you.
>
> *        *        *        *
>
> Even if I don't win in court, though I almost certainly will, the world will soon know what I have known all along: that my work was SO GOOD that it, and me, had to be silenced through defamation, piracy, and plagiarism.
>
> *        *        *        *

---

[6] In response to Parker's November 5, 2015 post, Parker received the following comments (which are a small sample of the thousands of comments made by individuals against Parker over the years):

"Holy sh*t OP you are a massive fa**ot. Your books are garbage, you look like that fat computer dude from South Park, and no one, from PUA Land to Sluthate, gives a flying f*ck about you or your mentally laughable scribblings."

"i don't have a problem with you. i just think you should keep your lithium tablet intake steady. and also, it's a bit ridiculous that you look like that, yet you're talking about picking up 15 year olds. it sounds highly improbable. but bipolar disorder is like that. i makes you think you're invincible."

Parker's Response: Hey ElliotLoser, Learn to read the source properly. I was 21 at the time and didn't see her outside of her work until she was 16, when SHE followed ME down Chestnut Street. This site seems to be something other than what it presents itself as. Likely put up by a certain PUA I'm about to sue. If not, I'll find that out too since people want to defame me here. Those lies can cost millions.

http://sluthate.com/viewtopic.php?f=11&t=1004656&start=0

> My haters were so vicious that they convinced a court of law in a discrimination
> case that I was mentally ill and unemployable, which enabled me to retire on
> disability at 48. I've always been disabled (bipolar), but had previously been able
> to overcome it by earning enough. Those who tried to starve me have given me
> the money to fight them in court, and literally destroy the criminals.

(*See* Exhibit "C", attached hereto)

17.     Parker further disclosed his extra-judicial motives for the Defendants named in

the First and subsequent Complaints in an Internet posting on November 9, 2015. In his posting,

Parker acknowledged his goal of using litigation in the Eastern District for the ulterior purpose of

enabling him to obtain discovery to learn the identities of his enemies in the "seduction cartel'

and the names of all of the other people who posted nasty things about him on the Internet. Then,

according to Parker's statement, he would sue all of his enemies in a new lawsuit. Parker thus

wrote on slutehate.com,

> On Tuesday, I'll be suing the "PUA cartel" for similar defamation, but this is done in
> furtherance of a RICO conspiracy. Obviously this site doesn't mind giving up the names
> of the people who own and run it (they will be Defendants now), and one very simple
> subpoena gets me the name of the poster as well. This isn't difficult, since I'm already
> filing the suit. It's just a matter of adding one defendant. The thing about conspiracy law
> is this: even ONE act in furtherance of the conspiracy makes the actor responsible for the
> ENTIRE conspiracy, which in this case includes:
>> Criminal copyright infringement (five years in Club Fed)
>> Money Laundering (twenty years in club fed)
>> And a host of other crimes that will be outlined in the complaint.

(*See* http://sluthate.com/viewtopic.php?f=11&t=1004688, see also, Exhibit C).

19.     Parker's multiple, illegitimate purposes to misuse this litigation thus included

threats of revenge against parties who have nothing to do with this case.

20.     Another improper purpose was Parker's design to upload copies of his Complaints

for his imagined audience on the Internet to read his threat that they should not risk insulting

him, and using this action as an example of the annoyance and burdens Parker could cause

someone he sued. This purpose can be observed in Parker's six-minute, YouTube video of

himself lecturing and boasting about the instant lawsuit on September 7, 2016. (*See,* Transcript

of Parker's YouTube Video attached hereto as Exhibit "D".[7]

21.    In addition to attempting to bolstering his pickup artistry business, Parker is using

pleadings in this case to threaten expressly, people he sued previously in unrelated cases with

new litigation. For example, in the Amended Complaint, Parker wrote about Jacqui Holland (*nee*

"Goldhagen"), a client the undersigned law firm represented when Parker filed a frivolous

lawsuit against her:

> 31. On October 25, 2015, while researching his intended refiling of Parker v. Goldhagen
> (15-cv-3304), Plaintiff "Googled" the name of Tad James, who trained Ms. Goldhagen
> (a/k/a "Jacqui Holland") as a hypnotherapist. He did this specifically to explore Ms.
> Holland's apparent ties to the "pickup artist community" ("PUA community" or
> "Community") with which Plaintiff's work has been associated since 1998.[8]

22.    Parker withdrew his lawsuit in *Parker v. Goldhagen,* Nonetheless, it seems his

diagnosed bipolar disorder[9] has made him unable to distinguish fact from fiction, even alleging

that the pickup artistry "Syndicate". which Parker believes to have been conspiring against him

for decades, was in cahoots with Ms. Holland.[10]

---

[7] After Parker was served with Movants motion to dismiss the original Complaint filed here, Parker rushed to quickly remove his videos from YouTube, possibly thinking he could obliterate the evidence. However, in anticipation of that precise behavior, Movants' counsel made a copy of the video titled "PUA Ray Gordon sues Amazon, Paypal for Mass Piracy" as well as other videos with titles such as "Story Time Finding That NICE GUY! (Advice for teen girls) and "Olivia Cara, Please Retract your LIES About Me".

[8] On June 12, 2015, Parker filed a lawsuit against Jacqui Holland, which he subsequently withdrew without prejudice on September 15, 2015.

[9] Parker admitted in his pro se case, *Parker v. Social Security Administration, et al.,* 2:15-cv-03453-PBT (E.D. Pa. 2015) (known herein as *"Parker v. SSA"* a copy of which is attached hereto as Exhibit "E") that he is afflicted with mental illness, and suffers from bipolar disorder that is severe enough to qualify him for full Social Security disability. In ¶ 30, Parker alleges categorically, and without exception, "Simply put. no one likes Parker and no one will hire him…due to his attitude and mental illness."

[10] In his Original Complaint. Parker wrote at footnote 7 "See Parker v. Goldhagen for a very clear example of how successful the Syndicate has been in repelling anyone from wanting to be associated with the Plaintiff."

Footnote continued on next page

23.    Parker's incessant references to the *Goldhagen* case demonstrate the danger of allowing Parker to continue to file his multitudinous *pro se* cases without Court supervision since each case burdens the people he names as Defendant. Here, Movants, who have zero relationship with Jacqui Holland, have to spend money while Parker imports into the instant case, a fight from a phantom war against Ms. Holland. Rule 11 was designed to quell this type of unwarranted annoyance.[11]

24.    Parker violated Rule 11(b)(2) by alleging that Movants unfairly competed with Parker in violation of the Lanham Act when there was no evidence at all that Movants used a false designation of origin in interstate commerce that was likely to cause confusion as to the approval of Parker's goods by another person, and that Movants use of such false designation injured Plaintiff. This was another effort by Parker to delay the termination of his suit by deceitfully creating roadblocks to a Rule 12 dismissal.

25.    Parker further violated Rule 11(b)(2) by filing claims for misappropriation of likeness, breach of contract, and tortious interference. First, Parker's state law claims are barred by the Communications Decency Act 47 U.S.C.A. § 230 because this section bars state law claims against interactive computer services for publishing content obtained from another information content provider. *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 293 (D.N.H. 2008). Second, none of these claims are warranted by existing law, and Parker failed to allege any facts that come close to demonstrating violations of these laws. Instead, Parker used

---

[11] According to the Opinions written by judges in the Eastern District and the Third Circuit, Parker is also a "serial" filer of many *pro se* complaints in this federal district court where his actions have been dismissed universally because Parker repeatedly sued parties who had no ties to Pennsylvania and were not subject to personal jurisdiction; violated the rules governing pleading; made frivolous and unsubstantiated claims; and failed to allege any cause of action for which relief could be granted. Similarly, all of Parker's *pro se* appeals to the Third Circuit have likewise resulted in the rejection of his suits.

the smoke of pleading things he knew where not real causes of action to delay an Order terminating his case.

27.    Plaintiff's Papers were filed by Parker for the additional improper purpose of harassing Movants in retaliation for filing a Motion to Dismiss Movant's first Complaint, to avenge some imagined grudge Parker has against counsel for Movants stemming from a case with which Movants had no connection, and to require Movants to pay the needless increase in the cost of litigation to induce them to pay a settlement.

28.    In summary, the allegations and other supposed factual contentions in Plaintiff's Papers have no evidentiary support; and no amount of discovery or investigation will ever adduce any evidentiary support; and Parker's claims, and other legal contentions are not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. On the contrary, Parker has conceded that there is binding authority against him.

29.    As a result of Parker's refusal to dismiss Movants as Defendants in this case, Movants are forced to incur fees to retain counsel at a time when PayLoadz and its owner are in bad economic straits, and Payloadz may shortly shut down due to decreasing sales, while Movant Sofield has become financially responsible for his parents, who are experiencing foreclosure on their home. *See* Sofield Declaration at ¶ 16.

30.    In addition to the ordinary Rule 11 sanctions, given Parker's serial filing of *pro se* cases that all have been dismissed by judges of the Eastern District and the Third Circuit, as well as his history of retaliating and suing lawyers who represented his original lawsuit victims, Movants seek relief in the form of an Order  under Fed.R.Civ.P 11(c) 4, to deter repetition of the conduct that violated  Rule 11, that would bar Parker from prosecuting any new pro se cases

without first obtaining judicial approval. This relief finds support under 28 U.S.C. § 1651(a) , and the relief is needed because of:

        a.    Parker's history of litigation and in particular his habitual vexatious, harassing nature;

        b.    Parker demonstrated here that he does not care whether he has an objective good faith expectation of prevailing;

        c.    Parker's cases are always filed on a *pro se* basis because no responsible attorney would risk the sanctions that would be likely if a lawyer filed the frivolous and vexatious cases he has filed;

        d.    Parker's numerous frivolous and vexatious lawsuits have forced Movants as well as individuals in faraway states to incur the expense and hardship of paying for counsel here, and his cases, all of which were dismissed, have caused needless expense to other parties and has posed an unnecessary burden on the courts and their personnel; and

        e.    No other sanctions would be adequate to protect the courts and other parties given that Parker claims to be a pauper and an award of money sanctions probably would go uncollected.

31.    The lack of plausibility in all of the iterations of Parker's Complaints, and Parker's disregard of the requirements of Rule 11 are manifest, and his history of filing in the Eastern District, numerous retaliatory and harassing *pro se* lawsuits in other cases further warrants an Order that Parker must obtain court approval before filing new pro se cases.[12]

---

[12] The Third Circuit and the Eastern District have recognized the authority to enter injunctions under 28 U.S.C. § 1651(a) to protect against the abuses of serial *pro se* filers of vexatious cases. *See Matter of Packer Ave. Associates,* 884 F.2d 745, 746-48 (3d Cir. 1989); *Brow v. Farrelly,* 994 F.2d 1027, 1038 (3d Cir. 1993); and *Danihel v. Office of the President,* No. CIV.A. 14-6880, 2015 WL 1954269, at *2 (E.D. Pa. Apr. 29, 2015).

32. In further support of this Motion, Movants incorporate herein the accompanying Memorandum of Law.

Wherefore, for all of the reasons presented in this Motion, Movants request that the Court impose sanctions, pursuant to Rule 11, against Parker for the filing, initiation and maintenance of this improvident and improper Plaintiff's Papers, and provide whatever relief is just and appropriate under the circumstances.

Respectfully submitted,

_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)

Dated: <u>January 27, 2017</u>                **Attorney for Defendants Shannon Sofield and PayLoadz, Inc.**

THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER** | : | |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | **CIVIL ACTION NO. 16-4786** |
| | : | |
| **v.** | : | |
| | : | |
| **PAYPAL INC., et al.** | : | |
| Defendants | : | |
| | : | |

**DEFENDANTS', SHANNON SOFIELD AND PAYLOADZ, INC,'S, MEMORANDUM
OF LAW IN SUPPORT OF DEFENDANTS SHANNON SOFIELD AND
<u>PAYLOADZ, INC.'S RULE 11 MOTION FOR SANCTIONS</u>**

Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA 19107
(215) 574-0600 (office)/
(215) 574-0310 (fax)
Dated: <u>January 27, 2017</u>                **Attorneys for Defendants**

1

# TABLE OF CONTENTS

**Page**

Table of Citations ....................................................................................................ii

I.  Why Plaintiff's Rule 11 Violation Need Early Scrutiny In
This Case ........................................................................................................1

II.  Parker Has Followed in This Case, His *Modus Operandi* of Filing
Digressive And Vexations *Pro Se* Complaints in Violation of the
Standards in Rule 11 ......................................................................................2

III.  Plaintiff Violated Rule 11(b)(1) By Filing His Complaint For
Improper Purposes ........................................................................................5

IV.  Parker Pleaded No Cognizable Copyright Claim Against Movants ...................7

V.  Parker Pleaded No Cognizable Unfair Competition Claim Against
Movants ......................................................................................................10

VI.  Parker Pleaded No Cognizable Breach Of Contract Claim Against
Movants ......................................................................................................11

VII.  Parker Pleaded No Other Cognizable Claim Against Movants ...........................11

VIII.  Conclusion ..................................................................................................11

# TABLE OF CITATIONS

**Page**

*Kay Berry, Inc. v. Taylor Gifts, Inc.,*
  421 F.3d 199 (3d Cir. 2005)......................................................................................11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005)...................................................................................................11

*Parker v. Google, Inc.,*
  422 F. Supp. 2d 492 (E.D. Pa. 2006)
  aff'd, 242 F. App'x 833 (3d Cir. 2007) ...............................................................4,5,8

*Parker v. Kelly Services, Inc. and Independence Blue Cross,*
  2:15-cv-03337-PBT (E.D. Pa. 2015) .....................................................................4,5

*Parker v. Learn Skills Corp.,*
  530 F. Supp. 2d 661 (D. Del. 2008)............................................................................3

*Parker v. Learn the Skill Corp.,*
  2006 WL 759693, *4 (E.D. Pa. March 23, 2006).................................................1,4

*Parker v. Learn the Skills Corp.,*
  2004 WL 2384993, at *2 n. 4 (E.D. Pa. Oct. 25, 2004).........................................4

*Parker v. Social Security Administration, et al.,*
  2:15-cv-03453-PBT (E.D. Pa. 2015) .....................................................................4,5

*Parker v. Viacom Int'l, Inc.,*
  605 F. Supp. 2d 659 (E.D. Pa. 2009) ..................................................................4,15

*Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.,*
  559 Pa. 56, 739 A.2d 133 (1999) ..........................................................................15

Federal Rule of Civil Procedure 11 ("Rule 11") protects the legal process and litigating parties, in part, by requiring that pleadings and other court filings be: (1) not for improper purposes (i.e. to harass or increase costs of litigation); (2) warranted under the existing law or are not frivolous; and (3) based on facts supported by evidence. Fed. R. Civ. P. 11(b). Sanctions are appropriate for violations of Rule 11(b). As will be described below, Plaintiff Gordon Roy Parker ("Parker") has violated Rule 11, and the Court should impose sanctions.

## I. Why Plaintiff's Rule 11 Violations Need Early Scrutiny In This Case

Courts often defer ruling on Rule 11 motions for sanctions, but this case presents a compelling reason for a prompt ruling. Parker has, and is likely to continue to file frivolous, vexatious, and expensive motions and discovery requests in this case, and is likely to file new pro se litigation that is frivolous and a nuisance to the parties he sues until he is ordered to stop. Parker is clearly what one judge in this District Court called a serial litigant plaintiff.[1]

In the instant case, Parker wrote and filed a *pro se* Complaint that is vexatious, intentionally pestiferous, and devoid of valid content. This is not surprising though because Plaintiff's Complaint was really filed for the purpose of enjoying an extra-judicial exploitation of his Complaint. Parker has a history of aggrandizing himself online as the person who will use his pro se litigation to force the online Pickup Artist community to recognize him as a force to be reckoned with. *See* blog posts at Exhibit "C" attached to Motion. Plaintiff's goal in filing the Complaints in this case was to fabricate legitimacy for Plaintiff's online persona, and his diatribes, hoping to feed into the public's perception that cases filed in federal court probably

---

[1] *See Parker v. Learn the Skill Corp.*, 2006 WL 759693, *4 (E.D. Pa. March 23, 2006) ("Further, we are persuaded that it would be inappropriate to allow this serial litigant plaintiff 'to conduct a fishing expedition to construct a basis for jurisdiction.'").

have merit. While there may be a proper dual motive when a party files suit, the party may not disregard Rule 11.

Plaintiff's frivolous lawsuit and vexatious Complaints have unreasonably burdened Movants. They have been obliged to spend significant sums in defending Parker's suits that included unsubstantiated and patently absurd allegations that were pled by Parker to avoid a quick dismissal under Rule 12.[2]

## II. Parker Has Followed in This Case, His *Modus Operandi* of Filing Digressive And Vexatious *Pro Se* Complaints in Violation of the Standards in Rule 11

Lawyers are officers of the Court, bound by the Rules of Professional Responsibility, and subject to liability for malpractice. Professionalism, reputation, and self-preservation therefore restrain lawyers from violating the Rules of Civil Procedure, and especially, Rule 11. By contrast, Plaintiff has filed <u>many</u> cases in the Eastern District of Pennsylvania, acting always *in propria persona,* but he has evinced no similar restraint. Plaintiff's complaints often share the common characteristic of flaunting the Rules; and by extension, because Plaintiff's deficiencies are habitual, it may be inferred from the violations of the Rules present in his complaints that Plaintiff intentionally ignores the obligations imposed by Rule 11, and the signature of Gordon Roy Parker cannot be accepted as a bona fide Rule 11 certification.[3]

---

[2] Despite his convoluted attempts to connect Movant Sofield with the individual(s) who really stole OTF, Parker failed to demonstrate any facts that prove Movants were involved in a scheme to illegally sell Parker's e-book. Parker's allegation that Movant Sofield goes by the alias of Sally Longer (an individual Parker credits with distributing illegal copies of OTF), is defeated by his own allegations that loki.net@gmail.com, which was used by Sally Longer, is either a) Carter Aljadir, and lives in Los Angeles, California, or b) Defendant Sofield. ¶ 28.

Parker filed these complaints knowing they were meritless, not based on facts supported by the evidence, and would harass Movants and force them to pay exorbitant legal fees.

[3] Plaintiff's numerous other *pro se* complaints were all dismissed. More than once, the dismissals were on grounds repetitive of the rulings by different judges in Parker's earlier cases. From this record, Plaintiff is shown to be a recidivist who is indifferent to wasting resources of the Court, or imposing needless financial burdens on his targets. Parker's complaints were found to have repeatedly violated Rules that include, *inter alia,* lack of personal jurisdiction under Rule 12(b)(2); improper venue under Rule 12(b)(3); failing to allege a valid claim under Rule 12(b)(6); and violating the "short and plain statement" requirement of Rule 8(a)(2).

Defendants have located many, but not all of the cases that Plaintiff filed *pro se* in this Eastern District, and they include: *Parker v. Social Security Administration* (Chief Judge Petrese B. Tucker)*; Parker v. Kelly Services, Inc. and Independence Blue Cross* (Chief Judge Petrese B. Tucker); *Parker v. Sloan Et Al* (Honorable J. Curtis Joyner); *Parker v. Learn The Skills Corp. Et Al* (Honorable Harvey Bartle, III) (appealed to the 3rd Circuit); *Parker v. Viacom International, Inc. Et Al* (Honorable Eduardo C. Robreno); *Parker v. Learn The Skills Corp. Et Al* (Honorable Sue L. Robinson) (appealed to the 3rd Circuit); *Parker v. Doe*: (Honorable James Mcgirr Kelly); *Parker v.. Yahoo!, Inc. Et A*l  (Honorable Mary A. McLaughlin); *Parker v. University Of Penn* (Honorable Anita B. Brody) (appealed to the 3rd Circuit); *Parker v. Comcast High-Speed Internet Et Al* (Honorable Harvey Bartle, III); *Parker v. Trustees Of The University Of Pennsylvania*  (Chief Judge Petrese B. Tucker); *Parker v. Google, Inc. Et Al* (Honorable R. Barclay Surrick) (appealed to the 3rd Circuit); and *Parker v. Learn The Skills Corp. Et Al* (Honorable James Mcgirr Kelly). As noted, each case that reached the Answer stage was dismissed, and every dismissal Plaintiff appealed to the Third Circuit was affirmed.

The appellation, "serial litigant plaintiff" is apt, as noted by Judge Bartle in *Parker v. Learn the Skill Corp. supra* at footnote 5, because Plaintiff has an extensive history of filing similarly frivolous lawsuits where the courts have not let his cases survive a motion to dismiss. *Parker v. Viacom Int'l, Inc.*, 605 F. Supp. 2d 659 (E.D. Pa. 2009); *Parker v. Yahoo!*, 2008 WL 4410095 (E.D. Pa. Sept. 25, 2008); *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661 (D. Del. 2008); *Parker v. Learn the Skills Corp.*, 2006 WL 759693 (E.D. Pa. Mar. 23, 2006); *Parker v.*

---

Nonetheless, each of these Eastern District judges has been overly generous and hospitable to Plaintiff, and in light of his *pro se* status, have painstakingly attempted to explain and teach to Plaintiff why each of his Complaints ran afoul of the law. But Plaintiff has consciously and intentionally ignored the cogent advice of the judges of Court (and the similarly generous and gentle rulings of the Third Circuit which likewise has universally ruled against Plaintiff in the many appeals he filed, but provided him clear explanations for the rulings).

*Learn the Skills Corp.*, 2004 WL 2384993, at *2 n. 4 (E.D. Pa. Oct. 25, 2004); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006) *aff'd*, 242 F. App'x 833 (3d Cir. 2007). Recently, Parker filed two new *pro se* case. *See Parker v. Social Security Administration, et al.*, 2:15-cv-03453-PBT (E.D. Pa. 2015) and *Parker v. Kelly Services, Inc. and Independence Blue Cross*, 2:15-cv-03337-PBT (E.D. Pa. 2015).

Prior to the case *sub judice*, a fair reading of the cases revealed that Parker apparently believed paying the Clerk the modest filing fee for his complaints was a bargain because each complaint yielded Parker an opportunity to engage in what seems to be a hobby, while the defendants in his cases were obliged to pay attorneys and had to deal with the implications of being sued in federal court  where a haywire proceeding could have monumental consequences; after all, even judges err occasionally.  Now, Parker has been granted *in forma pauperis* status, allowing him to file complaints without suffering any financial repercussions. If the past is prologue, Parker's *in forma paperis* status will be likely to result in many additional, new frivolous lawsuits against defendants that did not deserve to be dragged into court by a "serial" plaintiff who seems to relish using the Eastern District Court as his personal playground.

It is a violation of Rule 11 to launch an unmeritorious lawsuit in federal court to enhance an outside business. Yet, Parker's mass publication of hyperlinks and references to his lawsuits on websites, Twitter accounts, Internet discussion boards and chat rooms, on Facebook, and other places online, draws attention to Parker and he has expressed the hope that his cases will generate customers for his publishing and advice businesses.[4]

---

[4] Plaintiff hopes to charge $100,000 per client in the future. *See* Exhibit "C".  While Parker's pro se case may be good for his pick-up-artist business, his predatory and malicious habit of first suing individuals and tiny companies like Movants, and then disseminating links and references to his suits on websites terrorizes and bullies those innocent victims.

Parker has deployed in this case his familiar *modus operandi,* much of which was evident in the other cases he filed in the Eastern District.  He writes his *pro se* complaints with a stream of consciousness style that indulgently recounts his personal life story instead of pleading causes of action. In the Amended Complaint Parker filed here, the digressive and grandiose elaboration about his other lawsuits, and battles in the world of fellow pickup artists, marks a sharp contrast when juxtaposed next to the Amended Complaint's scant attention to anything related to Defendants; and the Amended Complaint all but relegates Parker 's transactions with Defendants to the status of an unimportant footnote to Parker 's rambling exegesis on his history with people who are totally immaterial and irrelevant to Movants.

This abusive pleading typifies what is present in every complaint Parker has filed. While Parker may have escaped being sanctioned in the other cases he filed, it probably was because the other victims of his litigation viewed him as a Typhoid Mary they were glad to just be rid of, and the generous attitude of federal judges toward unrepresented citizens who occasionally find the need to proceed pro se as the last resort in defending themselves or exercising their rights to use the courts.  However, Parker is nothing like the ordinary unrepresented citizen. To him, the court system provides a barrel of extra-judicial benefits the ordinary citizen would never even dream of as the reason for filing a pro se case. Therefore, like a prankster who disrupt a serious meeting for the fun of it, Parker must be curbed, and he should not escape Rule 11 accountability here.

### III.    Plaintiff Violated Rule 11(b)(1) By Filing His Complaint For Improper Purposes

Rule 11(b)(1) is violated when a Complaint is filed "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Plaintiff has abused his right to sue in federal court by filing an irrelevant screed instead of a proper pleading,

and he filed it to achieve improper purposes.  Parker has no *legal* dispute with Movants, as his allegations against Movants are baseless, and his complaints were only filed to harass Movants and increase their costs of litigation. His real goal and purpose in filing the Amended Complaint was to obtain *extra-judicial* benefits. In the Motion, we discussed the various improper purposes, and here we will examine in greater detail only a few of them.

Parker fancies himself an expert "Pickup Artist," and has advertised himself widely online as a *Guru* and "dating-advice expert". ¶86-88). Parker's Amended Complaint was designed to be, and was deployed by Parker as an online, *marketing tool* for his Pickup Artist customers to read—so Parker drafted the Original Complaint, not with a judge in mind as the audience, but rather, his *Pick-Up Artist-wanabe* customers; and that explains why Parker flooded the websites they frequented with news about, and hyperlinks to the Original Complaint. On November 8, 2015, two days before filing his Original Complaint, Parker wrote on a website called sluthate.com:

> "As for payment, I'm going to set up a Patreon account for the masses, while charging $100,000 a year for "elite" one on one ongoing coaching for very wealthy men who will now know who the true ALPHA guru is: ME.
>
> I know some Elliot-Rodger types, or some rivals who are about to be sued, will trash me, but trust me folks, this game is over, and almost seventeen years to the day after I registered this incredible work, I have finally won, at least where truth is concerned. Their money is cut off, and I'm about to claim the millions that should have been mine all along. Oh, and even without this, I was on track to get rich in a few years anyway, in one of three ways I have developed since I was waiting for justice in the PUA community. Think of it as a financial "Streisand effect."
>
> My haters were so vicious that they convinced a court of law in a discrimination case that I was mentally ill and unemployable, which enabled me to retire on disability at 48. I've always been disabled (bipolar), but had previously been able to overcome it by earning enough. Those who tried to starve me have given me the money to fight them in court, and literally destroy the criminals."
>
> *See* November 8, 2015 blog post attached hereto as Exhibit "C": ThePUAMole a/k/a Ray Gordon a/k/a Gordon Roy Parker

In short, Parker filed the Complaint for the improper purpose of having an official-looking pleading that he could widely publicize on the Internet, and Twitter that he believed would convince his readers that he was taming the bosses of the Pickup Artist community against whom Parker harbored a deep grudge.

## IV.    Parker Pleaded No Cognizable Copyright Claim Against Movants

In a very similar case brought by Parker against Google, this Court held that internet service providers' (like Movant PayLoadz) activities do not constitute direct infringement of copyright law because the Copyright Act "requires conduct by a person who causes in some meaningful way an infringement." *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) aff'd, 242 F. App'x 833 (3d Cir. 2007) citing (*Costar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004)). This Court held that Google did not violate the Copyright Act because its system catching activities that cached Plaintiff's e-book was protected under the safe harbor system of the Digital Millennium Copyright Act ("DMCA"). *Id.*

In the instant case, Movant PayLoadz has no involvement with the digital files that are placed on its cloud-based servers by sellers who contract to rent storage from PayLoadz.com. Movant PayLoadz does not review, or even know what is being stored on its server until and unless there is a problem that is called to its attention – such as when Parker contacted Movant Sofield by Twitter and claimed the *Oleynyk's Anthology* contained his copyrighted e-book. *See* Sofield's Affidavit at Exhibit "A". Immediately upon receiving that information from Parker, Sofield acted and removed the *Oleynyk's Anthology* from Movant PayLoadz' server, and that ended any relationship Movant PayLoadz had with *Oleynyk's Anthology* or Parker. Because Movant PayLoadz does nothing with the content of the files uploaded to its server, it, and its

7

owner, Movant Sofield, are immune from liability for copyright infringement. This is because,

temporarily hosting copyrighted material is an activity protected by DMCA § 512 which states:

> (c) Information Residing on Systems or Networks at Direction of Users. —
>
>> (1) In general—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—
>>
>>> (A)
>>>> (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>>>> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>>>> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>>>
>>> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
>>>
>>> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

As is evident from the allegations in the Amended Complaint, Vladymyr Oleynyk

entered into an agreement to upload files on the PayLoadz server. The uploading was done by

Oleynyk *via* an automated process, and Movant PayLoadz had no information about what was

contained in the files that were uploaded. Moreover, in this case, the *Oleynyk's Anthology* was a

"zipped" file meaning it was compressed and unreadable unless, and until it was 'unzipped".

Therefore, the role played by Movant PayLoadz fit the definitions in DMCA § 512 (c)(1)(A)(i)

and (ii). Similarly, when Movant Sofield immediately removed *Oleynyk's Anthology* from the

PayLoadz server upon receipt of Parker's Twitter message informing Movant Sofield of Parker's

claim that he believed his copyright was infringed, Movants satisfied subsection (iii). Moreover,

8

because Movant PayLoadz sold storage space and facilitated downloads, it could not control the content. Since it charged a flat monthly fee and a set download charge regardless of the content (as evinced by *www.payloadz.com*) it satisfied also the test of not receiving a financial benefit directly attributable to the infringing activity. Therefore, subsection (B) applies to Movant PayLoadz' role. Finally, as noted, the immediate removal of *Oleynyk's Anthology* after Parker's Twitter message shows that Movant PayLoadz likewise satisfies subsection (C) of the DMCA, quoted above ("...upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access.")  Consequently, Movants are entitled to the immunity from suit provided by law.

The DMCA gives Movants additional protections from Parker's suit because "service providers" have immunity from suits like the Amended Complaint. DMCA § 512(k) defines service providers as "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received and/or a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A)."  Movant PayLoadz is clearly a "service provider," as defined above, and enjoys the protections from suit the law offers service providers. Further, Defendants are registered as designated agents with the U.S. Copyright Office, granting them safe harbor as provided by §512(a). *See* Exhibit "B".

On the other hand, even if we assume *arguendo* that Movants were not protected by the DMCA, Parker still has not alleged in the Amended Complaint sufficient matter to charge Movants with having infringed on his copyright. "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of

9

original elements of the plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) citing (*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir.2002)). An exhaustive reading of the Amended Complaint will not uncover any allegations that Movants did anything to infringe Parker's copyright. "One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise the right to stop or limit it. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citations omitted). Parker has simply not alleged any actions on the part of Movants that support an inference that Movants intentionally infringed on Plaintiff's copyrighted work. Indeed, until Parker sent his Twitter message to Sofield, Movants did not know that Parker's e-book existed or that it was bundled into a zip file that Vladymyr Oleynyk had included in files he stored on PayLoadz Inc.'s cloud based server.

Parker knows that Movants are not liable for copyright infringement, yet he still maliciously dragged them into court. Plaintiff's copyright infringement claim is therefore evidence of his *willful* violation of Rule 11(b)(2).

## V.    Parker Pleaded No Cognizable Unfair Competition Claim Against Movants

Parker alleged a false unfair competition claim. Parker drafted a story he knew was fictional since Parker knew Movants had no affiliation with the other parties he described:

> Defendant PUA Media Library's use of Foxes to promote the fictitious "PUA author" that was "C. Kellogg." Specifically, Foxes was passed off as if written by "Kellogg," when in fact Plaintiff had written, published, and registered it in 1998, well aware of the need to defend his work against internet piracy.

and

> The advertising on pualib.com of the works mentioned in the previous two paragraphs constitutes a false-advertising violation of the unfair-competition provision of the

Lanham Act, 15 USC §1125(a)(l). All Defendants are liable for this count directly, including but not limited, or for aiding and abetting.

(Compl. at ¶¶80, 84.)

Parker intended to deceive the Court by pretending Movants were, in some unidentified way, connected to the other Defendants sufficiently to make them liable.

## VI.    Parker Pleaded No Cognizable Breach Of Contract Claim Against Movants

In Count Four of the Complaint, Parker's allegation that Movants are vicariously liable for other Defendants' breach of contract (Amended Compl. at ¶ 93) is contrary to the law as there is no concept in Pennsylvania law that would allow Parker to bring a breach of contract claim against any person or entity who is not a party to the alleged contract. As Defendants were not contractually obligated to do anything, as they had never formed an agreement with Plaintiff in the past, they cannot be held liable for breach of contract. *See Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 62–63, 739 A.2d 133, 136 (1999).

Additionally, there is no rule of law in this county that allows Parker to sue third parties vicariously for one Defendant's breach of contract (if there was a contract). Before October 26, 2015, Defendants had never spoken to, let alone formed a contract with, Plaintiff.

## VII.    Parker Pleaded No Other Cognizable Claim Against Movants

Without any legal theory behind it, and without alleging any pertinent facts, the Amended Complaint nakedly asserts that Movants are liable under various other theories. These were discussed in the pending Motion to Dismiss and will not be rehashed here.

## VIII.    CONCLUSION

Parker's pleadings are unhinged and he even insulted this Court when he wrote, "A decade ago, this Court's smug dismissal of Plaintiff's **Seduction Mafia** and **Seduction Cartel** lawsuits have put it 'on the wrong side of history,' on part with Plessy v. Ferguson […]". (2015

11

Compl. at ¶ 45). Without the boundaries observed in pleading by bona fide members of the bar, Parker has no qualms about spewing false allegations against innocent defendants to forestall the dismissal of his Complaint. Parker's violations of Rule 11 were many, and serious. Defendants respectfully request that this Court sanction Parker pursuant to Rule 11

                                        Respectfully submitted,

                                         /s/ Gary Green_____
                                        Gary Green, Esquire
                                        Attorney I.D. PA 15730
                                        **SIDKOFF, PINCUS & GREEN, P.C.**
                                        2700 Aramark Tower
                                        1101 Market Street
                                        Philadelphia, PA  19107
                                        (215) 574-0600 (office)/
                                        (215) 574-0310 (fax)
Dated: January 27, 2017                 **Attorneys for Defendants Shannon
                                         Sofield and PayLoadz, Inc.**

## RULE 11(c)(2) CERTIFICATION

Pursuant to the safe harbor provisions of Fed. R. Civ. P. 11(c), the instant motion was served on Plaintiff on January 6, 2017 *See* attached as Exhibit "F". Plaintiff has failed, within 21 days, to withdraw the challenged allegations and claims, and has failed to dismiss the Amended Complaint against Defendants.

Respectfully submitted,

_/s/ Gary Green_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)

Dated: January 27, 2017                **Attorneys for Defendants Shannon Sofield and PayLoadz, Inc.**

EXHIBIT A

THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER** | : | |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | **CIVIL ACTION NO. 16-4786-NIQA** |
| | : | |
| **v.** | : | |
| | : | |
| **PAYPAL INC., et al.** | : | |
| Defendants | : | |

## DECLARATION OF SHANNON SOFIELD

I, Shannon Sofield, hereby declare and say:

1.      I am a Defendant in the above case along with PayLoadz, Inc. This Declaration is submitted in support of the Rule 11 Motion of Defendants Sofield and PayLoadz, Inc.

2.      I am a resident of Newtown Square, Pennsylvania, and am currently the owner and sole full-time employee of PayLoadz, Inc.

3.      Defendant PayLoadz, Inc. ("Payloadz") operates *payloadz.com,* and related websites where for a storage fee, sellers of digital files (e.g., music, videos, eBooks, treatises, artwork, games, photographs, etc.) can upload their digital files on to a "cloud" storage site where they can be easily downloaded by customers of the sellers.[1] The *payloadz.com* system allows the sellers to advertise the digital products they are offering for sale on a website of their choice with the ability to link a customer's purchase to the PayLoadz download site and to PayPal for payment of the purchase price.  PayLoadz has no control over, and does not even know, the content of the compressed files it is paid to store on the cloud.

---

[1] PayLoadz rents bulk space from Amazon which sells cloud storage on its massive banks of computers to other businesses. Amazon has been named as a Defendant here also.

1

4.      Prior to October 26, 2015 I had never spoken to, met with, or conducted business with Plaintiff Gordon Roy Parker ("Plaintiff").

5.      My first interaction with Plaintiff occurred on October 26, 2015 when Plaintiff messaged me on my personal Twitter account accusing me and PayLoadz of criminal copyright infringement (which has since been deleted by Plaintiff). I then received a voicemail message from Plaintiff.

6.      In the voicemail message, Plaintiff informed me that PayLoadz was hosting an illegally pirated copy of his e-book. Plaintiff also reiterated his accusation of criminal copyright infringement and told me to preserve all documents.

7.      I explained to Plaintiff on Twitter that pursuant to PayLoadz' Copyright Policy, Plaintiff could submit a Takedown Notice to remove the content from the website. However, Plaintiff replied that this was beyond a typical DMCA Request. I then gave Plaintiff the PayLoadz support email for more direct help.

8.      Although Plaintiff failed to submit a Takedown Notice, I personally searched for the document mentioned by Plaintiff and removed it from PayLoadz' website, as well as banning the seller from making future sales.

9.      I did not hear from Plaintiff again until November 10, 2015 when I was served with Plaintiff's First Complaint.

10.      On December 10, 2015, Plaintiff dismissed the Complaint without prejudice.

11.      On October 10, 2016 I was served with Plaintiff's Second Complaint, which re-alleges many of the same facts.

12.      On November 9, 2016, I was served with Plaintiff's Amended Complaint, which again re-alleged many of the same facts.

2

13.    I have never heard of the Pickup Artist community, let alone joined in a conspiracy as alleged in the Complaint.

14.    Plaintiff's allegations in his Complaint are patently false:

a.    According to Plaintiff, individuals using the names Vladymyr Oleynyk and Sally Longer were connected to the loki.net@gmail.com account that sold Plaintiff's copyrighted e-book. (Compl. at ¶20).

b.    According to Plaintiff, Sally Longer is an alias I use, because he discovered an individual by the name of Sally Longer on Facebook who originally lived in Mount Holly, New Jersey, which is approximately 45 minutes from Rider College, where I went to college. (Compl. at ¶ 21).

c.    I have never used either Sally Longer or Vladymyr Oleynek as an alias, and never heard of them prior to reading the First and Second Complaints. Further, I have never had the loki.net@gmail.com email address.

d.    I am not the sole owner and operator of pualib.com. (Compl. at ¶32(a)). I had never heard of pualib.com prior to reading the First and Second Complaints.

e.    Plaintiff further alleges that because I am Sally Longer, and Sally Longer is the name used by the owner of pualib.com, I am also the owner of pualib.com. (Compl. at ¶29).

f.    I am not the owner of pualib.com, nor had I ever heard of it prior to Plaintiff's filing the first Complaint.

g.    PayLoadz' income comes from over a 1 million products, with around a hundred thousand downloads per month. The compilation containing Plaintiff's e-book was only one of the one million products for sale at the time. After I received notice from Plaintiff about the alleged copyrighted material being sold on PayLoadz, I deleted the seller's account and content.

     h.   As can be seen from Plaintiff's Amended Complaint, the alleged copyrighted material was then sold by a different third-party cloud-based hosting site called Click2Sell, with which I have no affiliation. (Compl. at ¶22).

     15.   On November 21, 2016, Plaintiff filed a Motion to Conduct Expedited Discovery, which contained five Interrogatory questions, and my answers to each are set forth below:

   **1.  State, your full legal name and address. If a corporation or other business, state the full, legal name of the business, the state or country in which it is incorporated, its business entity number or equivalent, and the address of its headquarters.**

   **ANSWER**:
Shannon Sofield
Three Richards Road
Newtown Square, PA 19073

PayLoadz, Inc.
Business Entity Number: 4095395
Incorporated in Delaware
130 N Second St
Unit 4B5
Philadelphia PA 19106

   **2.  Describe, in detail, any business or other dealings you have had with the website pualib.com, since January 1, 2002, and its officers, agents, employees, or other representatives, including the name(s) of these individual(s).**

   **ANSWER**: Neither I nor PayLoadz has had any business dealings with pualib.com since January 1, 2002 (or ever).

   **3.  Describe, in detail, your knowledge of the identity of the individual(s) who use the internet e-mail addresses Loki.net@gmail.com and Luckypua777@gmail.com. This includes, but is not limited to a) the nature of the relationship, b) its length, c) the amount of money which changed hands, accounted for annually, and d) which product(s) and services were involved.**

   **ANSWER**: Neither I nor PayLoadz know the identity of any individual nor individuals who use the email addresses loki.net@gmail.com and Luckypua777@gmail.com.

The listed Business Name on the Luckypua777@gmail.com (Username) account was "Resell Rights".

The user Luckypua777@gmail.com signed up for an account on 04-16-2010. Their account was closed once we were notified on their potential infringement in 10-26-2015. The seller signed up for the generic digital good ecommerce services provided at the PayLoadz.com website. Their first sale on our service was on 01-24-2014. In 2014, they paid PayLoadz service fees of $143.50. In 2015, they paid PayLoadz service fees of $256.52. All of this was done by an automated process. I did not review or notice these transactions until I was notified by Plaintiff about his claim.

4.  **Describe, in detail, your relationship with a man who calls himself "Sally Longer," who claims to run pualib.com, and whose name appeared in PayPal as the owner of the e-mail account Loki.net@gmail.com, from December 2015 through at least April, 2016. Further describe how this man proved his identify to you for business purposes.**

**ANSWER**: Neither I nor PayLoadz have had any relationship with an individual named Sally Longer. There was no business between Defendants and Sally Longer. In fact, Defendants have no idea who Sally Longer might be, or if there is a Sally Longer. Other than in allegations made by Plaintiff, the name Sally Longer was not ever known by Defendants.

5.  **Describe, in detail, your relationship with a man who calls himself "Vladymyr Olynyk," who claims to run pualib.com and whose name appeared in PayPal as the owner of the e-mail account Loki.net@gmail.com, until November, 2015. Further describe how this man proved his identity to you for business purposes.**

**ANSWER**: Neither I nor PayLoadz have had any relationship with an individual named Vladymyr Olynyk. No personal information or details of any kind whatsoever is needed to sign up for and to use a PayLoadz account (other than a working email address). There is no need or effort made for any user to "prove his identity for business purposes, and the "man" did not prove his identiy to Defendants. The only identifying information provided for this account was the account email username of Luckypua777@gmail.com, the PayPal Email Address of loki.net@gmail.com, and the "Business Name" profile field set to "Resell Rights". All of the information supplied to PayLoadz is automated, with no human contact unless it is initiated specially. None was initiated by anyone with regard to Vladymyr Olynyk. Therefore, until the Complaints were filed, I had no need to research the information, and had zero knowledge of the nature of the use made by Vladymyr Olynyk, what he listed, or even what he paid (since payments are not reported in a way that would cause me to determine what the payment was for.

16.    Plaintiff's refusal to dismiss me and PayLoadz from his lawsuit is stretching my

already limited financial resources. PayLoadz is experiencing steadily decreasing revenues and

5

may only be in existence for another 10-14 months. Additionally, I am financially supporting my parents, who were just served with a foreclosure notice.

17.    The wild and completely false allegations about me and my company are distressing. Plaintiff posted information about this case on the Internet, and exposed me to having my good name ruined. Until Plaintiff sued me, I never knew there was such a thing as people who call themselves "pick-up artists" or that there were publications, websites and apparently a society of such people. I consider what I have learned about pick-up artists to be disgusting, misogynistic, and exploitive of insecure men who lack social skills and are desperately lonely or are sexual predator wannabes. Plaintiff has slimed my good name by stating the lie that I had or would even have anything to do with a website that caters to the pick-up artist community.

18.    Because of the defamatory and serious lies Plaintiff has published about me in his Complaints, I have no choice but to defend myself and my company vigorously, and to seek the earliest termination of this malicious lawsuit. While this case costs Plaintiff nothing, and even if I eventually prevailed in a Dragonetti action, I would have no hope of any recovery of even the substantial attorney fees. Moreover, because Plaintiff persists in filing Complaints (four so far) and makes changes in each of them (but has never stated truthful allegations about me) Plaintiff has caused me to spend large sums and to become a debtor just to defend myself.

19.    The fact that Plaintiff files pro se complaints has prejudiced me because Plaintiff has neither the ethical restraints nor penalties lawyers would have for filing the kind of baseless things Plaintiff filed, and despite the long record of Plaintiff filing ungrounded, nuisance suits, the judges let him get away with abusing the people and companies he sues without any accountability for the harm the Plaintiff causes.

6

20.     In my case, I will paying off the debt I incurred to defend myself for many years in the future as my business is a small, one person (me) business that has low profits, and a declining future due to competition from much bigger companies that recently entered the same field of cloud based storage and services on the Internet. By contrast, Plaintiff gets to toy with me without fear of any consequences since he filed a petition, and does not even have to pay costs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____January 3, 2017_____

Shannon Sofield

# EXHIBIT B

# Amended Interim Designation of Agent to Receive Notification of Claimed Infringement

**Full Legal Name of Service Provider:** PayLoadz, Inc

**Alternative Name(s) of Service Provider (including all names under which the service provider is doing business):** PayLoadz.com,  PayLoadz.com, Inc,  PayLoadz

Address of Service Provider: 3 Richards Rdg, Newtown Square, PA 19073

**Name of Agent Designated to Receive Notification of Claimed Infringement:** Shannon Sofield

**Full Address of Designated Agent to which Notification Should be Sent** (a P.O. Box or similar designation is not acceptable except where it is the only address that can be used in the geographic location):

Shannon Sofield, 3 Richards Rdg, Newtown Square, PA 19073

**Telephone Number of Designated Agent:** 646-201-4019

**Facsimile Number of Designated Agent:** 866-727-8544

**Email Address of Designated Agent:** support@payloadz.com

Identify the Interim Designation to be Amended, by Service Provider Name and Filing Date, so that it may be Readily Located in the Directory Maintained by the Copyright Office: PayLoadz.com 4-21-2009

████████████████████ e Designating Service Provider:
                                         Date: 11-1-2015

Typed or Printed Name and Title: Shannon Sofield, CEO

Note: This Amended Interim Designation Must be Accompanied by a Filing Fee*
Made Payable to the Register of Copyrights.
*Note: Current and adjusted fees are available on the Copyright website at
www.copyright.gov/docs/fees.html

Mail the form to:
**U.S. Copyright Office, Designated Agents**
**P.O. Box 71537**
**Washington, DC 20024-1537**

Scanned
DEC 1 6 2015

Received
NOV 0 9 2015
Copyright Office

EXHIBIT C



LoserFanboy

**Posts:** 1374
**Joined:** Thu Jan 29, 2015 10:12 pm

Top

---

## Re: Tribute/history of the most underrated pua of all time

⬭ by **Icecutter101** » Mon Nov 09, 2015 12:52 am

Gunwhich

/thread



Icecutter101

**Posts:** 1891
**Joined:** Wed Mar 18, 2015 5:06 pm

Top

---

## Re: Tribute/history of the most underrated pua of all time

⬭ by **ThePUAMole** » Mon Nov 09, 2015 5:16 am

Ah, I see I need to rebut that federal crime someone committed by linking to that website.

Ask Jacqueline Faye Goldhagen, a/k/a "Jacqui Holland," if she's glad she linked to it, since that simple act has "depleted her life savings" on attorney fees, according to her pleadings, and I'm about to refile the case from square one after voluntarily pulling it (no penalty to do it once):

http://www.toosmarttofail.com/jacqpot.html

On Tuesday, I'll be suing the "PUA cartel" for similar defamation, but this is done in furtherance of a RICO conspiracy.

Obviously this site doesn't mind giving up the names of the people who own and run it (they will be

Defendants now), and one very simple subpoena gets me the name of the poster as well. This isn't difficult, since I'm already filing the suit. It's just a matter of adding one defendant.

The thing about conspiracy law is this: even ONE act in furtherance of the conspiracy makes the actor responsible for the ENTIRE conspiracy, which in this case includes:

Criminal copyright infringement (five years in Club Fed)
Money Laundering (twenty years in club fed)

And a host of other crimes that will be outlined in the complaint.

I do admire anyone who is willing to risk literally everything they own (judgments like this can't be bankrupted), and their freedom, just to spit out one link in one post on a message board.

BTW, that site made it so no one would hire me, and combined with its imputation of mental illness, is the primary reason I am now *retired* on Social Security disability, which, with other benefits, gives me the same amount of value as if I were working a fulltime job paying $26,000 a year, except I don't have to work at all.

Now considering that this site is the heir-apparent to PUAHate, and the feds would LOVE a reason to throw any and all PUAs into prison, you just gave them that reason, if they decide they wish to prosecute you and this website for aiding and abetting a RICO conspiracy that has ties to the Russian Mafia btw (the money-laundering goes through Russia).

I've already schooled the feds on how there are thousands of "ticking time bombs" on sites like this, so don't be surprised if they won't wait for the next Elliot Rodger to do what they can, legally, to put a stop to any PUA/hater they can.

Once your names are revealed by subpoena, YOUR internet history and Google results will include your link to a site that contains lies put there by child sex traffickers, on a site which claims the "Jews did 9/11," and which is a huge red flag for anyone willing to link to that pack of lies.

You guys are like drunks in a bar who just *HAVE* to try the bouncer, but all you do is give him the legal protection of self-defense to go along with his superior strength.

You had your moment, and, not long from now, I will have mine. Hope you've prepared for the possibility that you miscalculated the legal consequences. Looks like I'll be seeing you in court.

ThePUAMole

**Posts:** 110
**Joined:** Sun Nov 01, 2015 6:23 am

Top

⊡ This post by ThePUAMole was deleted by ThePUAMole on Mon Nov 09, 2015 5:23 am.
Top

## Re: Tribute/history of the most underrated pua of all time

No it doesn't. Do you think any judge will bother to read that shit: "In 2009 Puahate.com was created..."

LOLOLOL



Anal prolapse

**Posts:** 5194
**Joined:** Sat Apr 18, 2015 4:34 pm

Top

## Re: Parker sues Paypal, PUAs, Payloads, Plimus et al.

by **ThePUAMole** » Thu Nov 12, 2015 10:15 pm

> *Anal prolapse wrote:*
>
>> *ThePUAMole wrote:*
>> The complaint speaks for itself:
>>
>> http://www.toosmarttofail.com/paypal/complaint.pdf
>
> No it doesn't. Do you think any judge will bother to read that shit: "In 2009 Puahate.com was created..."
>
> LOLOLOL

Did you play "Spaz" in Meatballs?

I assume you have legal qualifiecations to judge a complex civil litigation complaint. I'm a high-level paralegal who has worked for attorneys in three states, multiple areas of practice, for multiple firms.

ThePUAMole

**Posts:** 110
**Joined:** Sun Nov 01, 2015 6:23 am

Top

Case 2:16-cv-04786-NIQA    Document 50    Filed 01/27/17    Page 110 of 130

11/19/2015                          "Steal" Outfoxing The Foxes! (landmark PUA book) : Bash the Scene

- o hall of shimansky (115)
- o This happened (111)
- o indians= worst facial bones and skin on the planet (75)
- o not a gay thread at all (66)
- o Tyger rates (61)
- o bbc takeover (60)
- o still superior to niggers (48)
- o social delusion (46)
- o gymcel detected (44)
- o the FBI is monitoring this thread (39)
- o stormfront.sluthate.com (27)
- o AUTISM SPEAKS (27)
- o More tales from the basement (24)
- o Pleo's Aspie Diary (24)
- o Jewish (22)
- o dr. mike mew (22)
- o Just kill yourself bro (22)
- o AUTISM OVERLOAD (19)
- Chat
- Health

Board index ‹ Main ‹ Bash the Scene ‹ "Steal" Outfoxing The Foxes! (landmark PUA book)

# "Steal" Outfoxing The Foxes! (landmark PUA book)

Post a reply

Search this topic…    | Search |

31 posts • Page 1 of 2 • 1, 2

## "Steal" Outfoxing The Foxes! (landmark PUA book)

🗋 by **ThePUAMole** » Sun Nov 08, 2015 6:34 pm

Yes, this is Ray Gordon.

Yes, I'm about to sue half of the "seduction cartel" in two days, and bring them all down.

Two weeks ago, I purchased a copy of "Outfoxing The Foxes" from someone who was not authorized to be selling it. This led to a digital paper trail that unraveled the entire "seduction cartel" that's been running the "community" in one form or another since 1998, long before almost all of you showed up. You don't realize that the information you've been receiving has been carefully controlled by a very small group of people, who have been relying on some very illegal "marketing" tactics (mass piracy is one of them). Their crimes run deep, their money has already been cut off, and the feds are definitely hot on their trail now.

Just about all the crap you've ever read about me was put there for the purpose of destroying my career as a PUA teacher. I was forced to stop producing new content in 2001 because anytime I did, they would plagiarize it and profit from it. Instead, I waited until they exhausted the existing theory, and became

desperate for new ideas, or had to rely on their own "genius" instead of mine. Please remember I learned from my cousin, who FUCKED DIANE LANE. When you're 14 and you see that, no matter how good you are, you feel inferior like I did, always working to improve. By 18 I was an mPUA, and by 28 I was so off the charts none of you would believe it if I told you.

Not only did this "cartel" STEAL my work, they changed the title to "Foxhunting: The Art of Dating And Seduction," changed the author's name to a slight misspelling of my birth name, and put a hideous cover on my work, which, if you read it, you will see is the basic blueprint for all the PUA advice which would follow, particularly after "Game Over" (mainstreaming), since Foxhunting was designed to survive that card-counting styled Armageddon. By then, of course, a lot of people had their economics tied to sustaining the cartel, but with the "haters" rising, the revenue started drying up, which is when alternative revenue streams (more expensive teaching and training) began to fill the gap.

This is CRIMINAL copyright infringement, with money moving through Russia. Fortunately for me, they moved their money through a PHILADELPHIA-based company, meaning I have jurisdiction over all of them, and I have smoking-gun evidence as well. Where it really gets interesting is the payment processors, without whom this wouldn't be possible. There's a good chance I'm going to be able to hold them liable for infringement as well, and if not that, at least claim the processing fees on about $150 million in transactions, or about $4.5 million alone, from very deep-pocketed companies who profited from illegal transactions (to get that I won't have to prove intent, as it's like possessing counterfeit money).

A number of top companies will be named, but a few who should be, won't, simply for judicial economy. My estimate is that my book has been pirated tens of thousands of times for sale, and potentially millions of times for free, with statutory damages at $150,000 per copy, for a total of....a fucking lot of money. With governments all over, including here, wanting to "take down PUA," I am gift-wrapping them the means to put many major PUA gurus in prison for a very long time. With the RIAA and MPAA wanting any piracy stopped, the courts are not likely to be very sympathetic.

Even if I don't win in court, though I almost certainly will, the world will soon know what I have known all along: that my work was SO GOOD that it, and me, had to be silenced through defamation, piracy, and plagiarism. As time wore on, and Foxhunting was all that worked, they continued to steal it. Look in the book for yourselves, and remember it was registered on October 29, 1998, specifically because I knew that one day I would have to prove authorship. I never dreamed anyone would be so stupid as to give me such an easy win in court.

Since Foxes has been pirated and plagiarized so much, I have written a second edition: "Foxhunting II: MGTOW is the new PUA," in which a screenshot of each page of Foxes appears on each page of II, shrunk slightly to provide room for additional commentary at the bottom of each page, and extended commentary after each chapter. I think you'll like the format for the second edition.

As for payment, I'm going to set up a Patreon account for the masses, while charging $100,000 a year for "elite" one-on-one ongoing coaching for very wealthy men who will now know who the true ALPHA guru is: ME.

I know some Elliot-Rodger types, or some rivals who are about to be sued, will trash me, but trust me folks, this game is over, and almost seventeen years to the day after I registered this incredible work, I have finally won, at least where truth is concerned. Their money is cut off, and I'm about to claim the millions that should have been mine all along. Oh, and even without this, I was on track to get rich in a few years anyway, in one of three ways I have developed since I was waiting for justice in the PUA

community. Think of it as a financial "Streisand effect."

My haters were so vicious that they convinced a court of law in a discrimination case that I was mentally ill and unemployable, which enabled me to retire on disability at 48. I've always been disabled (bipolar), but had previously been able to overcome it by earning enough. Those who tried to starve me have given me the money to fight them in court, and literally destroy the criminals.

Here's a link to Foxes II: Please "steal" your copy only from my website, and enjoy it. Don't worry about me, because I'll be more than fine, as I always have been, since I've never been out to con anyone:

http://www.toosmarttofail.com

Thanks
Gordon "Ray" Parker,
a/k/a Ray Gordon

ThePUAMole

> **Posts:** 110
> **Joined:** Sun Nov 01, 2015 6:23 am

Top

---

## Re: "Steal" Outfoxing The Foxes! (landmark PUA book)

▯ by **chimai** » Sun Nov 08, 2015 6:46 pm

points and laughs

chimai

> **Posts:** 678
> **Joined:** Sat Oct 17, 2015 4:31 pm

Top

---

## Re: "Steal" Outfoxing The Foxes! (landmark PUA book)

▯ by **ThePUAMole** » Sun Nov 08, 2015 6:46 pm

Oh and for those who have always thought I was bullshitting about my "PUACousin" Rick (he's gone public now so I don't feel the need to hide him anymore), here's a picture he posted to facebook:

https://www.facebook.com/photo.php?fbid ... =3&theater

From the left that is:

Christopher Lambert
Laurie Sanderson

EXHIBIT D

Hi. I'm Ray Gordon. I'm the author of numerous books on many topics of interest to men, but the relevant books here are on the ones I wrote on pick-up artistry.

Particularly my first book, *Out Foxing the Foxes, How to Seduce the Woman of Your Dreams*. I'm taking a moment from my busy schedule to inform the public that this book has been pirated. Or at least I am alleging that it has been pirated, in a lawsuit that I am filing against Paypal, Amazon and a number of other companies and individuals who were involved in the alleged piracy of my work.

Now the details of this are in the description. You will find more of discussion in the comments, but why am I suing Amazon and Paypal? Simple. I am suing Amazon and Paypal because Amazon stored the copies of the pirated works on its cloud server even after they were notified that these books existed, and Paypal, not once, but twice, processed the transactions for the collection of these pirated works on DVD. All that evidence is also put in the lawsuit.

Now, in a country where my presidential candidates are telling me they are going to find jobs for me, I don't need a job, I just need people to stop stealing my work.

And in a country where I am told that copyright infringement is a horrible crime, two of the largest internet companies have ignored my pleas to stop doing this to my work. And even if they stop doing it to my work, they should stop doing it to work of my competition [unintelligible] themselves in the process.

UM, Amazon of course has been meet recently with numerous articles and other revelations about counterfeit goods being sold on the site and people say that Amazon is as much a victim as anyone else of these foreign fraudsters or what not, or at least they claim immunity under Section 230. Which as we know does not apply to the MCA or copyright law in general. In fact, the MCA does not even apply when it is commercial piracy, which happens to also by the way be a felony.

Now the individual who pirated my work of course is not Amazon or Paypal but had been using their services. Finding that individual, well, should be a matter of paperwork and as more information comes to light I will reveal that, but for now I just want to make the public aware that I am suing Amazon and Paypal over this piracy and anyone interested in these issues or these companies may want to take a look at the link below, which will be a link to the Complaint once I get it back.

So, um, the pick-up artist community gets a lot of flack and people don't realize that what they are attacking is not really the source of its money. They see them advertised on YouTube, they see them list books for sale on Kindle and they don't realize that's mostly for show for most of these guys. The real money they make is on live instruction and on piracy.

This little website that no one has ever heard of is where the person who joins the community which doesn't really exist except in some marketer's brain. When that person comes to the internet looking for information on how to get woman and these famous pick-up artist, he will type it in to a search engine, how to get laid, PUA, or whatever it is and this website will be among the top results returned. When he gets there, he will now be offered the 1000 free books

that he can download individually or purchase as a group for $20 or whatever I think $40 is what they are selling it for now.

So of course, very quietly, these virgin customers, the most valuable of all of the internet, because it is not the same people going from site to site. These customers who don't really interact with any community and just want advice, very quietly, have been going to this site and either getting free copies of my work and other works that are similar in this genre or they buy them and enable someone else to profit while they are denying me my profits.

And then when they do this, they credit people who aren't even me for ideas that they got from me, which has led to more than one pick-up artist explaining to me that I don't know what I am doing and recommending that I use my own methods and sometimes even read my own books. This is another reason I had to file this suit.

Those who don't like pick-up artistry, fine, don't read the books, but if you are downloading them, obviously, you do like them and if you do like them then you should pay for them. At the very least, websites should not host them, Paypal should not process the money for these transactions and Amazon certainly should not store copies of these books on their server when I am trying to sell my works through Kindle, which I no longer do. This is why I am no longer on Kindle. But I see other celebrities and publishers talk about Amazon is such a great place to show their shows or sell their books, I have to wonder, are they saying "I am fine with piracy", because apparently, they are. Would they mind if others pirated their work? I'm sure they would complain even louder than I am and their lawyers would send letters.

So anyway, I'm just one author but I am one author with rights and I am a former paralegal and I know enough about how to draft a lawsuit and file it to defend my rights so we will see how this turns out.

So if you are interested in any of the elements of this lawsuit, either the companies involved, the topic or just lawsuits in general, grab a look and well, you know follow it and see how it goes.

I would like to think that I will get justice, but I have already reported this to the postal inspector, to several levels of federal law enforcement, local law enforcement and guess what, this website is still up. I kind of feel like someone who has gone to a cop and said, "Hey someone is robbing a bank", and the policeman goes, "So". You begin to wonder if maybe the police are the problem. You know. You would think that a mass piracy website would not be enabled and not be allowed to stay up, particularly after I put everybody involved on notice that that was the case.

So, take a look, stay tuned this should get very, very interesting. That's all for now.

EXHIBIT E



**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GORDON ROY PARKER,**<br>4247 Locust Street, #119<br>Philadelphia, PA 19104<br>(267) 298-1257<br>SnodgrassPublish@aol.com,<br>Plaintiff,<br><br>v.<br><br>**SOCIAL SECURITY ADMINISTRATION,** 43rd<br>and Chestnut, Philadelphia, PA 19104, and<br><br>**PENSION BENEFIT GUARANTY**<br>**CORPORATION,** 2500 Grubb Road, #21,<br>Wilmington, DE 19810,<br><br>Defendants | Case No: **15    3453**<br><br>**Complaint To "End Social Security As We Know It." (constitutional challenge Rule 5.1)** |

COMPLAINT FOR VIOLATIONS OF THE REHABILITATION ACT OF 1973
======

Plaintiff **Gordon Roy Parker** sets forth the following:

THE CAST
======

1.    Plaintiff is Gordon Roy Parker.  He has been on SSDI since 2014, having been awarded his

back benefits in April, 2015.  His monthly benefit is $867.00 a month, from which his "mandatory"

participation in Medicare will siphon approximately $138.00 a month, leaving him with $729.00 a month

on which to survive.

2.    Defendants are the Social Security Administration ("SSA") and the Pension Benefit Guaranty

Corporation ("PGBC").

THE PLOT
======

3.    This is a federal lawsuit, an *as-applied* challenge to the benefits-calculation formula for

retirees, those on SSI, and those receiving pensions insured by PGBC with Plaintiff's hard-earned tax

***dollar*** [sic] (approximately his yearly federal tax liability these days).

1

4.    According to Defendant SSA's own *Social Security History* website, President Roosevelt made clear that benefits had to be *earned!*    Check it out:



how the courts would see this new function of government, the framers of the AAA deliberately placed the tax provisions and the subsidy provisions in separate titles of the act, so they could argue that they were not necessarily connected to each other; that is, so they could argue that the purpose of the tax was not to control production but was merely to raise revenue. This was the same strategy adopted by the framers of the Social Security Act, as can be seen in the separate Titles II and VIII of the original Social Security Act.

The old-age insurance system introduced in the Social Security Act was designed, at a public policy level, to be a contributory social insurance program in which contributions were made by workers to what was called the "old age reserve account," with the clear idea that this account would then be the source of monies to fund the workers' retirement. Actuarial studies were done to determine what the contribution rate would need to be in order to have sufficient reserves in the account to pay anticipated benefits. In the popular understanding of the program, the contributions established an "earned right" to the eventual benefits. President Roosevelt strenuously objected to any attempt to introduce general revenue funding into the program. His famous quote on the importance of the payroll taxes was: "*We put those payroll contributions there so as to give the contributors a legal, moral, and political right to collect their pensions and unemployment benefits. With those taxes in there, no damn politician can ever scrap my social security program.*" [2]

http://www.ssa.gov/history/court.html
Retrieved June 18, 2015 12:58 am

5.    Amazing oratory from Roosevelt about the need to tie benefits to wages notwithstanding, this Act, like most of his struck-down *New Deal*, is unconstitutional.

6.    Undeterred by the Constitution, Roosevelt figured out a way to make the Act repeal-proof:

**A President Tries to Pack a Court-**

In early 1937 President Roosevelt made what turned out to be the biggest political blunder of his career, and yet it was a blunder that would have fortuitous, even pivotal, importance for the fate of Social Security.

Federal judges are appointed for life. The Supreme Court of the 1930s was the most elderly in the history of the Republic, with an average age of over 71. President Roosevelt would derisively refer to them as "those nine old men." Actually, he only had four of them in mind. The Court was split down the middle in political terms. On the liberal side were three justices sympathetic to the New Deal programs (Brandeis, Stone and Cardozo); on the conservative side were four justices who voted against everything the Congress and the Administration tried to do (McReynolds, Butler, Van Devanter and Sutherland). In the middle were Chief Justice Charles Evans Hughes and Justice Owen Roberts, who were often "swing votes" on many issues. In the spring of 1935 Justice Roberts joined with the conservatives to invalidate the Railroad Retirement Act. In May, the Court threw out a centerpiece of the New Deal, the National Industrial Recovery Act. In January 1936 a passionately split Court ruled the Agricultural Adjustment Act unconstitutional. In another case from 1936 the Court ruled New York state's minimum wage law unconstitutional. The upshot was that major social and political reforms, including social insurance programs, appeared headed for defeat. This despite the obvious will of the electorate who returned Roosevelt to office in 1936 with the largest landslide in history.

7.  So we have, *in the government's own words,* the sordid legislative history of the Social Security Act of 1937, whereby tying benefits to earnings placated the power-tripping conservatives who cannot stand the idea that a poor person might be able to exist under something other than the threat of poverty, homelessness, starvation, and preventable death inherent in unbridled capitalism.

8.  Not sufficient to trust the judiciary, and in a manner which would make the authors of the PATRIOT ACT blush, Roosevelt then issued a veiled threat to involuntarily retire the judicial nuisance that was the SCOTS monopoly, one generally credited with allowing the Act to survive.

President Roosevelt's response to all of this was stunning and unexpected. On February 5, 1937 he sent a special message to Congress proposing legislation granting the President new powers to add additional judges to all federal courts whenever there were sitting judges age 70 or older who refused to retire. Couching his argument as a reform to help relieve the workload burden on the courts, President Roosevelt's unusually blunt language made it clear what he really had in mind: *"A part of the problem of obtaining a sufficient number of judges to dispose of cases is the capacity of the judges themselves. This brings forward the question of aged or infirm judges--a subject of delicacy and yet one which requires frank discussion. In exceptional cases, of course, judges, like other men, retain to an advanced age full mental and physical vigor. Those not so fortunate are often unable to perceive their own infirmities. . . A lower mental or physical vigor leads men to avoid an examination of complicated and changed conditions. Little by little, new facts become blurred through old glasses fitted, as it were, for the needs of another generation; older men, assuming that the scene is the same as it was in the past, cease to explore or inquire into the present or the future."* [3]

The practical effect of this proposal was that the President would get to appoint six new Justices to the Supreme Court (and 44 judges to lower federal courts) thus instantly tipping the political balance on the Court dramatically in his favor. The debate on this

### Anti-Discrimination Laws And The SSA

9.  Having just gotten around to canonizing the Miranda warning, and clarifying the language of the Second Amendment, and on a planet where the can *opener* was invented a full half-century after the tin can, justices has been delayed and denied to the collateral damage endured by Plaintiff, and those similarly situated.



10.   Plaintiff avers, based on watching video the *2015 Academy Awards* and reading it on the internet, that women earn less money than men in their lifetimes.  Not surprisingly, the average retirement benefit is *$300.00+ greater for men than for women.*

11.   The government, as a matter of public policy, uses presumed discrimination as the constitutional basis for affirmative action, equal pay, and other statutes.

12.   Whistleblowers like Plaintiff earn less money in their lifetimes than those who ***don't snitch.***

13.   (Whistleblowers + anti-poverty) > any other compelling public interest.

14.   Whistleblowers > Jerry Sandusky and his $59,000+ pension from the Commonwealth.

**The As-Applied Challenge (General)**

15.    Plaintiff is **not** appealing the findings of the SSA, as this lawsuit is beyond that scope.  He is challenging the constitutionality of the benefits-calculation provision of the SSA, and of private pensions ensured by the PBGC.

16.    To quote what Arquette would have said, had her speechwriters thought of it: **why is the government _punishing_ elderly women a second time for discrimination?**

17.    Even without civil rights legislation clearly creating a circumstance whereby targets of discrimination are punished under color of law with a reduced retirement (or disability) check, the retirement-benefits calculation violates the Equal Protection provision of the Fourteenth Amendment, with no possible compelling interest offsetting elderly poverty, employment discrimination, or whistleblower-silencing, assuming that was even the consequence of the least restrictive means.

**COUNT ONE:**
**TITLE VII AND EQUAL-PROTECTION VIOLATIONS (BOTH DEFENDANTS, GENERAL)**

18.    Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of all previous paragraphs.

19.    Plaintiff's lifetime earnings have been reduced by at least one act of provable discrimination. Indeed, he just sued Kelly Services (**"The Kelly GIRL People"**) and Independence Blue Cross ("IBX") under the Rehabilitation Act, for not taking Plaintiff seriously when he said he wishes to work.  Should the need to prove more exist, if this Court asks via leave to amend, Plaintiff shall give plenty more on amendment.  Given the real retaliation risks of doing so, Plaintiff hopes this Court will simply stipulate that he is a targeted class.

20.    Because SSA and private pensions (for which Plaintiff is less likely to qualify due to discrimination), tie retirement (and disability) benefits to wages, they have run afoul of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1991, the Rehabilitation Act of 1973, and The Americans With Disabilities Act of 1990, among other statutes, as well as the Equal Protection Clause.

21.    Like Bill Clinton's portrayer said during an SNL skit about his not meeting Megan Fox, who was in the studio at the time: ***that's just wrong!*** It's also been illegal since no later than 1963, which is why Plaintiff states this claim for relief on this basis.

22.    Absent discrimination, Plaintiff's monthly SSDI check would approach **two thousand dollars a month**. The same is true for the more sympathetically situated women, minorities, other disabled, felons, and others not named Jerry Sandusky.

23.    While Plaintiff is entitled to an SSDI check based on his **imputed income** (the one that would have been used to determine his child support payments) of almost "two dimes a month," he concedes the compelling interest in preserving the system while allowing time for it to phase out its illegal parts. To this extent, Plaintiff concedes a compelling interest except to the extent that his monthly benefit is beneath the federal poverty level of $11,770.00 in annual income for 2015, or $980.83 a month, to which he asserts entitlement based the dual public interests of anti-poverty and anti-discrimination.

24.    Plaintiff is entitled to injunctive relief sufficient to terminate the current benefits-calculation formula, replacing it with one which a) is not tied at all to wages, and b) in transition, which does not keep even one benefit recipient in poverty while Jerry Sandusky is collecting his $59,000 a year. He is further entitled to c) his tax **dollar** not being used to fund equally unconstitutional pensions via PBGC.

25.    Plaintiff is proposing that a new, legal system be phased in by the year 2070, so that anyone currently in the workforce now retains the option of the current system, while the government offers buyouts to speed up the process.

**COUNT TWO:**
**ADA/REHABILITATION AND EQUAL-PROTECTION VIOLATIONS (SSA, DISABILITY)**

26.    Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of all previous paragraphs.

27.   Under the current SSA benefit-calculation formula, Plaintiff could not have been determined to be disabled prior to 2011, not because he was not disabled, but because he was earning too much to qualify for benefits.

28.   Plaintiff has been disabled since his suicide attempt on Sunday, July 8, 1984 at or around 4:20 p.m.  He has bipolar disorder.

29.   Plaintiff has been discriminated against and otherwise had his income reduced due to disability, due to increasing stigmatization, ever since his diagnosis.  Examples of how Plaintiff is perceived include his being called names, in public, without shame from the speaker, like *a\*\*hole*, *overbearing*, *psychotic*, *sociopathic*, *bitter*, *whining*, *crazy*, *Fr00Tl00P* (on USENET), *batsh\*t crazy*, and *unemployable*, the final one told to this very Court in 2003, by the University of Pennsylvania (who employees thousands of secretaries), with Judge Anita Brody agreeing, saying "[Plaintiff's] employability has always been in question," when she ordered the Rule 35 examination in the course of Plaintiff's Title VII lawsuit.

30.   Simply put, no one likes Plaintiff and no one will hire him, despite his many skills, due to his attitude and mental illness.  It merely took until 2011 for his many skills to no longer allow him to fall over the "cash cliff" of the SSA's income limit.

31.   Unlike workman's compensation, SSDI does not provide a *reduced earnings benefit*, even in an extreme case like Plaintiff's.

32.   Plaintiff's current lawsuit against *The Kelly GIRL People*  and IBX stems from an incident in February, 1994, by which both Defendants terminated Plaintiff, explicitly citing his (alleged) "disorientation" as the grounds for termination.

33.   Plaintiff was punished a second time for this incident by Defendant SSA, because he did *not* take the other defendants at face value, did *not* take the easy way out, and did not apply for SSDI. He had no reason to: he could still find work, albeit at the reduced rates of $7.50-9.00 an hour, thus greatly

reducing his benefit check. Plaintiff was at his peak income from 1987-1993, and had lost four years of

work credits (1983-1986) due to having been employed in the family business, literally against his will.

Indeed, had Plaintiff waited but a year longer, he would be on SSI, and not even allowed to accumulate

wealth without sacrificing his benefits. Though he lacks standing, Plaintiff avers that SSI should be

abolished and replaced with universal SSDI, imputing at least *minimum wage.*

34.    If this Court truly believes that Plaintiff would ever have blown a single whistle, thus

exacerbating his limited options for employment, had he known he would wind up with an "early-

retirement" check of $867.00 a month instead of a lifetime SSDI check which would now approach "two

dimes," it is mistaken. Is there not a public interest in encouraging whistleblowers? Because stigma is

what makes Plaintiff unemployable due to disability, he refers to his benefit as *whisability*.

35.    Plaintiff avers that the only three constitutionally sound classifications for workers are

*employed, retired*, and *disabled*, except where a worker has consciously refused offers of employment.

"Disability" is a matter of time when one lacks housing, food, and proper medical care, with delays

costing not just lives, but a lot of money that would not be necessary were everyone's benefit check at

parity with poverty.

36.    Because starvation and suicide are not options, Plaintiff further avers that *poverty itself* a

breach of the social contract, simply due to the increased secondary costs to society when its inevitable

effects kick in, without the economically mitigating factors of death and starvation to reduce costs.

Theft, of course, is illegal, which leaves this lawsuit as the only real option, save for an act of maturity by

Congress, for which Plaintiff is not holding his breath. This is not "legislating from the bench," but rather

the judiciary's proper role of *judging* legislation from the bench, something the fearful 1937 court could

not do, as per the government's own words.

37.    Plaintiff's constitutional harm and damages are simple: the inability to travel, in this case to

rebuild his life in privacy, secondary to his having been *cyberstalked* for close to twenty straight years,

9

including defamatory allegations that he is a pedophile, more imputations of mental illness, and the publication of his address and likeness to incite offline harassment. Regarding 36) above, Plaintiff is not suicidal, for if he were, he would be challenging to apply Oregon's assisted-suicide statute nationally, under equal protection grounds. He asks only that the government stop breaking the law so that his benefits allow him the proper exercise of his citizenship.

38.    Plaintiff is entitled to an order enjoining the SSA from calculating retirement and disability benefits in a manner which runs afoul of the constitution. Specifically, he is entitled to an order requiring the SSA to change its benefit formula for *all* Americans, to where disability is determined solely by medical capability, and income is imputed for those months or years where the disability resulted in reduced income, in this case from $22,000.00+ (in 1993) to $9,000.00+ (since).

39.    Plaintiff seeks no "earthquake" that would double his benefit check, but asserts that he is entitled to $980.83 per month, sufficient to keep him at parity with the poverty level, and that this benefit *not* include any deductions for Medicare.

40.    Plaintiff is also entitled to *not* enroll in Medicare until he is sixty-five, or takes full retirement at seventy, should he live that long (see below).

41.    Plaintiff further asserts an equal-protection violation, on the basis of his SSDI check automatically converting to a retirement check at age sixty-five, rather than allowing Plaintiff to gain the much-needed benefit that comes with retiring at seventy.

**COUNT ONE:**
**EQUAL-PROTECTION VIOLATIONS (GEOGRAPHY)**

42.    Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of all previous paragraphs.

**Three Retirees Walk Into A Bar In Florida:**
**One from New York City, Iowa, And Kansas**

43.    The retiree from New York is the only one who can afford to drink there, because his check was inflated by his geographically inflated income, in clear violation of the Fourteenth Amendment. Plaintiff states this claim for relief on this basis.

44.    Plaintiff is entitled to have his income imputed based on his having worked in New York City his entire life, as a person not disabled.

45.    Plaintiff is entitled to injunctive relief sufficient to terminate the actionable conduct.

**PRAYER FOR RELIEF**

Plaintiff prays to this Court for the following relief:

1.    An increase in his monthly SSDI benefit to *at least* the poverty level, but also to his imputed-income level, as determined by this court.

2.    An order enjoining the PBGC from insuring privately funded pensions.

3.    That his tax *dollar* no longer be used to punish targets of discrimination in disability and retirement, via a court order to the SSA and PBGC to devise a constitutionally sound benefits-calculation formula.

4.    A declaration that Plaintiff has been disabled for his entire working life, via overwhelming preponderance of the evidence, and the *person-not-living-under-a-rock* standard.

5.    An order requiring the SSA to calculate disability based on medical, not financial, considerations, and to design a system similar to the reduced-earnings benefit for workman's compensation, for both its SSDI benefits, and retirement work-credit formula.

6.    Anything less would be uncivilized, in violation of the social contract, and so prohibitively expensive that the entire system is projected to collapse within two decades if not changed.   Plaintiff is here not to change the system, but to have an illegal system shut down.

**JURY TRIAL DEMANDED**

Plaintiff exercises his right to trial by a jury of his fellow established pillars of the community.

This the 19th day of June, 2015

_____
Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

**CERTIFICATE OF SERVICE**

I, Gary Green, Esquire, hereby certify that I served a true and correct copy of

*Defendants', Shannon Sofield's and PayLoadz Inc.'s, Rule 11 Motion for Sanction* was

electronically filed and served today on all counsel of record, and is available for viewing and

downloading on the Court's ECF system.

Gordon Roy Parker
4247 Locust Street, #119
Philadelphia, PA 19104

James E. Geringer
**Klarquist, Sparkman, LLP**
One World Trade Center, Suite 1600
121 Southwest Salmon Street
Portland, OR 97207

Rimage Corporation
7725 Washington Avenue South
Minneapolis, Minnesota 55439

Christopher Smith, Esq.
Lindquist & Vennum, LLP
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Katie Krajeck,
**Litigation Counsel Paypal, Inc.**
2211 North 151 Street
San Jose, CA 95131
Kkrajeck@paypal.com

Hostgater.com, LLC
5005 Mitchelldale St.
Suite 100
Houston, TX 77029

C2S, LLC
625 Barksdale Road
Suite 113
Newark, DE 19711

Amazon Web Services, Inc.
12900 Worldgate Drive
Herndon, VA 20170

  /s/ Gary Green
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA 19107
(215) 574-0600 (office)
(215) 574-0310 (fax)
Dated: January 27, 2017    **Attorneys for Defendants Shannon Sofield and PayLoadz, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

    I, Gary Green, Esquire, hereby certify that I served a true and correct copy of

*Defendants', Shannon Sofield's  and PayLoadz Inc.'s, Rule 11 Motion for Sanction* was

electronically filed and served today on all counsel of record, and is available for viewing and

downloading on the Court's ECF system.

Gordon Roy Parker
4247 Locust Street, #119
Philadelphia, PA 19104

James E. Geringer
**Klarquist, Sparkman, LLP**
One World Trade Center, Suite 1600
121 Southwest Salmon Street
Portland, OR 97207

Rimage Corporation
7725 Washington Avenue South
Minneapolis, Minnesota 55439

Christopher Smith, Esq.
Lindquist & Vennum, LLP
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Katie Krajeck,
**Litigation Counsel Paypal, Inc.**
2211 North 151 Street
San Jose, CA 95131
Kkrajeck@paypal.com

Hostgater.com, LLC
5005 Mitchelldale St.
Suite 100
Houston, TX 77029

C2S, LLC
625 Barksdale Road
Suite 113
Newark, DE 19711

Amazon Web Services, Inc.
12900 Worldgate Drive
Herndon, VA 20170

     /s/ Gary Green
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)
**Attorneys for Defendants Shannon Sofield and PayLoadz, Inc.**

Dated: <u>January 27, 2017</u>